Case 2:14-cv-00019   Document 176   Filed in TXSD on 11/02/15   Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
November 02, 2015
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| HACIENDA RECORDS, LP, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-19 |
| | § | |
| RUBEN RAMOS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court are Plaintiffs/Counter-Defendants/Cross-Defendants Hacienda Records, L.P. ("Hacienda Records"), Latin America Entertainment, LLC; Rick Garcia, and Roland Garcia, Sr.'s (collectively "Hacienda") Motion for Summary Judgment against Claimant Ruben Ramos (D.E. 64), to which Ramos has responded (D.E. 99, 139, 165) and Hacienda has replied (D.E. 124, 160). Hacienda also filed Objections and Motion to Strike Sham Declarations in Support of [Ramos'] Summary Judgment Responses and Motion to Show Authority (D.E. 126), to which Ramos responded (D.E.129). For the reasons set forth below, both motions are **GRANTED**.

**I. Background**

This lawsuit is one of several recent disputes in the Southern District of Texas involving Hacienda and counsel for Ramos, David Showalter.[1] Giving rise to the action

---

[1]. *See Guzman v. Hacienda Records & Recording Studio, Inc.*, Civil Action No. 6:12-42 (S.D. Tex. – Victoria); *Tempest Publishing, Inc. v. Hacienda Records & Recording Studio, Inc.*, Civil Action No. 4:12-736 (S.D. Tex. – Houston); *Sanchez v. Hacienda Records & Recording Studio, Inc.*, Civil Action 4:11-3855 (S.D. Tex – Houston). *See also Guerrero v. Martinez*, Civil Action No. 4:11-1774 (S.D. Tex. – Houston); *Guajardo v. Freddie Records, Inc.*, Civil Action No. 4:10-2024 (S.D. Tex. – Houston); *Sanchez v. Freddie Records*, Civil Action No. 4:10-2995 (S.D. Tex. – Houston).

currently before this Court, on January 13, 2014, Ramos' attorney sent Hacienda a letter requesting: copies of contracts or agreements purportedly by and between Ramos and Hacienda with respect to certain songs recorded by Hacienda and sung by Ramos ("Ramos' Works"); documents reflecting the quantities of products manufactured and sold by Hacienda that embody Ramos' Works; any accountings owed to Ramos for the exploitation of his Works, and any payments owed to Ramos for the exploitation of his Works. The letter also requested that Hacienda immediately cease and desist from any unlicensed exploitations of Ramos' Works. On January 21, 2014, Hacienda Records filed the present declaratory judgment action against Ramos, seeking a declaration that: Hacienda owns the copyright to certain sound recordings; Ramos and his assigns have no copyright to the sound recordings; any copyright registrations by Ramos to the sound recordings are invalid, and Hacienda has not infringed on any copyright to the sound recordings.

Additional Defendants, Cross-Defendants, and Counter-Claimants were later joined, culminating in the filing by seven Claimants[2] of their Third Amended Counterclaim and Cross-Claim against Hacienda Records and related individuals/entities regarding numerous other songs (D.E. 141). Hacienda Records voluntarily dismissed without prejudice its Second Amended Complaint (D.E. 68), but later revived its declaratory judgment claims in its Amended Answer to Third Amended Counterclaim and Cross-Claims and Hacienda's Counterclaim (D.E. 153). Upon Claimants' Motion for

---

[2]. Ruben Ramos; Hugo Cesar Guerrero; Arnold Martinez, Individually and on Behalf of Gilbert Martinez Heirs; Leticia "Letty" Salcedo, Individually and on Behalf of the Estate of Jesus "Jesse" Salcedo; Arturo Rene Serrata; Adan Sanchez, and Ruben Guanajuato.

Voluntary Dismissal with Prejudice (D.E. 161), many of the claims asserted in their Third Amended Counterclaim and Cross-Claim were dismissed. The Court thereafter granted in part Hacienda's Motion for Judgment on the Pleadings, dismissing all remaining Claimants except for Ramos. D.E. 169.

Pending before the Court are Ramos' claims for breach of contract, breach of the duty of good faith and fair dealing, attorney's fees under Texas law, and a declaratory judgment that Ramos is "entitled to an accounting for all revenue and profits from [Hacienda's] exploitation of the Works." D.E. 141, ¶ 68(iii). Hacienda now moves for summary judgment on all of Ramos' claims.

## II. Summary Judgment Standard

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence or evaluate the credibility of witnesses. *Id.* Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in

evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence, . . . a verdict should not be directed." *Anderson*, 477 U.S. at 250–51. The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might

affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

### III. Evidentiary Objections

Before considering the substantive merits of Hacienda's motion for summary judgment, the Court first notes that both Hacienda and Ramos have lodged objections to the opposing party's summary judgment evidence. The Court relied upon very little of the disputed evidence in ruling on Hacienda's motion for summary judgment and will specifically address the evidence it relied upon in ruling on Hacienda's motion. The Parties' objections that are not specifically addressed are **DENIED** as moot.

### IV. Analysis

#### A. Limitations

Hacienda first argues that it is entitled to summary judgment on all of Ramos' counterclaims because these state law claims are time barred under the statutes of limitations set forth in the Texas Civil Practice and Remedies Code. In response, Ramos argues that his counterclaims are not barred by limitations because they arose out of the same transaction or occurrence that is the basis of Hacienda's declaratory judgment claim and he filed his counterclaims in response to Hacienda's second amended complaint within 30 days after his answer was due.

The Texas statute relied upon by Ramos provides as follows:

> (a) If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.

> (b) The counterclaim or cross claim must be filed not later than the 30th day after the date on which the party's answer is required.

TEX. CIV. PRAC. & REM. CODE § 16.069. "Where the requirements of the statute are met, section 16.069 allows those who are already parties to the action to assert claims against one another that would otherwise be time-barred." *J.M.K. 6, Inc. v. Gregg & Gregg, P.C.*, 192 S.W.3d 189, 199 (Tex. App.–Houston [14th Dist.] 2006, no pet.).

Hacienda first argues that § 16.069 is not triggered here because Ramos' state law claims are unrelated to the declaratory judgment action brought by Hacienda. "To determine what constitutes a 'transaction,' [courts] employ the logical relationship test, which asks whether the essential facts on which the claims are based are significantly and logically relevant to both claims." *Wells v. Dotson*, 261 S.W.3d 275, 281 (Tex. App.–Tyler 2008, no pet.) (citing *Cmty. State Bank v. NSW Inv., L.L.C.*, 38 S.W.3d 256, 258 (Tex. App.–Texarkana 2001, pet. dism'd w.o.j.)). "Under this test, a transaction is flexible, comprehending a series of many occurrences logically related to one another." *Id.* The Court finds that Ramos' counterclaims and Hacienda's declaratory judgment claims stem from the same essential facts. Both Parties seek a declaration of rights related to certain songs that Ramos recorded in the 1980s pursuant to one or more written contracts. Ramos' claims for breach of contract, breach of the duty of good faith and fair dealing, and attorney's fees are based on these alleged contracts.

In the alternative, Hacienda argues that, to the extent Ramos' counterclaims arise from the same transaction or occurrence as Hacienda's copyright-related declaratory

judgment claims, these claims are preempted by the Copyright Act. State causes of action, whether "under the common law or statutes of any State," are subject to preemption under the Copyright Act if they create "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . ." 17 U.S.C. § 301(a). "First, the claim is examined to determine whether it falls 'within the subject matter of copyright' as defined by 17 U.S.C. § 102." *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (quoting *Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir. 1995)). Next, "the cause of action is examined to determine if it protects rights that are equivalent to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106." *Id.*

The Fifth Circuit "has held that breach of contract claims are not preempted by the Copyright Act." *Real Estate Innovations, Inc. v. Houston Ass'n of Realtors, Inc.*, 422 Fed. App'x 344, 349 (5th Cir. 2011). This is because "an action for breach of contract involves an element in addition to mere reproduction, distribution or display: the contract promise made by [the parties], therefore, it is not preempted." *Id.* (quoting *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990)). The Court finds that Ramos' breach of contract claim is therefore not preempted by the Copyright Act. His claims for breach of the duty of good faith and fair dealing, attorney's fees, and an accounting—all of which are based on the same alleged contracts and "involve an element in addition to mere reproduction, distribution or display"—are similarly not preempted by the Copyright Act. *See Real Estate Innovations*, 422 Fed. App'x at 349.

Hacienda next argues that § 16.069 should not apply here because Ramos' claims are "stale not by a matter of days but **by nearly thirty years**." D.E. 124, p. 21 (emphasis in original). However, nothing in the wording of § 16.069 places such limits on a defendant's counterclaims. *See Skytop Brewster Co. v. Skytop Int'l, Inc.*, 1993 WL 721287, *4 (S.D. Tex. Dec. 20, 1993) (rejecting plaintiff's argument that, "regardless of the plain wording of the statute, section 16.069 was not meant to apply to long stale claims").

Citing *Holman Street Baptist Church v. Jefferson,* Hacienda further contends that § 16.069 does not apply because Hacienda's only claim for relief is for a declaratory judgment. 317 S.W.3d 540, 545–46 (Tex. App.–Houston 2010, pet. denied). In *Jefferson*, the court explained that Texas courts "have interpreted section 16.069 as permitting a party's otherwise time-barred counterclaims or cross claims only when the opposing party has sought 'affirmative relief,' rather than just a declaration on a dispute between the parties." *Id*. Courts have further held that a claim for attorney's fees constitutes a claim for affirmative relief, thus allowing a counterclaim to proceed where the plaintiff sought attorney's fees in addition to a declaratory judgment. *See, e.g., Barraza v. Koliba*, 933 S.W.2d 164, 167–68 (Tex. App.–San Antonio 1996, writ denied) (defendant's counterclaim timely under section 16.069 where plaintiffs filed declaratory action and asked for attorney's fees); *ECC Parkway Joint Venture v. Baldwin*, 765 S.W.2d 504, 513–14 (Tex. App.–Dallas 1989, writ denied) (Because "[a] claim for attorney's fees is a claim for affirmative relief," defendant's counterclaim was not barred by limitations.). Because Hacienda's Second Amended Complaint seeks attorney's fees in addition to a

declaratory judgment, Hacienda's argument that § 16.069 is inapplicable here is without merit.

Finally, Hacienda argues that even if Ramos can bring his expired claims against Hacienda Records, he raises no basis under § 16.069 to bring expired claims against Latin America Entertainment, LLC; Rick Garcia; and Roland Garcia, Sr.—none of which were party Plaintiffs in Hacienda Records' original declaratory judgment action against Ramos. The Court agrees. *See J.M.K. 6, Inc.*, 192 S.W.3d at 202 ("[S]ection 16.069 by its express terms is limited to parties. . . . [T]he purpose of section 16.069 would not be served by rewriting it to allow a defendant to revive an expired claim against a non-party.").

In sum, the Court finds that § 16.069 allows Ramos to bring his counterclaims against Hacienda Records, even though they might otherwise be time barred.

### B. Breach of Contract

Ramos brings breach of contract claims against all named Counter-Defendants and Cross-Defendants: Hacienda Records; Latin America Entertainment, LLC; Rick Garcia, and Roland Garcia, Sr.

#### 1. The Alleged Contracts

Hacienda has produced evidence that Ramos entered into an Exclusive Artist Recording Agreement with Hacienda Records on September 7, 1985. 1985 Agreement, D.E. 64-10. Pursuant to the 1985 Agreement, Ramos agreed to record and deliver to Hacienda at least two albums per year during a four-year period. *Id.*, ¶ 3. He further agreed that Hacienda would own the sole and exclusive rights to all master sound records

and derivatives made thereunder. *Id.*, ¶ 5. In return, Hacienda agreed to pay Ramos a "$1000 recoupable advance . . . 90 days from the date of the contract on first LP." *Id.*, ¶ 5. Hacienda further agreed to compensate Ramos for his services based on LP and cassette sales, minus any "cash advances and production costs." *Id.*, ¶ 8. Royalties were to be calculated and paid semiannually, on or before 60 days after January 1 and June 30, for perpetuity. *Id.*

Ramos claims that he entered into a new contract with Hacienda Records in 1987, which was intended to "moot and replace" the terms of the 1985 Agreement. D.E. 99, p. 42. The alleged contract was not offered as summary judgment evidence by either party; however, Ramos submitted a letter dated July 15, 1987, signed by Ruben Garcia on behalf of Hacienda Records and by Ramos' attorney at the time, which provided that it would "serve until the details of the agreement can be drafted and signed." 1987 Letter, D.E. 99-6. Ramos does not remember ever entering into the contemplated 1987 contract, and he does not have a copy of the completed contract. Ramos Dep. Tr., D.E. 124-2, p. 135:8–13. Moreover, in his final supplemental brief on the issue of summary judgment, Ramos cites the 1985 Agreement as "his sole contract with Hacienda." D.E. 165, p. 4. Based on the evidence presented, the Court finds that there was no contract executed between Ramos and Hacienda in 1987.

### 2. Legal Standard

The elements of a breach of contract claim under Texas law are: (1) there is a valid and enforceable contract; (2) the plaintiff is a proper party to sue for breach of the contract; (3) the plaintiff performed, tendered performance, or was excused from

performing its contractual obligations; (4) the defendant breached the contract; and (5) the defendant's breach caused the plaintiff's injury. *Winchek v. Am. Express Travel Related Servs.*, 232 S.W.3d 197, 202 (Tex. App.–Houston [1st Dist] 2007, no pet.); *Doss v. Homecoming Fin. Network, Inc.*, 210 S.W.3d 706, 713 (Tex. App.–Corpus Christi 2006, pet denied); *Hackberry Creek Country Club, Inc., v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 55 (Tex. App.–Dallas 2006, pet. denied). "Breach" is the failure, without legal excuse, to perform any promise that forms all or part of an agreement. *Bernal v. Garrison*, 818 S.W.2d 79, 83 (Tex. App.–Corpus Christi 1991, writ denied).

### 3. Analysis

It is unclear from Ramos' pleading exactly what conduct by Hacienda gives rise to his breach of contract claim. In his Third Amended Counterclaim and Cross-Claim, Ramos "den[ies] and disavow[s]" any "license, contract, or agreement" between himself and Hacienda. D.E. 141, ¶ 129. According to Ramos, all such agreements are "deemed void" because they were "fraudulently induced, made without proper consideration, and were made without a meeting of the minds." *Id.* Ramos next alleges that Hacienda is "in breach of any agreement that may exist or that [Hacienda] claim[s]" because Hacienda "failed to fulfill promises made to Claimants regarding the use of their recording studio and the promotion and use of the Works at issue . . . , [and] never represented to Claimants that they would claim ownership in and to any of the subject Works. *Id.*, ¶ 131. According to Ramos, Hacienda's "conduct resulted in financial damages and a loss of profits to [him]." *Id.*, ¶ 132. In response to Hacienda's motion for summary judgment,

Ramos appears to change his theory once again, now alleging that Hacienda breached the 1985 Agreement because it "has not paid Ramos any monies or royalties for the exploitation of his Works—despite selling products that embody them." D.E. 99, pp. 44–45.

Hacienda moves for summary judgment on the grounds that Ramos explicitly denies that a valid and enforceable contract exists between the Parties. Hacienda further argues that Ramos has offered no competent evidence of breach. Finally, Hacienda contends that Latin America Entertainment, LLC; Rick Garcia, and Roland Garcia, Sr. cannot be held liable for breach of contract because they were not parties to the 1985 Agreement.

As an initial matter, the Court finds that only Ramos and Hacienda Records are parties to the 1985 Agreement. "As a general rule, a suit for breach of contract may not be maintained against a person who is not a party to the contract . . . ." *Bernard Johnson, Inc. v. Continental Constructors, Inc.*, 630 S.W.2d 365, 369 (Tex. App.—Austin 1982, writ ref'd n.r.e.). Accordingly, Latin America Entertainment, LLC; Rick Garcia, and Roland Garcia, Sr. are entitled to summary judgment on Ramos' breach of contract claim.

Next, as set forth above, Ramos' counterclaim explicitly "denies and disavows" any contract between himself and Hacienda and states that any such contracts are "deemed void" because they were "fraudulently induced, made without proper consideration, and were made without a meeting of the minds." D.E. 141, ¶ 129. In response to Hacienda's discovery requests, Ramos stated that, "to his knowledge, [he] is not a party to any contracts, business agreements, or licensing agreement with

[Hacienda], and disavows any such contracts, business agreement, or licensing agreements that [Hacienda] claim[s]." Ramos Answ. to Hacienda Interrog. No. 10, D.E. 64-4, p. 5. Finally, in response to Hacienda's motion for summary judgment, Ramos "disputes" that "the 1985 Agreement was ever in effect." D.E. 99, p. 42. Whether the 1985 Agreement is in fact void and/or unenforceable is a question of law for the Court to decide. *See In re Poly-Am., L.P.*, 262 S.W.3d 337, 349 (Tex. 2008). However, in disavowing the 1985 Agreement and stating that it is void and was never in effect, Ramos has undermined the first element of his breach of contract claim—that there is a valid and enforceable contract.

Even assuming the 1985 Agreement is a valid and enforceable contract, the Court finds that Ramos has failed to offer competent summary judgment evidence that Hacienda Records breached the 1985 Agreement. In support of his breach of contract claim, Ramos offers his own Declaration, executed January 9, 2015, wherein he states:

> Around September 1985 . . . I signed an Exclusive Artist Recording Agreement with Hacienda Records. My brother and I then recorded a number of sound recordings at Hacienda Records' studios, and we paid for the production of these master sound recordings ourselves. We did not receive any money from Hacienda, including the $1000 advance which was promised in the agreement.

Ramos Decl., D.E. 99-5, ¶ 3.

> Hacienda breached the 1985 Agreement and never paid me any monies or royalties and never provided me with an accounting for their exploitation of my works.

*Id.*, ¶ 13.

Hacienda moves to strike Ramos' Declaration because the above-quoted language and other portions of the declaration are contradicted by Ramos' deposition testimony given January 13, 2015. For example, Ramos swore in his Declaration that he "never received a copy of the alleged contract entered with Hacienda." Decl. ¶ 6. However, Ramos stated during his deposition that he received Hacienda's October 2, 1986 letter purporting to include a copy of the contract and could not dispute that the contract was included, he just lost it. Dep. Tr. at 128:2–129:16. Next, Ramos swears in his Declaration that he never received the $1,000 advance promised in the 1985 Agreement. Decl. ¶ 3. During his deposition, however, Ramos was shown an October 2, 1986 check for $1,000 payable to him, after which he admitted that he probably received the check as an advance on *Lo Pobre Que Soy* or he would not have continued recording, but he didn't remember. Dep. Tr. at 129:17–130:19. Similarly, while Ramos swears in his Declaration that Hacienda "never paid me any monies or royalties" (Decl. ¶ 13), Ramos admitted during his deposition that he couldn't remember whether he received any monies from Hacienda in addition to the $1,000 check. Dep. Tr. at 144:20-24.

The Fifth Circuit has held that a party may not create a material fact issue with a declaration that impeaches other testimony without explanation. *Smith v. DeTar Hosp. LLC*, 2012 WL 2871673, at *14 (S.D. Tex. Jul. 11, 2012) (citing *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996); *Thurman v. Sears, Roebuck, & Co.*, 952 F.2d 128, 136 n.23 (5th Cir. 1992)). Because Ramos has provided no valid explanation for his inability on January 13, 2015, to remember facts he swore to in his Declaration four days before, and these contradictory statements cannot be reconciled, his Declaration

will not be considered.[3] *See Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) (collecting authority holding that "a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment" and affirming order striking sham affidavit where plaintiff failed to recall specific details at his deposition and subsequently filed an affidavit fixing all his deposition omissions); *see also Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (affirming district court's order striking sham affidavit, recognizing that "a district court may find a declaration to be a sham when it contains facts that the affiant previously testified he could not remember"); *U.S. Underwriters Ins. Co. v. 14-33/35 Astoria Blvd.*, 2014 WL 1653199, at *6 (E.D.N.Y. Apr. 23, 2014) (striking affidavit that conflicted with later deposition testimony, where the affiant's "more recent testimony that he does not remember [material facts] demonstrates that he would be unable to testify as to his intentions at trial"); *Gilani v. GNOC Corp.*, 2006 WL 1120602, at *3 (E.D.N.Y. Apr. 26, 2006) (disregarding affidavit and concluding that plaintiff's inability to recall facts during her deposition testimony directly contradicted her statement in her affidavit).

Because Ramos has failed to state a claim upon which relief can be granted with respect to his breach of contract claim and failed to offer competent summary judgment evidence supporting breach, Hacienda Records is entitled to judgment as a matter of law on Ramos' breach of contract claim.

---

[3]. Ramos complains that the version of his deposition testimony submitted by Hacienda was not the final version. While Ramos did return an errata sheet to the court reporter after reviewing his deposition testimony (D.E. 129-1), these amendments did not correct or otherwise alter the contradictory statements cited by the Court.

### C. Breach of the Duty of Good Faith and Fair Dealing

Ramos brings claims for breach of the duty of good faith and fair dealing against all named Counter-Defendants and Cross-Defendants.

#### 1. Legal Standard

A duty of good faith and fair dealing may arise in two different ways: (1) through express contractual language, or (2) when there is a special relationship of trust and confidence between the parties. *Jhaver v. Zapata Off–Shore Co.*, 903 F.2d 381, 385 (5th Cir. 1990). Such "distinct, special relationships" are "earmarked by specific characteristics including: long standing relations, an imbalance of bargaining power, and significant trust and confidence shared by the parties." *Golden v. Diawa Corp.*, 2000 WL 251736, at *2 n.7 (W.D. Tex. Mar. 6, 2000) (citing *Caton v. Leach Corp.,* 896 F.2d 939, 948 (5th Cir. 1990)). "While a duty of good faith and fair dealing has been recognized in the insurance context, the Texas Supreme Court 'has hesitated to extend the duty . . . to other contexts beyond the special relationship between an insurance company and its insured.'" *Mattei v. Int'l Conference of Funeral Serv. Examining Bds.*, 2015 WL 5125799, at *5 (W.D. Tex. Sept. 1, 2015) (quoting *GTE Mobilnet Ltd. P'ship v. Telecell Cellular*, 955 S.W.2d 286, 295 (Tex. App.–Houston [1st Dist.] 1997, writ denied)). "Texas courts have declined to recognize a duty of good faith and fair dealing 'in a large variety of situations, including supplier-distributor, mortgagor-mortgagee, creditor-guarantor, lender-borrower, franchisor-franchisee, issuer-beneficiary of letter of credit, employer-employee, and insurance company-third party claimant.'" *Id.*

### 2. Analysis

In his Third Amended Counterclaim and Cross-Claim, Ramos alleges that "Counter Defendants admit that a duty of good faith and fair dealing is implied in any alleged contracts and exists in these transactions, yet they breached this duty, thereby causing harm to Claimants." D.E. 141, ¶ 130. As set forth above, a duty of good faith and fair dealing duty is not implied in all contracts. Moreover, Ramos has repeatedly refuted that the 1985 Agreement is a valid and enforceable contract. Assuming that it is valid, the 1985 Agreement is essentially an employment contract, and Texas courts have declined to recognize a duty of good faith and fair dealing in the employment context. *See Mattei*, 2015 WL 5125799 at *5. Ramos does not allege that this duty arose through express contractual language, nor does he allege any facts showing that a special relationship existed between himself and Hacienda or any other Cross-Defendants. To the contrary, Ramos has admitted that he did not have a relationship with anyone at Hacienda before entering into the 1985 Agreement. Ramos Dep. Tr., p. 184:6–19.

Accordingly, the Court finds that Hacienda is entitled to summary judgment on Ramos' claim for breach of the duty of good faith and fair dealing.

### D. Attorney's Fees

Ramos claims that he is entitled to an award of reasonable and necessary attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code. D.E. 141, ¶ 134.

### 1. Legal Standard

Under Texas law, "a person may recover reasonable attorney's fees . . . if the claim is for: (1) rendered services; (2) performed labor; (3) furnished material; (4) freight or express overcharges; (5) lost or damaged freight or express; (6) killed or injured stock; (7) a sworn account; or (8) an oral or written contract. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001. "[W]hen a prevailing party in a breach of contract suit seeks fees, an award of reasonable fees is mandatory, as long as there is proof of reasonable fees . . . and the plaintiff has been awarded damages." *Mathis v. Exxon Corp.*, 302 F.3d 448, 462 (5th Cir. 2002) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8)).

### 2. Analysis

Because Ramos is not the prevailing party on his breach of contract claim, he is not entitled to attorney's fees under § 38.001. Accordingly, Hacienda is entitled to summary judgment on this claim.

### E. Declaratory Judgment

Finally, Ramos seeks a declaration that he is "entitled to an accounting for all revenue and profits from [Hacienda's] exploitation of the Works." D.E. 141, ¶ 68(iii). According to Ramos, his "request for declaratory relief is necessary and proper due to [Hacienda's] ongoing and unsubstantiated ownership claims in and to [his] Works." *Id.*, ¶ 69.

In his Third Amended Counterclaim and Cross-Claim, Ramos seeks an accounting for royalties based on his copyright ownership claim, which he has since dismissed. As such, Ramos is not entitled to an accounting because he has no claims for ownership

related to any copyrights. *See Cambridge Literary Props., Ltd. V. Goebel Porzellanfobrik*, 510 F.3d 77, 81 (1st Cir. 2007) (plaintiff may not assert state-law claims for an accounting without establishing ownership).

In his first Response to Hacienda's Motion for Summary Judgment, Ramos instead argues that Hacienda is obligated to "provide royalties and accountings to Ramos upon receipt from CBS International" under the contemplated 1987 contract. D.E. 99, p. 6. In his Supplemental Briefing in Response to Hacienda's Motion for Summary Judgment (D.E. 165), Ramos now seeks a semi-annual accounting under the 1985 Agreement, which provides:

> Accounting of royalties shall be semi-annually, on or before 60 days after January 1, and June 30. Artist reserves the right to audit the Company's books at any time given 30 day notice at Artist's expense. Artist royalties shall be paid for perpetuity.

1985 Agreement, ¶ 8.

As set forth above, Ramos has repeatedly denied that the 1985 Agreement is a valid and enforceable contract, and he has presented no evidence that the contemplated 1987 contract was ever executed. Moreover, "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)). Accordingly, Ramos is not entitled to an accounting, and Hacienda is entitled to summary judgment on this claim.

## V. Conclusion

For the reasons set forth above, Hacienda's Motion for Summary Judgment against Claimant Ruben Ramos (D.E. 64) and Motion to Strike Sham Declaration[] in Support of [Ramos'] Summary Judgment Response[] (D.E. 126) are **GRANTED**, and Ramos' counterclaims and cross-claims are **DISMISSED**.

ORDERED this 2nd day of November, 2015.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE