United States District Court
Southern District of Texas
**ENTERED**
June 29, 2016
David J. Bradley, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **HACIENDA RECORDS, LP,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 2:14-19** |
| | § | |
| **RUBEN RAMOS, *et al.*,** | § | |
| **Defendants.** | § | |

### MEMORANDUM OPINION & ORDER

Pending before the Court is Hacienda Records, L.P.'s ("Hacienda") Motion for Summary Judgment on its Counterclaim (D.E. 183), to which Claimants Ruben Ramos, Hugo Cesar Guerrero, and Arturo Rene Serrata (collectively "Claimants") have responded (D.E. 187) and Hacienda has replied (D.E. 190). For the reasons set forth below, Hacienda's motion is **GRANTED**.

### I. Background

The facts giving rise to this litigation, as well as its extensive procedural history, are set forth at length in the Court's prior orders granting in part Hacienda's motion for judgment on the pleadings and dismissing Claimants Guerrero and Serrata's claims (D.E. 169) and granting summary judgment in favor of Hacienda on Claimant Ramos' claims (D.E. 176). *See Hacienda Records v. Ramos*, 2015 WL 5732558 (S.D. Tex. Sept. 30, 2015), 2015 WL 6680597 (S.D. Tex. Nov. 2, 2015).

Remaining is Hacienda's counterclaim for a declaration of ownership of its master sound recordings and related matters. According to Hacienda, Claimants entered into various recording agreements with Hacienda dating back to the 1980s, whereby

1

Claimants were hired to record vocals onto sound recordings for Hacienda and agreed that Hacienda would own the master sound recordings to the albums. However, Claimants now assert that they own the copyrights to Hacienda's master sound recordings, and their attorney has improperly deposited with the U.S. Copyright Office several of Hacienda's entire master CD compilations, as opposed to a mere sound recording of Claimants' voices.

Hacienda now moves for summary judgment on its counterclaim and seeks a declaratory judgment under 18 U.S.C. § 2201 that: (1) Hacienda owns the copyright to the master sound recordings and compilations; (2) Claimants and their assigns have no copyright ownership in the master sound recordings and compilations; and (3) any copyright registrations by Claimants to Hacienda's master sound recordings and compilations are invalid.

## II. Summary Judgment Standard

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In making this determination, the court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.

2

*Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The court may not weigh the evidence or evaluate the credibility of witnesses. *Id.* Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence, . . . a verdict should not be directed." *Anderson*, 477 U.S. at 250–51. The

evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

## III. Declaratory Judgment Act

The Declaratory Judgment Act has been "repeatedly characterized . . . as 'an enabling act, which confers discretion on the courts rather than an absolute right on a litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). In analyzing whether to decide a declaratory judgment action, a court must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). The Fifth Circuit has also identified seven non-exclusive factors that district courts must consider when deciding whether to exercise their discretion to decide a declaratory judgment action. *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994). These factors include:

> "1) whether there is a pending state action in which all of the matters in controversy may be fully litigated, 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant, 3) whether the plaintiff engaged in forum shopping in bringing the suit, 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist, 5) whether the federal court is a convenient forum for the parties and witnesses, and 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy," and . . . [7]] whether the federal court is being called on to construe a state judicial decree

4

involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Id.* (quoting *Travelers Ins. Co. v. La. Farm Bureau Fed'n*, 996 F.2d 774, 778 (5th Cir. 1993)). In *Sherwin-Williams*, the Fifth Circuit added another factor—the presence of a federal question—stating that "'[t]he presence of federal law issues must always be a major consideration weighing against surrender' of federal jurisdiction." *Sherwin–Williams Co. v. Homes County*, 343 F.3d 383, 396 (5th Cir. 2003) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983)).

The application of the *Trejo* factors supports the Court's retention of this case. There is no pending parallel state proceeding, and Hacienda's complaint raises federal questions, making it appropriate for federal court. While Hacienda did file this lawsuit in anticipation of litigation by Claimants, "[m]erely filing a declaratory judgment action in federal court with jurisdiction to hear it, in anticipation of . . . litigation, is not in itself improper anticipatory litigation . . . ." *Sherwin–Williams*, 343 F.3d at 391. Indeed, if Hacienda did not anticipate a lawsuit, its declaratory judgment claim would lack the immediacy required for the controversy to be justiciable. *See Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) ("A controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop.") (quoting *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1967)). There is no evidence of forum shopping, and the Corpus Christi Division appears to be the most convenient forum, as Hacienda's principal place of business is in Corpus Christi and two of the five

Claimants named in Hacienda's First Amended Complaint reside in the Corpus Christi Division. Finally, the Court has already ruled on Claimants' counter-claims and is intimately familiar with the facts of this case; thus, retaining this lawsuit would serve the purposes of judicial economy.

Moreover, this district has recognized that "[d]eclaratory judgment is an appropriate means of determining intellectual property rights when: (1) the party seeking declaratory judgment has real and reasonable apprehension of litigation; and (2) the party seeking declaratory judgment has engaged in a course of conduct that brings it into adversarial dispute with its opponent." *Baisden v. I'm Ready Prods., Inc.*, 804 F. Supp. 2d 549, 552 (S.D. Tex. 2011) (citing *Texas v. West Pub. Co.*, 882 F.2d 171, 175 (5th Cir. 1989)). "Traditional indicia of an objectively reasonable fear of litigation are direct threats by the defendant or a history of litigation between the parties." *West Pub.*, 882 F.2d at 176. As set forth in the Court's prior orders, Hacienda filed this action in response to a letter from counsel for Claimants, David Showalter, requesting: copies of contracts or agreements between Claimant Ramos and Hacienda with respect to certain songs recorded by Hacienda and sung by Ramos ("Ramos Works"), documents reflecting the quantities of products manufactured and sold by Hacienda that embody Ramos' Works, and any accountings and/or payments owed to Ramos for the exploitation of his Works. The letter also requested that Hacienda immediately cease and desist from any unlicensed exploitations of Ramos' Works. Based on several other lawsuits in the Southern District

of Texas involving Hacienda and Mr. Showalter,[1] Hacienda had an objectively reasonable apprehension of litigation yet again.

For these reasons, the Court will exercise its discretion to decide this declaratory judgment action.

## IV. Motions to Strike

In its Motion to Strike the Expert Report of Edward Z. Fair (D.E. 189), Hacienda complains that Mr. Fair's report: is unreliable, immaterial, impertinent, and irrelevant; provides nothing more than improper and erroneous legal opinions; does not consider the written copyright assignment agreements in reaching the legal conclusion that Hacienda does not have any copyright ownership in the sound recordings; and is inadmissible hearsay. The Court finds that, by training and experience, Mr. Fair is qualified as an expert in the music industry. Hacienda's objections go more to the weight that Mr. Fair's report should be given than to his qualification as an expert, and "'[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [factfinder's] consideration.'" *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). Thus, the Court finds that Mr. Fair's report should not be stricken, but should be considered and weighed accordingly.

---

1. *See Guzman v. Hacienda Records & Recording Studio, Inc.*, Civil Action No. 6:12-42 (S.D. Tex. – Victoria); *Tempest Publishing, Inc. v. Hacienda Records & Recording Studio, Inc.*, Civil Action No. 4:12-736 (S.D. Tex. – Houston); *Sanchez v. Hacienda Records & Recording Studio, Inc.*, Civil Action 4:11-3855 (S.D. Tex – Houston). *See also Guerrero v. Martinez*, Civil Action No. 4:11-1774 (S.D. Tex. – Houston); *Guajardo v. Freddie Records, Inc.*, Civil Action No. 4:10-2024 (S.D. Tex. – Houston); *Sanchez v. Freddie Records*, Civil Action No. 4:10-2995 (S.D. Tex. – Houston).

Next, Claimants move to strike Hacienda's motion for summary judgment in its entirely for failing to abide by the 25-page limitation set forth in the Court's Amended Scheduling Order. The Court will not strike Hacienda's 26-page motion, but will disregard page 26.

In their Motion to Strike the Declaration of Rick Garcia (D.E. 186), Claimants similarly complain that the Garcia Declaration exceeds 25 pages, arguing that "Hacienda cannot use the Garcia Declaration as a source of additional briefing—either in an effort to skirt the mandatory page limitations, or otherwise." D.E. 186, p. 2. This objection is without merit; the declaration is not a legal memorandum, but is instead summary judgment evidence, on which there are no page limitations. Claimants further complain that rather than provide a statement of facts based on his personal knowledge, Mr. Garcia improperly offers legal arguments and conclusions. The Court agrees that Mr. Garcia has offered numerous legal conclusions, and those portions of his declaration will be disregarded; however, to the extent the Court has regarded factual portions of the Garcia Declaration as relevant, admissible, and necessary to the resolution of particular summary judgment issues, the Court will consider this evidence. *See Lee v. Nat'l Life Assurance Co.*, 632 F.2d 524, 529 (5th Cir. 1980) ("The rule is settled that on a motion for summary judgment a court will disregard only the inadmissible portions of a challenged affidavit offered in support of or opposition to the motion and will consider the admissible portions in determining whether to grant or deny the motion."). Moreover, the Court does not find Mr. Garcia's declaration to be inconsistent with his deposition testimony.

Finally, the Court notes that, in support of their response to Hacienda's current motion for summary judgment, Claimants "adopt and incorporate [Ruben Ramos' Response to Motion for Summary Judgment (Doc. No. 99), Hugo Guerrero's Response to Motion for Summary Judgment (Doc. No. 101), and Arturo Serrata's Response to Motion for Summary Judgment (Doc. No. 104)] as though fully set forth herein." D.E. 187, p. 5. These memoranda total 96 pages in length—nearly four times the limitation set forth by the Court. Claimants may not rely on their responses to Hacienda's prior motions for partial summary judgment as a source of additional briefing, either in an effort to skirt the mandatory page limitations, or otherwise. It is also not the Court's responsibility to ferret out Claimants' response to Hacienda's current motion for summary judgment by piecing together these various memoranda. Accordingly, only Claimants' arguments contained within D.E. 187 will be considered.

**V. Analysis**

The master sound recordings that Claimants claim to own, for which they obtained copyright registrations, are as follows:

> Ruben Ramos
> HAC 8207 – *15 Hits*
> SC 178 – *20 Hits de los Meros Leones*
> HAC 7579 – *Back to Back Again!*
> HAC 7578 – *Lo Pobre Que Soy*
> HAC 7684 – *Medley of 34 Golden Hits*
> ZML-80005 – *El Gato Negro y Paloma RR*
>
>
> Hugo Guerrero
> HAC-8357 – *Hugo Guerrero Y La ConnXcion*
> HAC-7610 – *La Charanga de Nuevo*
> HAC-7612 – *El Mero Fandango*

Rene Serrata
HAC 7673 – *Tu Vestido Blanco*
HAC-7314 – *Bobby Naranjo and Rene Serrata, Special Edition*
HAC-7650 – *Que Sera de Mi*
HAC-7511 – *Los Buenos Hnos. Serrata, Como Te Llamas Tu*

## A. Whether Hacienda owns the copyright to the master sound recordings and compilations.

Hacienda moves for a declaration that it owns the copyright to the master sound recordings and compilations listed above based on: (1) the undisputed deposition testimony of Claimants that Hacienda owns the master sound recordings in question; (2) Claimants' executed recording agreements stating that Hacienda owns the masters; and (3) the copyright notice in Hacienda's name that was affixed to Hacienda's mastered products upon the creation, release, and publication of the master sound recordings and compilations, prior to Claimants' registrations.

### 1. Legal Standard

The Copyright Act sets out eight categories or "works" that are protectable, including "sound recordings." 17 U.S.C. § 102(a)(7). "Sound recordings" are "works that result from the fixation of a series of musical, spoken, or other sounds, but not including the sounds accompanying a motion picture or other audiovisual work, regardless of the nature of the material objects, such as disks, tapes, or phonorecords, in which they are embodied." *Id.* § 101.

Ownership of the copyright in a work occurs at creation, and when published, a copyright notice may be affixed to the copyrighted work "identifying the name of the owner of the copyright." 17 U.S.C. §§ 201(a), 402(b)(3). The Copyright Act of 1976

provides that copyright ownership "vests initially in the author or authors of the work." *Id.* § 201(a). As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection. *Id.* § 102. A party may also become the owner of a copyright under a written transfer of ownership or if the work was "made for hire." *Id.* § 201(b)(d); *see also* Fair Report, D.E. 187-2, p. 3.

If the work is for hire, "the employer or other person for whom the work was prepared is considered the author" and owns the copyright, unless there is a written agreement to the contrary. 17 U.S.C. § 201(b). "In *Reid*, the [Supreme] Court held that general principles of agency law apply when deciding whether the work in issue was prepared by an 'employee' rather than an independent contractor." *Quintanilla v. Tex. Television Inc.*, 139 F.3d 494, 497 (5th Cir. 1998) (citing *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989)).

Under the Copyright Act, "[a] transfer of copyright ownership . . . is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a). The purpose of Section 204(a) is "to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses." *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2d Cir. 1982), *superseded on other grounds by* FED. R. CIV. P. 52(a). The writing in question "doesn't have to be the Magna Carta; a one-line pro forma statement will do." *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990). Nor does the writing have to contain any particular language.

11

*Lyrick Studios, Inc. v. Big Idea Prods., Inc.*, 420 F.3d 388, 391–92 (5th Cir. 2005) (citing

*Radio Television Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922, 927 (9th Cir.

1999) ("No magic words must be included in a document to satisfy § 204(a)."). However,

it must show an agreement to transfer copyright. *Id.*

     A sound recording ultimately released and published may also be called a "master

recording." *See Curington v. UMG Recordings, Inc.*, 2011 WL 3568278, *2 (M.D.N.C.

2011), *aff'd*, 468 Fed. App'x 304 (4th Cir. 2012). A "compilation" includes all the

mastered sound recordings on a released album, which are "selected, coordinated, or

arranged in such a way that the resulting work as a whole constitutes an original work of

authorship." 17 U.S.C. § 101. The "normal practice in the [music] industry" regarding the

ownership of master sound recordings has been aptly summarized as follows:

> [W]hen [a] song is recorded, there is a separate copyright in
> the performance of the song. *Jordan v. Sony BMG Music
> Entm't, Inc.*, 637 F. Supp. 2d 442 (S.D. Tex. 2008) ("Under
> the Copyright Act, sound recordings (in this case, the fixation
> of the combined music and lyrics) and the underlying musical
> compositions are separate works with distinct copyrights").
> When an artist enters into a contract with a record label, the
> performance generally does not exist. The record label pays
> for the cost of creating the performance, including an advance
> to the artist, payment of the musicians who perform the song
> and payment of the costs of creating the master recording. In
> return, the artist agrees that the copyright to the performance
> (as opposed to the words and music themselves) belongs to
> the record label. The master is the embodiment of the
> performance on tape or digital image which can be used to
> produce compact discs or digital downloads for sale to the
> public. Because the record label pays for the creation of the
> master, record contracts provide that the master belongs to the
> label. More importantly, the copyright for the performance
> belongs to the label as well.

*In re Antone's Records, Inc.*, 445 B.R. 758, 779 (Bankr. W.D. Tex. 2011).

### 2. Analysis

#### a. Ruben Ramos

Hacienda has produced undisputed evidence that Ramos entered into an Exclusive Artist Recording Agreement with Hacienda Records in 1985. D.E. 64-10. Pursuant to this Agreement, Hacienda "employ[ed] the exclusive services of [Ramos] as a recording artist" and Ramos "accept[ed] such employment." *Id.* ¶ 1. Ramos agreed "to record and deliver to [Hacienda] a minimum number of master recordings embodying [Ramos'] performances . . . ." *Id.* ¶ 3. Hacienda agreed "to advance all costs for production of master recordings," and Ramos agreed that Hacienda "shall own the sole, exclusive and worldwide rights in perpetuity in and to all master sound recordings made hereunder and all derivatives thereunder and in and to the performances of Artist embodied therein." *Id.*, ¶ 5. Ramos stated in his deposition that he agreed to Paragraph 5 of the Agreement, that it was typical for a record label to own the master sound recordings, and that Hacienda had the right to manufacture, license, and sell the master sound recordings. Ramos Dep., D.E. 124-2, Tr. at 113:22-115:6. Claimants' expert, Edward Fair, did not review this agreement—in fact, he did not review any of the recording agreements cited herein. However, Mr. Fair conceded that "[c]ertainly, such an agreement may result in Hacienda owning the copyright in the recordings." Fair Report, D.E. 187-2, p. 1. The Court therefore finds the Exclusive Artist Recording Agreement sufficient to transfer copyright ownership to Hacienda.

Hacienda has offered undisputed evidence that *15 Hits*, *20 Hits de los Meros Leones*, *Back to Back Again!*, *Lo Pobre Que Soy*, *Medley of 34 Golden Hits*, and *El Gato Negro y Paloma RR* were recorded at Hacienda Records, pursuant to the written Agreement, and made during the timeframe of the Agreement. *See* Rick Garcia Decl., D.E. 183-1, ¶¶ 1–10, 58–59. In each case, Hacienda provided original contributions in the form of sound engineering, editing, mixing, and mastering, and then each sound recording was published and released by Hacienda with the affixed copyright notice in Hacienda's name.[2] *Id.*; D.E. 64-11, 64-13, 64-14, 64-18, 64-23, 183-2.

Accordingly, the Court finds that, consistent with industry standard, Hacienda owns the copyright to the master sound recordings of *15 Hits*, *20 Hits de los Meros Leones*, *Back to Back Again!*, *Lo Pobre Que Soy*, *Medley of 34 Golden Hits*, and *El Gato Negro y Paloma RR*.

### b. Hugo Guerrero

Hacienda has produced undisputed evidence that Claimant Guerrero entered into an Exclusive Artist Development Recording Agreement with Hacienda Records in 2002. D.E. 65-10. This agreement contained language identical to that quoted in the Ramos Agreement. *Id.* ¶¶ 1, 3, 5, 7. The Court finds the Exclusive Artist Development Recording Agreement sufficient to transfer copyright ownership to Hacienda.

Hacienda has also produced undisputed evidence that Guerrero entered into a Master Recording Agreement for World-Wide Distribution with Hacienda Records in

---

2.   *Lo Pobre Que Soy* was initially published and released by RCA Ariola International, which was affiliated with Hacienda at the time; rights to the sounds recordings have since reverted to Hacienda.

2012, wherein he agreed to "assign to [Hacienda] for PERPETUITY (forever) all rights" to a number of master songs. D.E. 65-14.[3] This Agreement is also sufficient to transfer copyright ownership to Hacienda.

*La Charanga de Nuevo* and *El Mero Fandango* were recorded at Hacienda Records, pursuant to the 2002 Exclusive Artist Development Recording Agreement, during the timeframe of the Agreement. *See* Rick Garcia Decl. ¶¶ 11–14, 67. The compilation entitled *Hugo Guerrero Y La ConnXcion* was recorded pursuant to the 2012 Master Recording Agreement for World-Wide Distribution. *Id.* ¶¶ 15–16, 67. In each case, Hacienda provided original contributions in the form of sound engineering, editing, mixing, and mastering, and then each sound recording was published and released by Hacienda with the affixed copyright notice in Hacienda's name. *Id.* ¶¶ 11–16, 67; D.E. 65-9, 65-11, 65-13. Finally, Guerrero has admitted that Hacienda owns the master sound recordings on *Hugo Guerrero Y La ConnXcion*. Guerrero Dep., D.E. 122-2, Tr. at 183:19-23.

Accordingly, the Court finds that, consistent with industry standard, Hacienda owns the copyright to the master sound recordings of *Hugo Guerrero Y La ConnXcion*, *La Charanga de Nuevo*, and *El Mero Fandango*.

### c. Rene Serrata

Hacienda has produced undisputed evidence that Claimant Serrata entered into four recording agreements with Hacienda Records.

---

3.  An Addendum swapped out four songs in this master. D.E. 65-15.

In a June 25, 1991 Agreement, Hacienda "employ[ed] the exclusive services of Rene Serrata and Los Buenos." D.E. 66-10, ¶ 1. Serrata was hired "to record and deliver to [Hacienda] 2 masters per year." *Id.* ¶ 3. Hacienda "agree[d] to advance all the costs for the production of master recordings," and Serrata "agree[d] that [Hacienda] shall own the sole, exclusive and worldwide rights in perpetuity in and to all master recordings and any and all other types of sound recording releases obtained from the master." *Id.* ¶ 5. "As the sole and entire compensation for [Serrata's] services," Hacienda agreed to sell cassettes to Serrata at a discounted price. *Id.* ¶ 7. The sound recordings in *Tu Vestido Blanco* were made pursuant to this Agreement. Garcia Decl. ¶ 68. The Court finds this Agreement sufficient to transfer copyright ownership to Hacienda.

In an Agreement dated October 15, 1991, Serrata was hired "to sing lead and harmony on an unreleased LP performed by Bobby Naranjo and his group Direccion," and he agreed his "sole compensation for this recording" would be $300. D.E. 66-18. The compilation entitled *Bobby Naranjo and Rene Serrata, Special Edition* (hereinafter "*Special Edition*") was recorded at Hacienda Records in 1992 pursuant to this Agreement. Garcia Decl. ¶¶ 57, 69. The Court finds this Agreement sufficient to transfer copyright ownership to Hacienda.

In a 2003 Recording Master Purchase Agreement for Worldwide Distribution, Serrata recorded and "agree[d] to sell to [Hacienda] for PERPETUITY (forever)" the sound recordings in the album *Que Sera de Mi*. D.E. 66-20, ¶ 1. Serrata further granted Hacienda the right to use his voice "in all fields throughout the world of phonorecords made hereunder, on the above purchased master." *Id.* ¶ 3. The Court finds the Recording

16

Master Purchase Agreement for Worldwide Distribution Agreement sufficient to transfer copyright ownership to Hacienda.

Serrata recorded *Como Te Llamas Tu* pursuant to a written agreement executed in 1979, wherein Serrata agreed that Hacienda would own the master sound recordings. Garcia Decl. ¶ 68. Hacienda has not submitted a copy of this written agreement; however, Serrata does not dispute the agreement's existence or contents. The Court finds a written agreement stating that Hacienda owns the master sound recordings on *Como Te Llamas Tu* is sufficient to transfer copyright ownership to Hacienda.

In each case, Hacienda provided original contributions in the form of sound engineering, editing, mixing, and mastering, and then each sound recording was published and released by Hacienda with the affixed copyright notice in Hacienda's name. Garcia Decl. ¶¶ 52–57; D.E. 66-9, 66-11, 66-17, 66-19, 183-3. Finally, Serrata has admitted that Hacienda owns the master sound recordings in question. Serrata Dep., D.E. 126-3, Tr. at 135:4-19, 137:8-14.

Accordingly, the Court finds that Hacienda owns the master sound recordings to *Tu Vestido Blanco*, *Special Edition*, *Que Sera de Mi*, and *Como Te Llamas Tu.*

**B. Whether Claimants and their assigns have any copyright ownership in the master sound recordings and compilations.**

As set forth in Part V.A. above, Hacienda owns the master sound recordings to *15 Hits*, *20 Hits de los Meros Leones*, *Back to Back Again!*, *Lo Pobre Que Soy*, *Medley of 34 Golden Hits*, *El Gato Negro y Paloma RR*, *Hugo Guerrero Y La ConnXcion*, *La Charanga de Nuevo*, *El Mero Fandango*, *Tu Vestido Blanco*, *Special Edition*, *Que Sera de Mi*, and *Como Te Llamas Tu.* While joint authorship could theoretically entitle each

Claimant to an equal undivided interest in his recordings, *see* 17 U.S.C. § 201(a); *Thomson v. Larson*, 147 F.3d 195, 199 (2d Cir. 1998), Claimants have offered no evidence of joint authorship in the recordings, or that they retained any interest in the recordings in which they transferred their ownership rights to Hacienda.[4] To the contrary, Hacienda's CDs include an attribution of copyright notice in Hacienda's name only as the copyright owner, and the various written agreements cited herein make clear that Hacienda is the owner of the master recordings. Accordingly, the Court finds that Claimants and their assigns have no copyright interest in the master sound recordings and compilations listed herein.

### C. Whether any copyright registrations by Claimants to Hacienda's master sound recordings and compilations are invalid.[5]

Claimants previously brought counterclaims against Hacienda for copyright infringement based on copyright registrations they obtained for the sound recordings listed above. Hacienda moves for a declaratory judgment that Claimants' copyright registrations are invalid because Claimants and/or their attorney purchased Hacienda's mixed and mastered CD's and then wrongfully registered them as their own with the U.S. Copyright Office. Moreover, most of Claimants' registrations were submitted more than five years after Hacienda's creation, publication, and release of the sound recordings;

---

4. A "joint work" is "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. The authors of a joint work are co-owners of copyright in the work. *Id.* § 201(a).

5. Hacienda's motion for summary judgment seeks a declaration that "[a]ny copyright registrations by Claimants to Hacienda's master sound recordings and compilations *contain intentionally and materially false information* and are invalid." D.E. 183, p. 25 (emphasis added). However, Hacienda's counterclaim only asks for a declaration that Claimants' copyright registrations are invalid. D.E. 153, p. 27. Accordingly, the Court declines to make a finding regarding intent.

most contain false publication dates and/or false claims of authorship; and all contain false claims of ownership.

### 1. Legal Standard

"A certificate of registration, if timely obtained, is prima facie evidence both that a copyright is valid and that the registrant owns the copyright." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004). However, the U.S. Copyright Office does not examine copyright applications for validity. *See Gaste v. Kaiserman*, 863 F.2d 1061, 1065 (2d Cir. 1988) (quoting H.R. Rep. 1476, 94th Cong., 2d Sess., 156–57 (1976)); *Donald v. Uarco Bus. Forms*, 478 F.2d 764, 765 n.1 (8th Cir. 1973). Thus, the presumption that a certificate of registration creates is rebuttable. *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 47 (5th Cir. 1995).

Only "the owner of copyright or of any exclusive right in the work may obtain registration of the copyright claim . . . ." *See* 17 U.S.C. § 408(a). As such, false statements of ownership or authorship in a work render a copyright registration invalid as a matter of law. *See, e.g.*, *Kunkel v Jasin*, 420 Fed. App'x 198, 199–200 (3d Cir. 2011) ("Because the bankruptcy estate, not [Claimant], owned the designs at the time that [Claimant] registered them with the Copyright Office, those registrations are invalid."); *Choyce v. SF Bay Area Ind. Media Ctr.*, 2014 WL 5597274, at *5 (N.D. Cal. 2014) ("[Claimant] filed a registration application which identified himself as the 'author' of the image, which he knew he was not. And then, when faced with the argument that he still had no valid ownership interest in any copyright, he resorted to additional meritless arguments: That his registration was prima facie valid (which it was not) . . ."); *16 Casa*

*Duse, LLC v. Merkin*, 2013 WL 5510770, at *11, 12 (S.D.N.Y. 2013), rev'd and remanded on other grounds, 791 F.3d 247 (2d Cir. 2015) (court had "no difficulty finding that Plaintiff is entitled to summary judgment invalidating [defendant's] copyright registration" where defendant was not the author of the work).

Copyright registrations made more than five years after the publication and release of a work similarly have no presumption of validity as a matter of law. *See* 17 U.S.C. § 410(c); *Berg v. Symons*, 393 F. Supp. 2d 525, 539 (S.D. Tex. 2005) ("Section 410 of the Copyright Act requires that a court presume a copyright is valid if registered within five years of the work's first publication. If the copyright is registered after the five-year period, the court may give as much weight to the copyright registration as it desires.").

### 2. Analysis

#### a. Ramos

Hacienda has produced uncontroverted evidence that Ramos and/or his attorney purchased, submitted to the Copyright Office, and claimed to own the Hacienda-published and released CDs *15 Hits*, *20 Hits de los Meros Leones*, *Back to Back Again!*, *Lo Pobre Que Soy*, *Medley of 34 Golden Hits*, and *El Gato Negro y Paloma RR*, containing Hacienda's copyright notice.[6] Ramos Dep. at 173:16-24; D.E. 124-4, Ramos 1st Supp. Resp. to Hacienda's First Req. for Admis. Nos. 9–15.

---

6. Claimants argue that registering Hacienda's masters, "rather than the roughcut, unmastered original," is excusable under the theory of using a "copy of the work, not a reconstruction." D.E. 187, p. 9. However, as Claimant Geurrero admits, a pre-production "click track" of a voice or other sound is a much different work than a mastered sound recording. *See* Guerrero Dep. at 251:24–252:18; 149:3-25.

All of Ramos' copyright registrations contain false publication dates and were submitted more than five years after Hacienda's creation, publication, and release of the sound recordings. Garcia Decl. ¶¶ 1–10, 58–59; D.E. 64-26; D.E. 64-14, 99-11 at 12 (*15 Hits*); D.E. 64-18, 99-11 at 5 (*20 Hits de los Meros Leones*); D.E. 64-11, 64-13, 99-11 at 8 (*Back to Back Again!*); D.E. 64-19–64-22, 99-11 at 9 (*Lo Pobre Que Soy*); D.E. 64-23, 99-11 at 1 (*Medley of 34 Golden Hits*); D.E. 155-1, 183-2 (*El Gato Negro y Paloma RR*). Several of Ramos' copyright registrations contain admittedly false authorship claims. *C.f. Id.*; Ramos Dep. at 178:17–179:6 (*15 Hits*), 175:9-23 (*Back to Back Again!*), 175:25-178:16 (*Lo Pobre Que Soy*), 170:1–171:2 1 (*Medley of 34 Golden Hits*). Ramos also falsely claimed to own all six master recordings. As set forth above, Hacienda owns the copyright to these recordings.

Accordingly, the Court finds that Ramos' copyright registrations for *15 Hits*, *20 Hits de los Meros Leones*, *Back to Back Again!*, *Lo Pobre Que Soy*, *Medley of 34 Golden Hits*, and *El Gato Negro y Paloma RR* are invalid.

### b. Guerrero

Hacienda has produced uncontroverted evidence that Guerrero and/or his attorney purchased, submitted to the U.S. Copyright Office, and claimed to own the Hacienda-published and released CDs *Hugo Guerrero Y La ConnXcion*, *La Charanga de Nuevo*, and *El Mero Fandango*, containing Hacienda's copyright notice. Guerrero Dep. at 173:16-24; D.E. 126-7, Guerrero 1st Supp. Resp. to Hacienda's First Req. for Admis. Nos. 9–15.

21

The copyright registration for *El Mero Fandango* contains a false publication date, and the registrations for both *La Charanga De Nuevo* and *El Mero Fandango* were submitted more than five years after Hacienda's creation, publication, and release of the sound recordings. Garcia Decl. ¶¶ 11–16; D.E. 65-9, 65-17 at 5 (*La Charanga De Nuevo*); D.E. 65-11, 65-17 at 7 (*El Mero Fandango*). These registrations also contain admittedly false authorship claims. *C.f. Id.*; Guerrero Dep. at 87:2-19 (*La Charanga De Nuevo*) and 82:20-24, 98:8-24, 251:24–252:18 (*El Mero Fandango*). Finally, Guerrero falsely claimed to own all three master recordings. As set forth above, Hacienda owns the copyright to these recordings.

Accordingly, the Court finds that Guerrero's copyright registrations for *Hugo Guerrero Y La ConnXcion*, *La Charanga de Nuevo*, and *El Mero Fandango* are invalid.

### c. Serrata

Finally, Hacienda has produced uncontroverted evidence that Serrata and/or his attorney purchased, submitted to the U.S. Copyright Office, and claimed to own the Hacienda-published and released CDs *Tu Vestido Blanco*, *Special Edition*, *Que Sera de Mi*, and *Como Te Llamas Tu*, containing Hacienda's copyright notice. Serrata Dep. at 113:11-16; D.E. 126-7, Serrata 1st Supp. Resp. to Hacienda's First Req. for Admis. Nos. 9–15.

The copyright registrations for *Tu Vestido Blanco* and *Que Sera De Mi* contain false publication dates, and all registrations were submitted more than five years after Hacienda's creation, publication, and release of the sound recordings. Garcia Decl. ¶¶ 52–57, 60–61; D.E. 66-24 at 78, 66-11, Serrata Dep. at 261:16–262:7 (*Tu Vestido*

*Blanco*); D.E. 66-24 at 80, D.E. 66-9 (*Special Edition*); D.E. 66-24 at 76, D.E. 66-17 (*Que Sera De Mi*); D.E. 155-1 at 2, D.E. 183-3 (*Como Te Llamas Tu*). These registrations also contain admittedly false authorship claims. *C.f.  Id.*; Serrata Dep. at 94:24-96:19 (*Tu Vestido Blanco*), 212:20–213:14, 267:13–268:7 (*Special Edition*), 253:18–255:25 (*Que Sera de Mi*), 81:3-15, 276:13-21. Finally, Serrata falsely claimed to own all four master recordings. As set forth above, Hacienda owns the copyright to these recordings.

Accordingly, the Court finds that Serrata's copyright registrations to *Tu Vestido Blanco*, *Special Edition*, *Que Sera de Mi*, and *Como Te Llamas Tu* are invalid.

## VI. Conclusion

For the reasons set forth above, Hacienda's Motion for Summary Judgment on its Counterclaim (D.E. 183) is **GRANTED**, and it is hereby **DECLARED** that:

1) Hacienda owns the copyright to the master sound recordings and compilations;

2) Claimants and their assigns have no copyright ownership in the master sound recordings and compilations; and

3) Any copyright registrations by Claimants to Hacienda's master sound recordings and compilations are invalid.

It is further **ORDERED** that Claimants' Motion to Strike Declaration of Rick Garcia (D.E. 186) is **GRANTED IN PART AND DENIED IN PART**; Hacienda's Motion to Strike the Expert Report of Edward Z. Fair (D.E. 189) is **DENIED**; and Hacienda's Emergency Motion to Compel Discovery Responses and for Protection (D.E. 184) is **DENIED AS MOOT**.

Within seven (7) days from the date of this Order, the parties are **ORDERED** to notify the Court if any claims remain pending against any parties in this case.  If no claims remain, the Court will issue a final judgment in favor of Hacienda.

ORDERED this 29th day of June, 2016.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE