IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| HACIENDA RECORDS, L.P. | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | NO.:   2:14-cv-00019 |
| v. | § | |
| | § | |
| RUBEN RAMOS, et al. | § | |
| | § | |
| Defendants. | § | JURY DEMAND |

---

## HACIENDA'S APPLICATION FOR ATTORNEYS' FEES AND COSTS

---

TO THE HONORABLE COURT:

Hacienda Records and Recording Studio, Inc., Hacienda Records, L.P., Latin America Entertainment, LLC, Rick Garcia and Roland Garcia, Sr. (deceased) (collectively "Hacienda" or the "Hacienda parties") submit this Application for Attorneys' Fees and Costs, seeking all incurred attorneys' fees as adjusted by the Court, all taxable and non-taxable costs, and all equitable relief as allowed by law, against Ruben Ramos, Hugo Cesar Guerrero, and Arturo Rene Serrata (collectively "Performer Claimants"), and against Arnold Martinez, Individually and on Behalf of Gilbert Martinez Heirs, Leticia "Letty" Salcedo, Individually and on Behalf of the Estate of Jesus "Jesse" Salcedo, Adan Sanchez, and Ruben Guanajuato (collectively "Songwriter Claimants") (the Performer Claimants and Songwriter Claimants collectively the "Claimants"), and against their counsel David W. Showalter and the Showalter Law Firm (collectively "Showalter"), in this Court's discretion and pursuant to law and this Court's inherent power, and would respectfully show this Court the following:

**TABLE OF CONTENTS**

I.      OVERVIEW ................................................................................................ 1

II.     INTRODUCTION ...................................................................................... 3

III.    BACKGROUND FACTS OF OBJECTIVELY  UNREASONABLE CLAIMS
        AND BAD FAITH ........................................................................................ 8

        A.      Lack of valid U.S. Copyright Registrations and U.S. Copyright Deposits. ............ 9
        B.      Reliance on invalid registrations as "prima facie" evidence of ownership. ......... 10
        C.      Asserting objectively unreasonable claims for statutory damages and
                attorney's fees. ................................................................................. 10
        D.      Refusing to voluntarily dismiss the objectively unreasonable claims for
                statutory damages and attorneys' fees despite notice from the Courts and
                counsel. ............................................................................................. 10
        E.      Lack of standing to pursue the claims. ................................................... 10
        F.      Meritless claims of ownership and infringement of Hacienda's masters. ........... 11
        G.      Meritless claims of infringement of the compositions. ............................... 11
        H.      Meritless claims of misappropriation of name and likeness. ......................... 11
        I.      Failing to produce key requested documents, and then falsely representing
                that "All responsive documents have been produced." ............................. 11
        J.      Engaging in relentless discovery abuse and wide scale vague and costly
                fishing expeditions in search of plausible claims. ................................... 12
        K.      Unprofessional conduct, including personal attacks and accusations,
                name-calling, threats, outrageous antics, and abusing and yelling at
                Hacienda witnesses. .......................................................................... 13
        L.      Demanding unnecessary depositions. .................................................... 13
        M.      Misleading and false statements and representations to the Court and
                counsel. ............................................................................................. 14
        N.      Pursuing a case based on fictitious and inflated damages. ........................... 15
        O.      Wrongful threats to sue Hacienda's counsel, and his mother and brother. ......... 15
        P.      Asserting frivolous DMCA claims when Judge Rosenthal previously ruled
                there was no copyright infringement of the song at issue by Hacienda. ............ 15
        Q.      Showalter finally admits that Martinez and Salcedo never had claims
                against Hacienda. ............................................................................... 15

IV.     LEGAL STANDARD ................................................................................ 16

        A.      Recovery of "Full" Costs and Attorneys' Fees under 17 U.S.C. § 505 ............... 16
        B.      Attorneys' Fees and Costs against Opposing Counsel under 28 U.S.C.
                § 1927. .............................................................................................. 19
        C.      Attorneys' Fees, Costs and Equitable Relief against Opposing Counsel and
                Clients under the Court's Inherent Power ............................................. 22
        D.      Claimants, Showalter and the Showalter Law Firm are all Jointly and
                Severally Liable ................................................................................ 23

V.  THE HACIENDA PARTIES, AS THE PREVAILING PARTIES, ARE
    ENTITLED TO AN AWARD OF FULL COSTS AND ATTORNEYS' FEES,
    JOINTLY AND SEVERALLY AGAINST CLAIMANTS AND SHOWALTER .......... 25

VI.  THE HACIENDA PARTIES, AS PREVAILING PARTIES, ARE ENTITLED
    TO EQUITABLE RELIEF, JOINTLY AND SEVERALLY AGAINST
    CLAIMANTS AND SHOWALTER ................................................................. 27

VII.  LODESTAR DETERMINATION ............................................................... 29

    A.  The time and labor involved ....................................................... 32
    B.  The novelty and difficulty of the questions ............................... 32
    C.  The skill requisite to perform the legal services properly .......... 32
    D.  The preclusion of other employment due to this case ................ 32
    E.  The customary fee ....................................................................... 33
    F.  Whether fee is fixed or contingent ............................................. 33
    G.  Time limitations .......................................................................... 33
    H.  The amount involved and results obtained ................................. 33
    I.  The experience, reputation and ability of counsel .................... 33
    J.  The undesirability of the case ..................................................... 34
    K.  The nature and length of the professional relationship with the client ................ 34
    L.  Awards in similar cases .............................................................. 34

VIII.  FULL COSTS SHOULD BE AWARDED TO HACIENDA .......................... 34

IX.  PRAYER .................................................................................................... 35

HOU 408473308v13

# TABLE OF AUTHORITIES

**Cases**

*ACLI Gov't Secs. v. Rhoades*,
  907 F. Supp. 66 (S.D.N.Y 1995)........................................................................25

*Alameda Films SA de CV v. Authors Rights Restoration Corp. Inc.*,
  331 F.3d 472 (5th Cir. 2003) ............................................................................16

*Allen v. U.S. Steel Corp.*,
  665 F.2d 689 (5th Cir. 1982) ............................................................................31

*Alphonso v. Pitney Bowes, Inc.*,
  356 F.Supp 2d 442, 2005 U.S. Dist. LEXIS 3531 (D.N.J. 2005).....................20

*Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*,
  No. 10 Civ. 1853 PGG, 2011 WL 1002439 (S.D.N.Y. Mar. 16, 2011), *aff'd*,
  483 F. App'x 634 (2d Cir. 2012) ......................................................................30

*Amlong & Amlong, P.A. v. Denny's, Inc.*,
  500 F.3d 1230 (11th Cir. 2007) ........................................................................21

*Arclightz & Films Pvt. Ltd. v. Video Palace Inc.*,
  No. 01 Civ. 10135, 2003 WL 22434153 (S.D.N.Y. Oct. 23, 2003) .................27

*Armour v. Beyonce Knowles*,
  No. H-05-2407, 2006 WL 2713787 (S.D. Tex. Sept. 21, 2006) *aff'd on other
  grounds*, 512 F.2d 147 (5th Cir. 2007) ............................................................34

*Baker v. Urban Outfitters, Inc.*,
  431 F.Supp.2d 351 (S.D.N.Y. 2006)........................................................18, 26, 27

*Beardmore v. Jacobson*,
  No. 4:13-cv-361, 2016 WL 1253219 (S.D. Tex. Mar. 30, 2016) .....................16

*Blanchard v. Bergeron*,
  489 U.S. 87 (1989)............................................................................................18

*Bourne Co. v. Hunter Country Club, Inc.*,
  990 F.2d 934 (7th Cir. 1993) ............................................................................25

*Carr v. Tillery*,
  591 F.3d 909 (7th Cir. 2010) ............................................................................21

*Chambers v. Nasco, Inc.*,
  501 U.S. 32 (1991)..............................................................................22, 23, 27

*Choyce v. S.F. Bay Area Ind. Media Center*,
  No. 13-cv-01842-JST, 2014 WL 5597274 (N.D. Cal. November 2, 2014)...........25

*Coles v. Wonder*,
  283 F.3d 798 (6th Cir. 2002) ............................................................................16

iii

*Compaq Computer Corp. v. Ergonome Inc.*,
  387 F.3d 403 (5th Cir. 2004) ...........................................................................17

*Cordoba v. Dillard's, Inc.*,
  419 F.3d 1169 (11th Cir. 2005) ........................................................................23

*Crown Awards, Inc. v. Disc. Trophy & Co.*,
  564 F. Supp. 2d 290 (S.D.N.Y. 2008) *aff'd*, 326 F. App'x 575 (2d Cir. 2009)......17

*Edwards v. Gen. Motors Corp.*,
  153 F.3d 242 (5th Cir. 1998) ......................................................................19, 20

*Elf-Man, LLC. v. Lamberson*,
  No. 13-cv-0395-TOR, 2015 WL 11112498 (E.D. Wash January 1, 2015) ............30

*Energy Mgmt. Corp. v. City of Shreveport*,
  467 F.3d 471 (5th Cir. 2006) ...........................................................................35

*Enmon v. Prospect Capital Corp.*,
  675 F3d 138 (2d Cir. 2012).............................................................................24

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517, 114 S.Ct. 1023 (1994)......................................................17, 18, 25

*General Universal Systems, Inc. v. Lee*,
  379 F.3d 131 (5th Cir. 2004) ...........................................................................16

*Ginther v. Texas Commerce Bank, N.A.*,
  111 F.R.D. 615 (S.D. Tex. 1986)......................................................................24

*In re Girardi*,
  611 F.3d 1027 (9th Cir. 2010) .........................................................................20

*Gollomp v. Spitzer*,
  2007 WL 433361 (N.D.N.Y Feb. 5, 2007), *aff'd*, 568 F.3d 355 (2d Cir. 2009)....................21

*Goodman v. Tatton Enter., Inc.*,
  Case No. 10-60624 Civ-ZLOCH/Rosenbaum, 2012 WL 12540024 (S.D. Fla.
  June 1, 2012) .................................................................................................20

*Greer v. Richardson Indep. Sch. Dist.*,
  471 F. App'x 336 (5th Cir. 2012)......................................................................20

*Gripe v. City of Enid, Okl.*,
  312 F.3d 1184 (10th Cir. 2002) .......................................................................22

*Guajardo, et al. v. Freddie Records, et al.*,
  Civil Action No. 4:10-cv-02024 (S.D. Tex., Houston Division)....................10, 11

*Guzman I v. Hacienda Records*,
  No. 6:12-cv-00042 (S. D. Tex 2015)........................................6, 9, 12, 15, 27, 30, 32, 33, 34

*Guzman II v. Hacienda Records*,
  No. 6:13-cv-00041 (S.D. Tex. 2015) .............................................................9, 34

*Guzman v. Hacienda Records and Recording Studio, Inc.*,
  2015 WL 4920058 (S.D. Tex. August 18, 2015)................................................16

iv

*Guzman v. Hacienda Records, L.P.*,
 808 F.3d 1031 (5th Cir. 2015) .......................................................................32

*Haeger v. Goodyear Tire & Rubber Co.*,
 813 F.3d 1233 (9th Cir. 2016) .......................................................................22

*Hamilton v. Boise Cascade Exp.*,
 519 F.3d 1197 (10th Cir. 2008) .....................................................................21

*Hamilton v. Nakai*,
 453 F.2d 152 (9th Cir. 1972) .........................................................................23

*Hensley v. Eckerhart*,
 461 U.S. 424, 103 S. Ct. 1933 (1983).....................................................17, 25

*Herzfeld & Stern v. Blair*,
 769 F.2d 645 (10th Cir. 1985) .......................................................................20

*Homola v. McNamara*,
 59 F.3d 647 (7th Cir. 1995) ...........................................................................21

*Illinois Computer Research LLC v. Best Buy Stores, L.P.*,
 1-10-cv-04298 (N.D. Ill. Dec. 7, 2012) .........................................................21

*Ingram v. Oroudjian*,
 647 F.3d 925 (9th Cir. 2011) .........................................................................30

*Johnson v. Big Lots Stores, Inc.*,
 639 F.Supp.2d 696 (E.D. La. 2009) ...............................................................16

*Johnson v. C.I.R.*,
 289 F.3d 452 (7th Cir. 2002) .........................................................................22

*Johnson v. Georgia Highway Express, Inc.*,
 488 F.2d 714 (5th Cir. 1974) ........................................................18, 19, 30, 32

*Jolly Grp., Ltd. v. Medline Indus., Inc.*,
 435 F.3d 717 (7th Cir. 2006) .........................................................................21

*Kirtsaeng v. John Wiley & Sons, Inc.*,
 136 S. Ct. 1979 (2016)....................................................................16, 17, 25

*Kourtis v. Cameron*,
 358 Fed. Appx. 863 (9th Cir. 2009)...............................................................16

*Lewis v. Brown & Root, Inc.*,
 711 F.2d 1287 (1983), *modified*, 722 F.2d 209 (5th Cir.)...........................20

*Lieb v. Topstone Indus., Inc.*,
 788 F.2d 151 (3rd Cir. 1986) .........................................................................18

*Link v. Wabash R.R. Co.*,
 370 U.S. 626 (1962).......................................................................................22

*Lysiak v. C.I.R.*,
 816 F.2d 311 (7th Cir. 1987) .........................................................................23

v

*Maiteki v. Marten Transport Ltd.*,
    2016 WL 3878502, Civil Action No. 12-cv-2021-WJM-CBS (D. Colo.
    July 18, 2016) ..................................................................................................20

*Mattel, Inc. v. MGA Entertainment*,
    705 F.3d 1108 (9th Cir. 2013) .........................................................................25

*McGaughey v. Twentieth Century Fox Film Corp.*,
    12 F.3d 62 (5th Cir.1994) .................................................................................16

*Meyers v. Textron Fin. Corp.*,
    *609 F. App'x* 775 (5th Cir. 2015) ................................................................23, 24

*Miera v. Dairyland Ins. Co.*,
    143 F.3d 1337 (10th Cir. 1998) .......................................................................19

*Mostly Memories, Inc. v. For Your Ease Only, Inc.*,
    526 F.3d 1093 (7th Cir.2008) ..........................................................................17

*Mota v. Univ. of Texas*,
    261 F.3d 512 (5th Cir. 2001) ...........................................................................16

*New York Life Ins. Co. v. Deshotel*,
    142 F.3d 873 (5th Cir. 1998) ...........................................................................23

*Newby v. Enron Corp.*,
    302 F.3d 295 (5th Cir. 2002) .......................................................................23, 27

*NLFC, Inc. v. Devcom-Mid-America, Inc.*,
    916 F.Supp. 751 (N.D. Ill. 1996) .....................................................................16

*O'Rourke v. Norman*,
    640 F. Supp. 1451, 1986 U.S. Dist. LEXIS 25802 (W.D. Okla. 1986) ...............20

*Oliveri v. Thompson*,
    803 F.2d 1265 (2d Cir. 1986) ..........................................................................22

*Overnite Transp. Co. v. Chicago Ind. Tire Co.*,
    697 F.2d 789 (7th Cir. 1983) ...........................................................................19

*Park Nat'l Bank v. Kaminetzky*,
    976 F.Supp. 571 (S.D. Tex. 1996) ...................................................................24

*Ramirez v. Freddie Records, Inc.*,
    Civil Action No. H-08-801 (S.D. Texas June 7, 2013) .......................................10

*Reed v. Great Lakes Cos., Inc.*,
    330 F.3d 931 (7th Cir. 2003) ...........................................................................21

*Ret. Sys. & Local 295/Local 851 v. Boeing Co.*,
    711 F.3d 754 (7th Cir. 2013) ...........................................................................21

*Ridder v. City of Springfield*,
    109 F.3d 288 (6th Cir. 1997) ...........................................................................21

*Riddle & Assocs., P.C. v. Kelly*,
    414 F.3d 832 (7th Cir. 2005) .............................................................................8

HOU 408473308v13

*Rutherford v. Harris County,*
    197 F.3d 173 (5th Cir. 1999) ...................................................................18, 29, 30

*Saizan v. Delta Concrete Products Co., Inc.,*
    448 F.3d 795 (5th Cir. 2006) ...................................................................18

*Sanchez v. Hacienda Records,*
    42 F.Supp.3d 845 (S.D. Tex. 2014) ..........................................................15, 34

*Sanchez v. Hacienda Records,*
    No. 4:11-cv-03855 (S.D. Tex. August 26, 2014)..........................................9, 14, 15

*Sanchez v. Hacienda Records,*
    No. H-11-3588, 2014 WL 4243742 (S.D. Tex. 2014)......................................34

*Schlaifer Nance & Co., Inc. v. Estate of Warhol,*
    194 F.3d 323 (2d Cir. 1999)....................................................................22, 23

*Schwarz v. Sec'y of Health & Human Servs.,*
    73 F.3d 895 (9th Cir. 1995) ....................................................................30

*Seekamp v. It's Huge, Inc.,*
    No. 1:09-CV-0018 LEK/CFH, 2014 WL 7272960 (N.D.N.Y. Dec. 18, 2014)......................30

*Shackelford v. Courtesy Ford, Inc.,*
    96 F. Supp. 2d 1140 (D. Colo. 2000)..........................................................19

*Shank v. Eagle Techs., Inc.,*
    No. CIV. A. RWT-10-2231, 2013 WL 4442033 (D. Md. Aug. 15, 2013) ............................21

*In re Silica Products Liab. Litig.,*
    398 F. Supp. 2d 563 (S.D. Tex. 2005) .......................................................20

*Susan Wakeen Doll Co. v. Ashton Drake Galleries,*
    272 F.3d 441 (7th Cir.2001) ...................................................................16

*In re TCI Ltd.,*
    769 F.2d 441 (7th Cir. 1985) ...................................................................21

*Tempest Publishing Inc. v. Hacienda,*
    Civil Action No. 4:12-cv-00736 (S.D. Tex. 2012) ......................................9, 15, 34

*Terrebonne, Ltd. of Calif. v. Murray,*
    1 F. Supp. 2d 1050 (E.D. Cal. 1998)...........................................................19

*Topalian v. Ehrman,*
    84 F.3d 433 (5th Cir. 1996) ...................................................................20

*Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.,*
    38 F.3d 1414 (5th Cir. 1994) ...................................................................19

*Twentieth Century Fox Film Corp. v. Entertainment Distributing,*
    429 F3d 869 (9th Cir. 2005) ....................................................................16

*Twentieth Century Music Corp. v. Aiken,*
    422 U.S. 151 (1995)..............................................................................25

vii

*Vanderbilt Mortgage and Finance, Inc. v. Flores*,
    No. C-09312, 2011 WL 2160928 (S.D. Tex. 2011) ............................................................24

*Velocys, Inc. v. Catacel Corp.*,
    No. 5:10CV747, 2011 WL 4945291 (N.D. Ohio Oct. 18, 2011)........................................20

*Western Heritage Ins. v. Robertson*,
    224 F.3d 764 (5th Cir. 2000) ................................................................................19, 20, 21, 26

**Statutes**

17 U.S.C. § 410(c) ............................................................................................................................10

17 U.S.C. § 412 ................................................................................................................................10

17 U.S.C. § 412(2) .............................................................................................................15, 26, 28

17 U.S.C. § 504(c)(2) ......................................................................................................................15

17 U.S.C. § 505 .......................................................................................................................16, 17, 25, 34

17 U.S.C. § 1202(a) ........................................................................................................................15

28 U.S.C. § 412 ................................................................................................................................10

28 U.S.C. § 1651 ..............................................................................................................................23

28 U.S.C. § 1651(a) ........................................................................................................................23

28 U.S.C. § 1920 ......................................................................................................................16, 34

28 U.S.C. § 1927....................................................................2, 5, 8, 19, 20, 21, 22, 23, 25, 34

**Rules**

Fed. R. Civ. P. 45(d)(3)(A) ............................................................................................................13

Fed. R. Civ. P. 54 ............................................................................................................................34

Fed. R. Civ. P. 54(d) ................................................................................................................16, 34

Fed. R. Civ. P. 70 ............................................................................................................................23

## I.   <u>OVERVIEW</u>

1.      Hacienda's complete victory in this lengthy multi-party case – Claimants' *voluntary* nonsuit of nearly all their claims just before this Court could rule on Hacienda's dispositive motions, and then dismissal and summary judgment in Hacienda's favor on the few claims that remained – was preceded by:

- Claimants' pre-suit demand letters and original claims asserting infringement of *hundreds* of works, the claims to half of which Claimants abruptly abandoned in the middle of this litigation acknowledging Hacienda had never used the works, *see* Doc. 143-1, but only after significant discovery had already been undertaken by Hacienda on such works, then their subsequent assertion of infringement on *434* additional works late in this case requiring even more discovery on the new claims, which infringement claims to the 434 works were all nonsuited at the last minute (except as to approximately two songs);

- Claimants' failure to obtain, at *any* time before or during the litigation, the actual U.S. Copyright deposits to the works in question, which would have revealed Hacienda either had not used the works or that Hacienda or others actually owned the works;

- Claimants' assertion of *multiple* claims with no factual basis whatsoever, such as fraud, misappropriation of name and likeness, and racketeering, as Claimants freely admitted during discovery in the case;

- Claimants' continued prosecution of baseless claims even after they were proved baseless;

- Claimants' assertion of infringement for the maximum $150,000 in statutory damages per work despite the fact that the very registrations to Hacienda's masters they relied on demonstrated unequivocally that statutory damages were unavailable;

- Claimants' claim of ownership to Hacienda's masters despite the clear language in Claimants' contracts to the contrary, which masters Claimants freely admitted Hacienda owned, consistent with industry practice;

- Claimants' submission of false declarations which the Court properly struck as shams; and

- Abuse of the litigation process through false statements to the Court and counsel; withholding of responsive and critical documents; multiple groundless filings and submissions to the Court; refusal to respond to opposing counsel's legitimate requests for documents and information; repeated rehashing of the Court's prior rulings on the same grounds as previously advanced and rejected; and counsel David Showalter's abusive conduct toward counsel and Hacienda's witnesses, including non-parties.

2.     Claimants' counsel, David Showalter, is behind these abuses, which are hallmarks of his approach not just in this case but in the multiple other cases he has prosecuted against Hacienda and other small Tejano record labels.  Showalter's approach reflects a flagrant disregard of the law and the boundaries of legitimate litigation conduct, in an attempt to scare parties into quick settlements, punish them for refusing to concede, or else drive their businesses into bankruptcy, where Showalter – who runs his own competing music company – can scoop up the record label's music portfolio at a bargain-basement price, as he did with Discos MM.

3.     Hacienda has fought back, at considerable cost to it, both financially and personally.  *See* Exhibit I.  Through Hacienda's efforts, Claimants' lawsuit was exposed as being brought in bad faith and as utterly groundless from inception.  Claimants are complicit in this abuse of the litigation process:  among other things, they testified in direct contradiction to their own pleadings and signed declarations that directly contradicted deposition testimony they gave mere weeks (and in some cases, only *days*) later.  *See* Doc. 126 at 2-4.  Moreover, during their depositions, some Claimants even seemed unaware they were *prosecuting* rather than defending a lawsuit, yet they did nothing to dismiss their claims.  *Id*. at 17-18.

4.     The Copyright Act's goal of fee-shifting is in part to advance the deterrence of frivolous cases.  Claimants' claims were brought in bad faith, and once it was demonstrated that their claims were meritless, their continued pursuit of the claims was vexatious and wrongly multiplied these proceedings.  Accordingly, Hacienda's full attorney's fees and costs and equitable relief to prevent further meritless claims, as threatened by Showalter, should be awarded against Claimants and their counsel, David Showalter, and the Showalter Law Firm, jointly and severally, as supported by the record and the evidence, on grounds provided under the Copyright Act, 28 U.S.C. § 1927, and/or the Court's inherent powers.

2

## II.     INTRODUCTION

5.     Claimants originally brought multiple claims against Hacienda and the Garcia family related to the alleged copyright infringement of over 238 works, among other claims.  *See* Doc. 41.  From the beginning, Hacienda was baffled by the Claimants' lawsuit, which appeared to be brought entirely in retaliation for Hacienda's legitimate request for declaratory relief, because Claimants either did not own or Hacienda had not used the works in question.  After significant work by Hacienda and its counsel in an attempt to determine the basis of Claimants' vague copyright claims, including requesting copies of the U.S. Copyright Deposits, and after significant discovery, depositions, and court hearings, Claimants abruptly **abandoned** their claims as to approximately 144 works, admitting that Hacienda had not used such works.  *See* Doc. 143-1.  But instead of this narrowing the claims, Claimants and Showalter unreasonably multiplied these proceedings, yet again, by bringing new and equally vague infringement claims pertaining to **434 works**.  *See* Docs. 141, 141-1.  Hacienda was then forced to spend even more time and resources investigating and defending such new claims.  Then, at the eleventh hour, and just prior to the Court's imminent rulings on Hacienda's then-pending dispositive motions, they nonsuited with prejudice **all** fraud, RICO and copyright infringement claims by all Claimants, leaving only **two** alleged copyright infringement claims of Guanajuato.  *See* Doc. 161 (and later Guanajuato's claims were dismissed by the Court, *see* Doc. 169).

6.     Moreover, despite the Court's Orders dismissing and denying Showalter's claims of ownership to Hacienda's master sound recordings, *see* Docs. 166, 169, 176, and knowing that the Claimants contracts and testimony make clear that Hacienda owns the masters, *see* Doc. 183 at 7-12, Showalter continued to multiply these proceedings by opposing Hacienda's request for declaratory relief.  Hacienda then had to seek leave of Court to file a summary judgment motion, *see* Doc. 178, which the Court granted, *see* Doc. 179, and then had to prepare and file a summary

judgment motion.  *See* Doc. 183.  To no surprise, Showalter's response to the motion **did not even address** the Claimants' undisputed testimony and undisputed contracts.  *See* Doc. 187, 190. Yet Showalter wrongfully continued to oppose Hacienda's request for declaratory relief.  *Id.*[1]

7. Showalter's demand letters and the Claimants' lawsuit are textbook examples of, at best, an attorney's failure to conduct an adequate pre-filing investigation to determine if there is a plausible claim, or, at worst, a blatant disregard for the facts and the law and bad faith conduct to pursue frivolous and inflated claims for an improper purpose.  Here, even the face of the Performer Claimants' invalid registrations revealed they had no plausible claims for "willful infringement."  *See* Doc. 64 at 29-30 (Ramos); Doc. 65 at 23-24 (Guerrero); Doc. 66 at 26-27 (Serrata).  Yet Claimants and Showalter continued to prosecute these objectively unreasonable claims.[2]  Moreover, the Songwriter Claimants' purported copyright registrations made clear they did not have timely copyright registrations showing Claimants as owners of the copyrights to any compositions recorded and released by Hacienda which would constitute a plausible claim.  *See* Doc. 67 at 17-19; Doc. 130 at 4-10; Doc. 160 at 1-6.  Rather, either the compositions were owned by others or Hacienda had not used certain works.  *Id.*  Moreover, even after dispositive rulings by the Court, Showalter multiplied these proceedings by filing frivolous motions to revisit the Court's rulings, *see, e.g.,* Docs. 180, 196, 199, 202, only rehashing his meritless

---

[1] Shockingly, Showalter even filed a motion for summary judgment seeking ownership to Hacienda's masters (without leave to do so and beyond the scheduling deadlines to do so), in an abusive attempt to rehash and relitigate the Court's multiple prior rulings.  *See* Doc. 196 (stricken by the Court in Doc. 197).

[2] Hacienda's counsel even gave notice to Showalter of the same and requested that he nonsuit such objectively unreasonable claims, *see* Exhibit E (page 4 of email chain), yet Showalter steadfastly refused.  *Id.* (page 1 of email chain).  *See also* Doc. 114 at 9:7-12.  Even if Showalter did not know the claims of the Performer Claimants lacked merit at the outset, which he did, he certainly knew so when Hacienda produced copies of the contracts with the Performer Claimants on October 22, 2014 at the deposition of Rick Garcia (which would have been produced much sooner but for Showalter's obstruction and refusal to enter into a protective order), *see* Doc. 186-2, Rick Garcia deposition at 10:19 – 14:13), and the depositions of his clients (who freely admitted that Hacienda owned the masters, and admitted Hacienda had the right to use Claimants' name and likeness).  *See* Doc. 183 at 7-9.  But even then Showalter did not cease his wrongful prosecution, continuing to multiply these proceedings.

claims.  *Id.*  All such actions required Hacienda to respond and to spend more time and resources on this case.  *See*, *e.g.,* Docs. 181, 204.

8.      But there can never be justification for Showalter to make false representations to the Court or to counsel.  But that is just what Showalter did on numerous occasions in this case.  *See infra* at Section III.M.   He also failed to produce requested documents, including key documents like the "assignments" that proved most of the Claimants lacked standing to pursue the claims, as well as ancient contracts which proved that Claimant Martinez had no basis for his claim, withholding these documents while affirmatively representing that "All responsive documents have been produced."   *See infra* at Section III.J.   This representation was false. Hacienda discovered the non-produced documents attached to court filings in Showalter's other case against Freddie Records, proving Showalter was aware of such documents, intentionally withheld the requested documents, and misrepresented his production in this case.  *Id.*   The wrongful conduct was intended to prejudice Hacienda and mislead the Court.

9.      Although Showalter's abuse and harassment of the Garcia family has continued unabated for many years, the abuse and bad faith hit a new high in this case with Showalter's outrageous claims of "mail fraud," "wire fraud," "money laundering," "racketeering," "interstate transportation of stolen property," and other criminal conduct supposedly by Hacienda and the Garcia family without a shred of evidence ever produced to support these claims.  *See* Doc. 141 at 21-34.  Hacienda was shocked that Ramos, Serrata and the other Claimants would make such charges, and indeed, when they were deposed, **they gave no testimony supporting their allegations of criminal conduct**, and in their Answer to Interrogatory No. 7 **they confirmed they had no recollection of false statements by Hacienda (*i.e.,* no fraud).**  *See* Exhibit I; Docs. 64-4 (Ramos); 65-4 (Guerrero); 66-4 (Serrata); 67-4 (Songwriters).

10.     These public charges were fabricated by Showalter without any basis in fact or law, and were intended to humiliate and embarrass Roland Garcia, Sr. and Rick Garcia, to tarnish their good names and reputation in the Tejano music industry, and to punish them for not settling the frivolous *Guzman* cases.  *See* Exhibit I.  In particular, Roland Garcia, Sr. was in ill physical health during this lawsuit with kidney disease and other ailments.  *Id.*  These false charges were too much for Mr. Garcia, Sr. to bear, contributed to his ill health and fatigue, greatly saddened him, caused him to regret ever getting into the Tejano music business, wasted his resources, consumed his final years with anguish, and simply wore him out physically and emotionally.  *Id.*  He passed away recently in despair, stuck in his home to avoid the intended public humiliation and shame he felt by these public charges against him, and having to spend his final years fighting endless and expensive battles of frivolous cases.  *Id.*  Showalter's unprofessional conduct toward Mr. Garcia, Sr., in particular, was especially brutal in the *Guzman II* case when he so abused Mr. Garcia, Sr. on the witness stand that Judge Gregg Costa actually ordered Showalter to cease his examination, "sit down," and behave professionally.  *Id.*

11.     The entire Hacienda staff, and in particular Rick Garcia, who has been deposed five times now by Showalter in his various cases against Hacienda, were impeded by Showalter's aggressive lawsuit from their normal work of recording bands, selling music, and operating their business.  *See* Exhibit I.  They have spent countless hours attempting to comply with Showalter's excessive discovery demands, document requests, multiple depositions, multiple discovery disputes, multiple hearings, and multiple motions, with the intended consequence of driving down the revenue of Hacienda.  *Id.*

12.     The Showalter claims were also brought for an improper purpose.  Showalter's goal is the same in his copyright cases against small record labels—sue them on broad and vague

6

claims of infringement without ordering any U.S. Copyright Deposits to support his claims, make broad discovery demands for depositions and documents in this case and his other Hacienda cases, and then use the lack of such voluminous documents and discovery to argue that his clients are not able "to file an amended complaint and respond to Hacienda's discovery requests" and "to fully articulate their claims and causes of action" (when in reality Showalter is required by law to have a plausible claim before filing his lawsuit), *see* Doc. 46 at 4-5, make the discovery responses and defense of the claims so expensive that the record label's resources are exhausted, make unreasonable settlement demands, and then either extract an unfair settlement or drive the small record label into bankruptcy whereby Showalter (a competitor in the music business) can then obtain the record label's music out of the bankruptcy proceeding, to add to his own music catalogue. *See, e.g.,* Exhibit G (Showalter deposition, 12-18-12, at 121:9-124:11; 132:13-133:2) (lawsuits against Max Silva and Freddie Records); Exhibit H (Showalter deposition, 6-24-13, at 37:19-40:21) (Showalter drives Silva into bankruptcy, then Silva settles and Showalter's music company acquires the rights in Silva's Discos MM sound recordings).

13.    Though there are multiple Claimants in this case, the Court need not give attention to specific parties or motions.   Rather, Showalter's demand letters and Claimants' entire case were part of the same scheme, and their claims were filed jointly and all suffered from the same lack of foundation.[3]   Thus, an award of recovery of Hacienda's full costs and attorneys' fees against all Claimants and Showalter, jointly and severally, is warranted.

---

[3] The same verbatim infringement claims were globally brought in the same complaint by all Claimants, raising the same global allegations, against all Hacienda parties, and all Claimants were fact witnesses to the same verbatim alleged wrongful "practices" of Hacienda.   *See, e.g.,* Doc. 141 at 7-11 (same global infringement claims), at 20-21 (same global declaratory relief claims), at 21-34 (same global criminal conduct allegations), at 35-36 (same global misappropriation of name and likeness claims), at 37-39 (same global fraud claims), at 39-40 (same global breach of fiduciary duty claims), at 40-41 (same global breach of contract and breach of the duty of good faith and fair dealing claims), at 41-43 (same damages sought globally against all Hacienda parties). Thus, the claims and defenses of all Claimants were inextricably intertwined.   *Id.*   The Claimants also jointly designated and used the same experts.   *See* Docs. 52, 53.

14.     As discussed, at every step of the way Claimants and Showalter stonewalled Hacienda's efforts to conduct discovery on Claimants' claims, refused to answer or supplement discovery requests, failed to produce any U.S. Copyright Office Deposits (and did not even bother to order any deposits from the Copyright Office), prolonged the prosecution of meritless, harassing and objectively unreasonable claims, and vexatiously multiplied these proceedings unnecessarily to increase the costs of this case, to drain the resources of Hacienda, to harass and embarrass the Garcia family, to punish Hacienda for refusing to pay an unfair settlement amount, and to waste the judicial resources of this Court. *See infra* Section III.  These bad faith and abusive tactics are not isolated violations by Showalter.  In each of his other cases against Hacienda and the Garcia family, Showalter employed the same gamesmanship and wrongful tactics. *See infra* Section III.A, III.C, III.K, III.L, III.O.  Although an award of full recovery of fees and costs against Showalter and Claimants will not even begin to make the Garcia family whole for their losses and suffering at the hands of Showalter and these Claimants, hopefully the Court's award will deter them from further vexatious abuse of the courts and bad faith conduct.

15.     Sanctions under § 1927 and this Court's inherent power are necessary in order "to deter [Claimants' and Showalter's] frivolous litigation and abusive practices" and "ensure that those who create unnecessary costs also bear them." *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005).  Hacienda hereby seeks an award of full fees and costs, and equitable relief as allowed by law.

### III.     <u>BACKGROUND FACTS OF OBJECTIVELY UNREASONABLE CLAIMS AND BAD FAITH</u>

16.     The dilatory tactics and abuse by Claimants and Showalter are too many to mention, and thus only a few are listed here.  Even a cursory review of this Court's lengthy docket entries for this case shows that virtually every pleading Hacienda was forced to file

reveals the bad faith conduct, baseless and frivolous allegations, and objectively unreasonable claims of Claimants and Showalter, and the vexatious conduct and illegal multiplying of proceedings in this Court.   All such wrongful acts reveal Showalter's inadequate pre-filing investigation and lack of due diligence to determine a plausible claim, or a callous disregard of the law and facts and bad faith conduct to pursue frivolous and inflated claims for an improper purpose.   Evidence in support of this motion is contained in Exhibits A-K, and Hacienda further asks the Court to take judicial notice of the record in this case and the referenced cases and all such conduct, including but not limited to:

### A.   Lack of valid U.S. Copyright Registrations and U.S. Copyright Deposits.[4]

---

[4] Despite the fact that the law requires valid U.S. Copyright Registrations and valid U.S. Copyright Office Deposits prior to even bringing a copyright infringement claim, and despite the Court's repeated Orders for Showalter to produce his U.S. Copyright Deposits, he never did. In fact, at no time in this case, nor in any of the other Showalter cases against Hacienda, did Showalter produce even one U.S. Copyright Office Deposit.  Showalter would not even inform Hacienda whether he even requested copies of any copyright deposits from the U.S. Copyright Office, necessitating Hacienda to spend time and resources to serve discovery requests asking the same (Showalter finally admitted he had not even ordered any deposits from the U.S. Copyright Office).  *See* Doc. 124-1 (Ramos Interrogatory Answers, No. 1(J), 1(K)); Doc. 130-1 (Songwriters Interrogatory Answers No. 1(J), 1(K)).  The deposits are a critical element of the claim, and allow the Court and Hacienda to determine what actual "work" is supposedly owned by Claimants and allegedly used by Hacienda.  This is because a search of the public catalog of the U.S. Copyright Office does not suffice, as there can be many different works registered under the same title (as Showalter knows from his *Tempest* case), and some identical works can be registered under different titles (as Showalter alleged in his *Guzman I* case).   The deposits, or lack thereof, also evidence the failure to conduct an adequate pre-suit investigation and due diligence of a plausible claim at the outset.  But this is no surprise, as it is Showalter's approach in all his cases against Hacienda to conduct no due diligence on whether he has a plausible claim, such as ordering actual deposits from the U.S. Copyright Office, and comparing the actual deposited work to the actual sound recording released by Hacienda.  *See, e.g.,* Doc. 112 at 5 (discussion of the same failure to conduct an adequate pre-suit investigation in *Tempest*).  Here, as in the other Showalter cases, Hacienda was forced to order certain of the deposits from the U.S. Copyright Office at significant expense to test the accuracy of the Showalter produced deposits.  Due to the vast number of alleged copyrights, Hacienda was only able to order a few of the alleged deposits, and those particular Showalter produced deposits were **false** as compared to the actual U.S. Copyright deposits obtained by Hacienda and filed with the Court.  Moreover, the actual deposits revealed that Hacienda had not infringed on any copyrights and that Hacienda owned the copyright to the masters in question.  As Hacienda argued, *see* Docs. 183, 190, and as the Court found, *see* Doc. 201, Showalter's copyright registrations to Hacienda's master sound recordings are invalid.  *Id.*  As another example, Showalter alleged Hacienda infringed on the copyright to the composition of *Oiga Senora*.  Although Showalter produced a supposed copyright deposit of *Oiga Senora*, his produced deposit was **not** the actual deposit that was filed with the U.S. Copyright Office. *See* Doc. 160 (discussion at page 3 n.4).  Showalter intentionally mislead this Court and Hacienda by the false deposit he produced.  Showalter also produced a bogus deposit for *Esta Noche Me Embarracho.  See* Doc. 160 at 2 n.3.  This is a hallmark of Showalter's cases against Hacienda, producing false deposits to support his frivolous cases and hoping to mislead the Courts and not get caught, and to drive up the costs of defense and to bully Hacienda into an unfair settlement. *See, e.g.,* Case 4:12-cv-00736 *Tempest Publishing, Inc. v. Hacienda Records and Recording Studio, Inc.* (S.D. Tex. Houston Division) (Doc. Nos. 31, 39, 69, Judge Rosenthal ordering Showalter to produce his copyright deposits) (Doc. 48 at 5-7 and Doc. 67 at 15-17, discussion of the false deposits produced by Showalter); Case No. 4:11-cv-03855, *Sanchez v. Hacienda Records,* (S.D. Tex. Houston Division) (Doc. 41 at 4-5, discussing the bogus Showalter produced deposit for the composition *La Prieta Casada* as compared to the actual U.S. Copyright Deposit for the work showing that Showalter's client Adan Sanchez was not the owner of the work); Case No. 6:12-cv-00042, *Jose Guzman v. Hacienda Records* (S.D. Tex. Victoria Division) (*Guzman I*) (discussion at Doc. 67 at 4, Showalter's production of the cassette of *Triste Aventurera* (Doc. 67-7 at Appendix 6) was **not** the actual U.S. Copyright Deposit of *Triste Aventurera*, (Doc. 67-7 at Appendix 15) and in fact the Showalter produced *Triste* deposit was significantly different than the copyrighted lead sheet);  Case No. 6:13-cv-00041, *Jose Guzman v. Hacienda Records* (S.D. Tex. Victoria Division)

B.   **Reliance on invalid registrations as "prima facie" evidence of ownership.**[5]

C.   **Asserting objectively unreasonable claims for statutory damages and attorney's fees.**[6]

D.   **Refusing to voluntarily dismiss the objectively unreasonable claims for statutory damages and attorneys' fees despite notice from the Courts and counsel.**[7]

E.   **Lack of standing to pursue the claims.**[8]

---

(*Guzman II*) (Showalter's produced cassette of *Dos Horas de Vida* (Doc. 77 at Exhibit 5) was **not** the actual U.S. Copyright Deposit of *Dos Horas de Vida* (Doc. 82 at Exhibit 59). *See also* Doc. 112 at 4 in this case (discussion of the bogus deposit).

[5] Showalter improperly asserted a presumption of validity as to copyright registrations obtained outside the statutory period when the presumption would apply. The law is clear--there is no presumption of validity of a copyright registration obtained more than five years after publication and release of the work. *See* 17 U.S.C. §410(c). Here, many of the Claimants' registrations were obtained many years after Hacienda's first publication and release of its masters. Further, there can be no copyright infringement claim based on an invalid registration, such as a registration with a false statement of ownership. But that is what Showalter did, even after Hacienda produced the parties' contracts (produced on October 22, 2014 during the deposition of Rick Garcia, which would have been produced much sooner but for Showalter's refusal to enter into a protective order. *See* Rick Garcia deposition at 10:19-13:25), and even after Claimants testified that Hacienda owns its masters. *See* Doc. 196 at 9 (Claimants' late filed (and stricken) motion, relying again on the presumption argument)

[6] Claimants sought statutory damages and attorney's fees under the Copyright Act. *See* Doc. 41 at 13, ¶ 40 (Defendants' Second Amended Complaint: "Counter Defendants willfully infringed Claimants' copyrights, and statutory damages against each Counter Defendant in the amount of $150,000 per work [238 works at that time, increased later to 434 works, *see* Doc. 141-1] per Counter Defendant are appropriate."). Yet such claims were clearly barred by law under 28 U.S.C. § 412. Showalter knew from his prior cases against Hacienda, and in this case, that § 412 precluded his statutory damages claims. In fact, at the Initial Conference on August 7, 2014, Hacienda's counsel expressly advised that, "Under the law, you don't get statutory damages or attorneys' fees under Section 412 of the Copyright [Act] unless you have a registration on file before the work's been published and released." *See* Doc. 114 at 9:7-12. Showalter expressly acknowledged in open Court that, "we know what the law is on statutory damages." *Id.* at 10:5-6. Yet Showalter pursued his statutory damages claims anyway. His pursuit of such claims was objectively unreasonable, and multiplied the proceedings requiring Hacienda to further research and brief such issues. *See, e.g.*, Doc. 64 at 29-30 (Ramos); Doc 65 at 23-24 (Guerrero); Doc. 66 at 26-27 (Serrata); Doc. 67 at 25-27 (Songwriters). Even after Hacienda filed its briefs identifying the law and facts that such claims were frivolous, Showalter pursued them anyway, requiring Hacienda to file Reply Briefs on this point. *See* Doc. 124 at 25-26 (Ramos); Doc. 132 at 12-13 (Guerrero); Doc. 131 at 13 (Serrata); Doc. 130 at 13-14 (Songwriters). This is not an isolated act of bad faith, but a pattern in Showalter's cases. *See, e.g.*, *Tempest*, Doc. 67 at 17-19 (discussion of no entitlement to statutory damages and attorney's fees under 17 U.S.C. 412); *Guzman I*, Minute Entry dated October 11, 2013 (Judge Gregg Costa granting Showalter's Motion to Dismiss (Doc. 6 at 10), expressly dismissing the claim for statutory damages). This is Showalter's bad faith practice against other parties as well. *See, e.g.*, *Ramirez v. Freddie Records, Inc.*, Civil Action No. H-08-801, (S.D. Texas June 7, 2013) (Doc. 198, Judge Vanessa Gilmore correctly held that despite Showalter's arguments, because the copyright registrations for the allegedly infringing works were not obtained within three months after first publication, that Showalter's client was not entitled to an award of attorneys' fees under 17 U.S.C. § 412); *Guajardo v. Freddie Records*, Case No. 4:10-cv-02024 (S.D. Tex. Houston Division) (Doc. 310 at 5, Magistrate Judge Stacy expressly ruling that Showalter's clients had no claim for statutory damages and attorney's fees as a matter of law, ruling adopted by Judge Gray Miller). Showalter clearly knows better, but doesn't care, so long as he forces Hacienda to expend resources in defending the frivolous and objectively unreasonable claims.

[7] *See* Exhibit E (March 13, 2015 e-mail from Showalter to Hacienda's counsel refusing to dismiss the improper statutory damage claims, after Showalter received notice from Hacienda's counsel that such claims were objectively unreasonable and including citation to case law); Doc. 114 at 9:7-12, 10:5-6 (Transcript of Initial Conference). *See also supra* at Section III.C, discussion of prior court rulings advising Showalter that his claims for statutory damages and attorney's fees are improper.

[8] Hacienda had repeatedly asked Showalter to identify all persons who own an interest in the Works and to produce all such assignments and transfers. *See* Doc. 65-7 (one of the emails to Showalter, none answered); Doc. 65-2 (Request Nos. 9, 10, 27, 28, 39); Doc. 65-4 (Interrogatory No. 8). No such assignments or transfers were produced at that time, *see* Doc. 65-6, and all Claimants answered Interrogatory No. 8 as follows: "**Claimant is the owner of all Works subject to his claims against Plaintiffs/Counter Defendants.**" (emphasis added). *See* Doc. 65-4. Knowing the Showalter Assignments were fatal to his

10

**F.      Meritless claims of ownership and infringement of Hacienda's masters.**[9]

**G.      Meritless claims of infringement of the compositions.**[10]

**H.      Meritless claims of misappropriation of name and likeness.**[11]

**I.      Failing to produce key requested documents, and then falsely representing that "All responsive documents have been produced."**[12]

---

claims, Showalter hid them from Hacienda, in an effort to prolong and multiply the proceedings in this case. Hacienda on its own discovered in public filings in the *Guajardo v. Freddie Records* case, that each of the Claimants, prior to bringing this lawsuit, assigned all or a substantial portion of their interests in their alleged copyrights to Showalter. *See* Doc. 143. Certain Claimants also assigned to Showalter the exclusive right to bring claims on the alleged copyrights. *Id.* Consequently, because Claimants had assigned their exclusive rights to the alleged copyrights and any rights to bring this lawsuit, they had no standing as owner or licensor of the alleged copyrights to pursue the claims. *Id.* Even though Showalter knew this, he prosecuted the claims anyway multiplying these proceedings and requiring Hacienda to file motions, and responses, on the standing issue. *See* Docs. 64, 65, 66, 67, 124, 130, 131, 132, 143, 147, 160.

[9] Showalter abused the judicial process and multiplied these proceedings by prosecuting frivolous declaratory judgment claims for ownership of Hacienda's master sound recordings, Doc. 141, and (even after the court's orders dismissing or denying such claims, Docs. 166, 169, 176) by opposing Hacienda's motion for summary judgment on its counterclaims despite Showalter knowing: (1) the undisputed deposition testimony of Claimants that Hacienda owns the master sound recordings in question, *see* Doc. 124-2 (Ramos deposition at 113:22-115:6); Doc. 122-2 (Guerrero deposition at 183:19-23); Doc. 126-3 (Serrata deposition at 135:4-19; 137:8-14); (2) the Claimants' executed agreements stating that Hacienda owns the masters or purchased the masters, *see, e.g.*, Doc. 64-10 at 2 (Ramos contract:  "Artist agrees that Company shall own the sole, exclusive and worldwide rights in perpetuity in and to all master sound recordings made hereunder and all derivatives thereunder and in and to the performances of Artist embodied therein."); Doc. 65-10 at 2 (Guerrero contract); Doc. 66-10 at 2 (Serrata contract); (3) the copyright notice in Hacienda's name that was affixed to Hacienda's mastered products upon the creation, release and publication of the master sound recordings and compilations, prior to Claimants' registrations, *see, e.g.*, Doc 64-14 (CD cover of Hacienda master, "15 Hits"); (4) the admissions by Showalter himself that his "clients are not claiming any ownership" of Hacienda's masters, *see* Doc. 160-3 at 4 (Showalter email); *see also* Doc. 139 at 10 (Ramos and Serrata Surreply Brief) ("nowhere in the copyright registrations submitted by Ramos or Serrata do they allege to own Hacienda's masters"); (5) the knowingly and admittedly false representations and information in the registrations of Claimants, *see, e.g.*, Doc. 124-2 (Ramos deposition at 170:1-171:2, admitting he did not create several of the sound recordings which Showalter represented in the registration that Ramos created); and (6) the Court's Order dismissing with prejudice Claimants' request to declare that Claimants own the works in question. *See* Doc. 166 (Order). *See also* Doc. 176 at 18-19 (Order); Doc. 182 at 4 (Order). Showalter's bad faith conduct multiplied these proceedings by requiring Hacienda to seek leave to file a summary judgment motion, *see* Doc. 178 (granted by the Court, *see* Doc. 179), and to reply to Showalter's response, Doc. 190.

[10] The vague and global claims of infringement to 434 works were completely frivolous. The produced copyright registrations revealed the Songwriter Claimants either did not own the compositions which they alleged, or Claimants testified Hacienda had permission to use the compositions, or Hacienda had not used the compositions. *See* Doc. 67 at 17-19; Doc. 130 at 4-10; Doc. 143; Doc. 160 at 2-6. *See also* Doc. 126 at 10-11 (false allegations that Hacienda used the work *Olga Senora*). At one point, Showalter completely abandoned claims to 144 compositions, acknowledging Hacienda had not used these works. *See* Doc. 143-1. Showalter's frivolous allegations multiplied these proceedings, requiring the depositions of the Claimants, and requiring summary judgment motions and replies. It is no surprise that at the eleventh hour, after Hacienda, its counsel, and the Court were required to expend significant time and resources on such frivolous claims, that Showalter abandoned them. *See* Doc. 161 (claims of Martinez, Salcedo and Sanchez completely abandoned).

[11] The Performer Claimants admitted that Hacienda had permission to use their names and likeness, and either posed for the photos or provided the images to Hacienda. Doc. 124-2 (Ramos 1-13-15 deposition at 73:21-76:4); Doc. 122-2 (Guerrero 1-28-15 deposition at 88:1-89:16, 103:17-21, 157:9-16); Doc. 126-3 (Serrata 1-27-15 deposition at 85:1-86:4). Of course, their agreements also make clear that Hacienda had permission to use their name and likeness. *Id.* See Doc. 64-10 (Ramos contract); Doc. 65-10 (Guerrero contract); 65-14 (Guerrero contract); Doc. 66-10 (Serrata contract); Doc. 66-20 (Serrata contract). But even after Showalter received copies of the contracts on October 22, 2014, *see* Doc. 186-2 at 10:19-14:13, and after Claimants gave their depositions in January 2015, Showalter continued to prosecute such meritless claims by his Third Amended Counterclaim filed on May 1, 2015. *See* Doc. 141 at 35-36. Showalter multiplied these proceedings by requiring Hacienda to depose the Claimants on their claims and file summary judgment motions, and responses, on these claims. *See* Doc. 64 at 41-43; Doc. 65 at 34-36; Doc. 66 at 37-39; Doc. 124 at 33-34; Doc. 131 at 17-18; Doc. 132 at 17-18.

HOU 408473308v13

## J.    Engaging in relentless discovery abuse and wide scale vague and costly fishing expeditions in search of plausible claims.[13]

---

[12] Showalter failed to produce the "assignments" he extracted from his clients, which he knew from the beginning had stripped some of his clients' rights from pursing their claims in this case. Hacienda only learned during the course of this lawsuit that the Claimants had assigned or transferred their rights, if any, in the works to Showalter (the "Showalter Assignments"), and thus had no standing to bring their claims herein. Although Hacienda had requested such documents in this case and in the related cases, Showalter had refused and failed to provide such documents to the Court and Hacienda. Hacienda discovered the Showalter Assignments in the filed exhibits to a similar dispositive motion in Claimants' case against Freddie Records and the Freddie Martinez family in Judge Gray Miller's court. *See* Doc. 249-3, *Guajardo, et al. v. Freddie Records, et al.*, Civil Action No. 4:10-cv-02024 (S.D. Tex., Houston Division) ("*Guajardo*" case). Showalter also hid from production the November 17, 1982 contract whereby Gil Martinez sold and assigned his song *Mi Golodrina* (among others) to Marfre Music, which made clear Claimant Martinez had no copyright infringement claim for this composition. *See* Doc. 160 at 3-6 (discussion). But more egregious was Showalter's **false representation that "All responsive documents have been produced**," when in reality they had not. *See* Doc. 80-1 (Response to RFP No. 7); Doc. 160-1 (false supplemental response). Showalter clearly knew of the existence of this contract, as he attached it to Claimant Martinez's Complaint in his *Guajardo* case. *See* Doc. 158-8, *Guajardo* case. Hacienda only learned of this hidden contract from the filings in the Guajardo case. Showalter never retracted or corrected his false representations, again causing these proceedings to multiply.

[13] Showalter refused to cooperate with discovery at every step of the way. He multiplied the proceedings by demanding unnecessary discovery, *see* Doc. 46 at 4-5 (Showalter demanding voluminous materials, including documents from all four prior Hacienda cases to be able "to fully articulate their claims and causes of action"); failed to answer discovery requests, *see* Docs. 80, 86, 89, 113, 155, 158, 184; failed to present witnesses for depositions as noticed and agreed, Doc. 80 at 10-11 (motion to compel, which the Court ordered Showalter to finally give dates to depose Claimants, Minute Entry 12-11-14); failed to meet Court deadlines and discovery deadlines, and then when Hacienda passed its Motion to Compel based on Showalter's agreement to honor new deadlines, Showalter breached the agreements, sandbagging Hacienda's counsel, and requiring more motions to compel, *see* Doc. 89, 113; filed sham declarations, *see* Doc. 126; served false Interrogatory Answers, *see* Doc. 126 at 15-17 (some Claimants testified they had no personal knowledge of subjects yet Showalter had them falsely swear to such knowledge); served unverified Interrogatory Answers, *see* Doc. 64-4 (Ramos); 65-4 (Guerrero); 66-4 (Serrata); 67-4 (Martinez, Salcedo, Sanchez); Doc. 89-4 (Sanchez; Guanajuato); Doc. 126 at 17,  Doc. 115 at 47:13-24 (12-11-14 Hearing Transcript, Showalter admits he served unverified Interrogatory Answers); Doc. 80 at 10 (Showalter employed the same practice in *Guzman I*, Doc. 32, and Judge Costa struck the unverified Interrogatory answers, Doc. 33); back-dated Interrogatory Answers, *see* Doc. 126 at 17; and refused to allow Claimants to answer basic questions in their depositions. *See* Doc. 126 at 11-12. Showalter at first alleged 238 copyright infringements. *See* Doc. 41 (Claimants' Second Amended Counterclaim dated 9-5-14). Hacienda correctly requested that Claimants produce copies of the U.S. Copyright Registrations and U.S. Copyright Deposits of such works. Of course, Showalter failed to comply with Hacienda's requests for copies of the U.S. Copyright Deposits, and failed to comply with the Court's Order for Showalter to produce the copyright registrations and deposits in two weeks from the 8-7-14 Initial Conference. *See, e.g.*, Minute Entry dated 8-7-14; Doc. 114 at 12:19-20. Hacienda and its counsel then had to spend many months to figure out what the claims pertained to. By motion, by discovery requests, by communications with Claimants' counsel, and by arguments at the several court hearings, among other efforts, Hacienda had been diligently trying to determine the basis of the Claimants' copyright claims, such as the copyright registration numbers, the copyright deposits, and the dates of alleged infringement of any timely and valid registered copyrights and registered copyright deposits that are owned by Claimants. Despite lack of evidence, Claimants had steadfastly argued that they are the copyright owners to all the alleged Works, and had aggressively pursued infringement claims against Hacienda as to all such works. Suddenly, only after significant discovery, depositions, and court hearings, Claimants then **abandoned their claims as to approximately 144 songs**. *See* Doc. 143-1 (Letter dated May 4, 2015: "These documents were withdrawn because, to our knowledge, the songs to which the documents pertain have not been exploited by Hacienda."). The Showalter demanded discovery and work by Hacienda on the abandoned copyright claims was a complete waste of time. Further, on April 27, 2015, Claimants produced **for the first time** 56 new CDs of alleged copyright material and over 1,000 pages of new documents. *See* Exhibit J (Showalter Law Firm Letter, dated April 27, 2015); Doc. 143-2. Considering that the new production had different Bates numbers than the prior production, and both sets of production contained numerous CDs of sound recordings, Hacienda's counsel promptly asked on May 5, 2015 for a comparison chart as to what is new material or was a re-production of previously produced material, but Showalter's office refused to do so. *See* Doc. 143-2. Showalter's obstruction multiplied the proceedings, requiring significant extra work by Hacienda and its counsel. It is an enormous task to listen to all such new material and to compare to prior material to determine exactly what is new. Even then it would not have been exact. After analysis of the massive late Showalter production, it was learned that Showalter's claims with this new production had mushroomed to 434 works, but again without production of 434 U.S. Copyright Registrations nor 434 U.S. Copyright Deposits. *See* Doc. 141-1 (listing 434 Works); Doc. 141 at 4 (defining the "Works" in question as the works listed in Exhibit A, Doc. 141-1). (Actually no U.S. Copyright Deposits were ever produced by Showalter.) On May 1, 2015, months after the Claimants were deposed, Claimants filed their Third Amended Counterclaim and Cross-Claim, adding **for the first time** new infringement claims (Ramos, Serrata), new DMCA claims (Ramos, Guanajuato, Sanchez), new

12

### K.  Unprofessional conduct, including personal attacks and accusations, name-calling, threats, outrageous antics, and abusing and yelling at Hacienda witnesses.[14]

### L.  Demanding unnecessary depositions.[15]

---

RICO claims (Guanajuato, Salcedo, Martinez), new breach of fiduciary duty claims (Serrata, Guerrero), and new claims for breach of the duty of good faith and fair dealing (all Claimants). *Compare* Doc. 41 *with* Doc. 141. This late filing, with similar vague and broad claims, unnecessarily multiplied these proceedings, and required Hacienda and its counsel to spend significant time and resources to analyze these many new infringement claims, file a motion for judgment on the pleadings, Doc. 143, review and respond to discovery requests, file an answer, Doc. 153, file a motion to compel, Doc. 158, prepare for hearings and attend a hearing, July 31, 2015 Minute Entry, and file a supplement to its summary judgment motion. Doc. 160. Shockingly, all such work on the new 434 alleged copyrights was a complete waste of time, as on August 21, 2015 (to avoid the impending Court's ruling on Hacienda's dispositive motions), Claimants dropped with prejudice all of their fraud claims, RICO claims, misappropriation of name and likeness claims, and copyright infringement claims for all the alleged copyrights, except the two copyright infringement claims by Guanajuato. *See* Doc. 161 at 5-7. This was a stunning admission of the objectively unreasonable claims, and Hacienda expressly reserved its right to seek attorney's fees, expenses, and costs "at the appropriate time as allowed by law." *See* Doc. 163 at 3. The Showalter stonewalling persists even now. For example, despite discovery requests for the information on his recently acquired copyright registrations or pending applications for copyright registrations to Hacienda's masters, demands for supplementation of his discovery answers, agreements by his office to supplement discovery responses, a Court Order requiring him to supplement, testimony of his clients that Hacienda owns its masters, and a Court ruling making clear that Hacienda owns its masters, Showalter refused to cooperate, again multiplying these proceedings, necessitating Hacienda to seek relief and obtain another Court Order. *See* Docs. 204, 205.

[14] The unprofessional conduct by Showalter in his Hacienda cases is rampant, unchecked, and willful, to the point of being a regular and abusive trial tactic. Not all such abuses are mentioned here as the list is too long, so only a few are as follows:

    (1)    yelling at Hacienda witnesses during depositions, *see. e.g.*, Doc. 186-2 (Rick Garcia deposition dated 10-22-14, at 67:18-19, 72:21-73:25) (Showalter: "And I'm going to yell louder . . ." at 73:11-12); Exhibit K, Video Excerpts from Rick Garcia deposition dated 10-22-14, at time stamps 1:04:46-47, 1:06:23-24, 1:13:51-52, 1:20:25-1:21:08); Doc. 130-14 (Rick Garcia deposition dated 1-6-15, at 375:8-9); Doc. 108-7 at 7-11 in *Guzman II* (identifying multiple instances of Showalter yelling at the witness) (Rick Garcia deposition dated 7-12-12 from the *Sanchez* case);

    (2)    abusing Roland Garcia, Sr. during Showalter's examination in the *Guzman II* trial, resulting in Judge Costa terminating Showalter's examination and admonishing Showalter to be "professional." Exhibit I. *See* Doc. 108 at 16-17 in *Guzman II* (discussion of it happening, transcript is not yet ordered);

    (3)    personal attacks and accusations, *see* Doc. 160-3 at 3 (Showalter personal jabs at Hacienda's counsel: "I feel sorry for you"), Doc. 75-4 at 1 in *Guzman II* (Showalter attack on Hacienda's counsel: "Somewhere in your career you got off track. You never learned how to play fair or be honest."); Doc. 75-4 at 2 in *Guzman II* (Showalter: "There was an attempt to steal Mr. Guzman's song and you have no moral reservations at all about what happened." Note—the *Guzman II* jury found for Hacienda and Judge Costa so ruled, clearly there was no "stealing"); Doc. 41 at 5, ¶ 15 (" . . . Roland Garcia, Jr. intentionally acted to confuse, obfuscate, and hide information from Claimants and others similarly situated.");

    (4)    name-calling, *see, e.g.*, Exhibit A (harassing, berating and calling Hacienda's counsel "stupid" in Showalter's office in front of Showalter's associate), Doc. 110 at 5-6 in *Guzman II* (Judge Costa's Order acknowledging Showalter's name-calling of "falsehood-spouting defense counsel" and denying Showalter's motion for new trial on this and other grounds raised by Showalter);

    (5)    threats against Hacienda's counsel, *see* Doc. 41 at 7, ¶ 22 ("At times material hereto, persons involved in the management and control of Counter Defendants' activities include Gilbert Garcia, an investment banker, and Roland Garcia, Jr., a sophisticated attorney. Claimants reserve the right to seek leave to add these individuals as Counter Defendants in this case."); Doc. 75-5 at 1 in *Guzman II* (Showalter threatens Hacienda's counsel with "action to deal with your conduct");

    (6)    threats against Hacienda, *see* Doc. 161 at 6 (even though Showalter, at the eleventh hour, moved to dismiss with prejudice the frivolous infringement claims, he wrongly reserved the "right to seek sanctions against Hacienda . . ."); Doc. 166 at 3 (Court's Order, which removed Showalter's proposed language of Salcedo and Martinez reserving the "right to seek sanctions against Hacienda"). Even more egregious, during the *Guzman I* trial, Showalter approached the associate of Hacienda's lead counsel, without Hacienda's lead counsel being present, and threatened to bring more lawsuits against Hacienda. *See* discussion at Doc. 112 at 7-8. It is clear by Showalter's threats and frivolous claims, and his follow-through on such threats, that Showalter will not stop his vexatious campaign of harassment, necessitating the equitable relief Hacienda seeks herein; and

    (7)    outrageous antics in depositions. *See* Doc. 39-7 in *Guzman I* (Rick Garcia deposition dated 7-3-13, at 113:21-114:8 (Showalter mouthing the F-word during the deposition to upset, fluster and confuse the witness), and also at 165:16-25, 167:12-21 (Showalter making fish faces with his lips to further fluster and confuse the witness and counsel).

## M.   Misleading and false statements and representations to the Court and counsel.[16]

---

[15] Showalter demanded to take the depositions of the mother and brother of Hacienda's counsel.  Such depositions were completely unnecessary and intended to harass the Garcia family again.  Showalter went so far as to serve a unilateral deposition notice of non-party brother Gilbert Garcia, attaching a subpoena duces tecum seeking 15 categories of documents, and giving less than one-days' notice for this deposition, contrary to Rule 45(d)(3)(A).  *See* Doc. 91-2 at 6 (deposition notice).  This abusive tactic multiplied these proceedings and required Hacienda to file a motion to quash.  *See* Doc. 91 (motion to quash).  Showalter then filed an emergency motion to compel the deposition of Gilbert Garcia, *see* Doc. 134, which required Hacienda to file a response.  *See* Doc. 140.  A hearing was conducted on this motion and other motions on July 30, 2015.  *See* Doc. 167 (hearing transcript).  At the hearing, it was finally revealed that Showalter's office wanted this deposition to confirm the Hacienda corporate structure, to be able to sue all Hacienda entities.  *See* Doc. 167 at 15-18.  But, as pointed out in the hearing, that information was already known to Showalter on multiple occasions from the many other depositions of Rick Garcia and Roland Garcia, Sr. in his various Hacienda cases and in this very case, *see, e.g.*, Doc. 186-2 (Rick Garcia deposition at 6:21-25, deposed on knowledge of Hacienda's operations and activities "and its related entities"); Doc. 134-1 at 9 (email informing Showalter's office that the demanded deposition of Gilbert Garcia was unnecessary as "David Showalter already knows the corporate structure of Hacienda, and he has already sued all the entities, and he knows the identity of the limited partners, and their benefits if any", and Showalter had already sued all three Hacienda entities (wrongly).  *See* Doc. 41, 141.  Showalter's relentless demand to depose and harass Gilbert Garcia was a completely frivolous demand intended to multiply these proceeds, drive up the costs of defense, and to again harass the Garcia family.  The Court correctly terminated this motion.  *See* Doc. 167 at 18:2-14.

[16] Making false and misleading statements to the Court and misstating evidence is not only unprofessional, but sanctionable.  Sadly, Showalter did so on multiple occasions, all intended to mislead the Court, to prejudice Hacienda, and to obtain an unfair ruling.  For example, in support of his fraud claims, Showalter argued that "Hacienda never pays royalties to anyone."  *See* Doc. 96 at 28, ¶54 (Claimants' Response to Hacienda's Motion for Summary Judgment Against the Songwriter Claimants, dated January 11, 2015).  This representation was intended to place Hacienda in a bad light with the Court and to bolster Claimants' fraud claims.  (Never mind that Claimants' Interrogatory Answers did not identify any false statements made by Hacienda to them.  *See, e.g.*, Doc. 64-4 (Interrogatory Answer No. 7)).  The evidence Showalter cited to support such argument was to the deposition of Claimant Adan Sanchez.  But as to whether Hacienda pays royalties, Sanchez actually admitted in his deposition, "Right, I do not know that.  I do not know who they pay."  *See* Doc. 99-6 at 20, Tr. at 66:20-23.  Moreover, Showalter knew his representation to the Court was false, as prior to the filing of this misrepresentation on January 11, 2015, he took the deposition of Rick Garcia on January 6, 2015, who testified in part:

   Q:   (By David Showalter) Isn't it true that Roland Garcia, Sr., and Hacienda Records and its affiliates have a
          policy of not paying royalties? . . .

   A:   (By Rick Garcia) No, it's not true.

*See* Doc. 130-14 at 393:17-21.  In fact, after years of protracted and costly litigation in the *Sanchez* case, Judge Rosenthal granted summary judgment in Hacienda's favor, including findings and rulings that Hacienda **paid royalties** to the publisher of the song in question, *La Prieta Casada*.  *See* Doc. 104, at 14, *Sanchez v. Hacienda Records*, No. 4:11-cv-03855 (S.D. Tex. August 26, 2014) (discussion of Hacienda's payment of royalties to publisher Jedasa Music).  Showalter's representation to this Court that "Hacienda never pays royalties to anyone" was clearly misleading and false.  In another example, Showalter represented to the Court that Sanchez testified that Sanchez's personal publishing company, Adan's Records, was the publisher of the song *La Prieta Casada*, and cited Sanchez deposition pages 53:9-54:18 to support this representation.  *See* Doc. 96 at 8.  Showalter thus argued that Hacienda's listing on an album that Jedasa Music was publisher for this song was a violation of the DMCA.  *Id.*  But Showalter's cited testimony **does not** support this argument.  *See* Doc. 96-6 at 17 (Sanchez Dep. at 53:9-54:18).  First, Mr. Sanchez's personal publishing company is AABS, not Adan's Records.  *See* Doc. 96-6 at 53:9-54:15.  Second, Sanchez testified just the opposite, that he did not publish the song *La Prieta Casada*.  *See* Doc. 96-6 at pages 54:13-55:21.  Again, Showalter was misrepresenting evidence to the Court to bolster his frivolous "false information" DMCA claim.  In yet another example, Showalter made a false statement to the Court that the information he obtained from the Case Manager that the trial setting was still in place "was relayed to Plaintiff, who continued to insist that the deadlines were stayed—despite any orders to that effect."  Doc. 173 at 2.  The evidence Showalter cited to the Court for this statement was an email he attached as Exhibit B to his filing.  *See* Doc. 173-2 (the Exhibit B).  But that email in his Exhibit B **did not contain such information**.  The trial setting information was never "relayed to Plaintiff" as represented by Showalter.  Showalter was attempting to gain an unfair advantage in the trial setting and trial preparation and hoping to sandbag Hacienda at trial, since he knew he had not answered Hacienda's July 1, 2015 discovery requests, nor supplemented Claimants prior discovery responses (if those responses were not still accurate, as Ms. von Sternberg agreed), nor given dates to take the depositions of Claimants' experts (as Ms. von Sternberg agreed), nor given Hacienda an opportunity to designate rebuttal experts and to file *Daubert* motions (as Ms. von Sternberg agreed).  *See* Doc. 174 (discussion of Showalter's false statement to the Court).  The Court later clarified that the trial setting was indeed passed.  *See* Minute Entry dated October 28, 2015.  Additionally, Showalter argued that "Claimants have propounded discovery asking Hacienda to explain, for example, what specific acts were taken, and by whom, that allegedly convey ownership in the subject sound recordings to Hacienda."  *See* Doc. 56 at 2, ¶ 2.  But no such Interrogatory was asked of Hacienda.  *See* Doc. No

14

**N.**     **Pursuing a case based on fictitious and inflated damages.**[17]

**O.**     **Wrongful threats to sue Hacienda's counsel, and his mother and brother.**[18]

**P.**     **Asserting frivolous DMCA claims when Judge Rosenthal previously ruled there was no copyright infringement of the song at issue by Hacienda.**[19]

**Q.**     **Showalter finally admits that Martinez and Salcedo never had claims against Hacienda.**[20]

---

56-2 (the Interrogatories to Hacienda).  Then Showalter used the misstatement as a basis for his complaint about Hacienda's supposed objection to the never-asked Interrogatory.  *Id.*  The objective was to mislead the Court and to make it appear Hacienda was not answering Interrogatories.  As yet another example, Showalter represented to the Court that "Hacienda commenced this lawsuit seeking declaratory relief and claiming ownership in master recordings based on Hacienda's 'sound engineering and mixing.'"  *See* Doc. 56 at 2, ¶ 2.  But the actual allegation in Hacienda's declaratory judgment action stated:  "Hacienda asserts that it made the sound recordings in question pursuant to an express or implied recording agreement, and upon creation of the sound recordings, obtained a copyright in those sound recordings and any other Hacienda sound recordings which Defendants or their assigns may claim.  Hacienda provided original contributions in the form of sound engineering, editing and mixing, and owns the sound recordings."  *See* Doc. 6 at 3, ¶ 10.  Showalter's objective was to make it appear Hacienda was claiming ownership of its master sound recordings based only on the engineering to mislead the Court and to prolong his meritless case.

[17] Sanctions may be awarded where an attorney prosecutes a case based on inflated damages.  Here, Claimants never had any damages, as determined by the Court, and Claimants never produced evidence of any damages.  But more egregious was that Showalter aggressively pursued a case for willful infringement and statutory damages for all alleged "Works."  *See* Doc. 141 at 4 (the 434 alleged "Works" listed on the Exhibit A, Doc. 141-1); Doc. 141 at 10, ¶¶ 47-48 (all Hacienda parties allegedly "profited from this unlawful and unauthorized exploitation of the Works . . . [which] infringement . . . was willful.").  The Copyright Act provides in part that a Court "may increase the award of statutory damages to a sum of not more than $150,000" for a willful infringement.  *See* 17 U.S.C. § 504 (c)(2).  But as Showalter knows from the briefing in this case and from his other Hacienda cases, under the law there can be only one statutory damage award per infringed registration.  *See, e.g.,* Doc. 64 at 31.  Yet Showalter was seeking multiple willful infringement awards **per single copyright**.  For example, Showalter was seeking 34 different statutory damage awards at the maximum amount of $150,000 for each of such award based on an alleged infringement for his one (invalid) copyright registration to the Hacienda master "Medley of 34 Golden Hits."  *See* Exhibit F, Expert Report of Showalter's damages expert Wayne Coleman at Schedule C.  Moreover, Showalter was seeking grossly inflated willful infringement statutory damages of least $11,250,000 (for just 4 of the Hacienda masters in question), *see* Exhibit F, despite not having any valid copyright registrations to Hacienda's masters (as his clients admitted in their deposition testimony that Hacienda owns the masters and as their contracts clearly state).  Additionally, based on the face of the (invalid) Showalter copyright registrations, it appears they were obtained by Showalter more than three months after first publication of the Hacienda masters, and consequently statutory damages and attorney's fees **are not available**.  *See* 17 U.S.C. § 412(2); Doc. 64 at 29-30.  The damages claim of $11,250,000 was completely baseless, contrary to law, unreasonably inflated, objectively unreasonable under the Copyright Act, and made in bad faith to multiply the proceedings, prolong this case and scare Hacienda into an unfair settlement.  Showalter's tactic of alleging inflated damages to attempt to force an unfair settlement is not unique to this case, but is a common tactic in all of his Hacienda cases.  *See supra* Section III.C.  *See also* Doc. 85 at 11-12, *Sanchez* case (discussion on inflated claim of $5,700,000 of statutory damages, such claims denied by Judge Rosenthal, *see* Doc. 104, also at 42 F.Supp.3d 845 (S.D. Tex. 2014)); Doc. 65 at 17-20, *Tempest* case (discussion on inflated claim of $1,500,000 for statutory damages, such claim denied by Judge Rosenthal, *see* Docs. 103, 126, 129; Doc. 65 at 10-12, *Guzman I* case (discussion of inflated claim of $600,000 for statutory damages, denied by Judge Costa, *see* Doc. 137, also at 2014 WL 6982331).

[18] *See* Exhibit E (Showalter email); Doc. 115 (1-21-15 Hearing Transcript at 33:15-20).

[19] Claimant Sanchez's allegations of violations of the DMCA were objectively unreasonable because Judge Rosenthal previously ruled there was no infringement by Hacienda as to the song *La Prieta Casada*.  *See Sanchez v. Hacienda Records*, 42 F.Supp.3d 845 (S.D. Tex. 2014)(August 26, 2014).  Under the Section 1202(a) of the DMCA, there can be no violation unless there was intent to induce an infringement.  *See* 17 U.S.C. § 1202(a).  Showalter is keenly aware of this law, as it was fully briefed in his *Guzman I and II* cases, and Judge Gregg Costa made clear in his judgment for Hacienda that there can be no DMCA violation if there is no copyright infringement.  *See, e.g.,* Doc. 137 at 9, *Guzman I* (Judge Costa's judgment for Hacienda under the DMCA, concluding there was no copyright infringement by Hacienda due to no access to the work, and thus there can be no "intent" as required by the DMCA)(judgment dated 12-9-14).  No doubt Showalter's continued prosecution of the frivolous DMCA claims in his Second and Third Amended Counterclaims was objectively unreasonable and multiplied these proceedings.  *See* Doc. 41 (Second Amended Counterclaim dated 9-5-14); Doc. 141 (Third Amended Counterclaim dated 5-1-15).

## IV.   LEGAL STANDARD

### A.   Recovery of "Full" Costs and Attorneys' Fees under 17 U.S.C. § 505

17.     Section 505 of the Copyright Act authorizes this Court to award Hacienda recovery of its "full" costs.  *See* 17 U.S.C. § 505.  Thus, Hacienda is entitled to a recovery of all incurred costs, as either taxable costs under 28 U.S.C. § 1920 or as non-taxable costs as a component of recovering its "full costs" under the Copyright Act.[21]  Moreover, § 505 also provides that a district court "may also award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U. S. C. § 505.[22]  The decision to impose attorneys' fees and full costs lies in the sound discretion of the district court, reviewable only for an abuse of discretion.  *General Universal Systems, Inc. v. Lee*, 379 F.3d 131, 147 (5th Cir. 2004) (citing *McGaughey v. Twentieth Century Fox Film Corp.,* 12 F.3d 62, 65 (5th Cir.1994)).  "Although attorney's fees are awarded in the trial court's discretion, [in copyright cases] they are the rule rather than the exception and should be awarded routinely."  *Beardmore v. Jacobson*, No. 4:13-cv-361, 2016 WL 1253219, *1 (S.D. Tex. Mar. 30, 2016) (citing *Alameda Films SA de CV v. Authors Rights*

---

[20] Claimants Arnold Martinez and Leticia Salcedo, as with the other Claimants, relentlessly and aggressively pursued their claims of infringement, RICO (including mail fraud, wire fraud and money laundering), and breach of fiduciary duty.  *See* Doc. 41.  But at the eleventh hour Showalter admitted that all along "**they had absolutely no dealings or relationship with Hacienda**."  *See* Doc. 187 at 4 n.5.  This was a shocking admission.  Their relentless prosecution of their claims multiplied these proceedings and forced Hacienda to spend substantial time and resources to dispose of these frivolous claims.

[21] *See* 17 U.S.C. § 505; *Guzman v. Hacienda Records and Recording Studio, Inc.*, 2015 WL 4920058 at *5 (S.D. Tex. August 18, 2015) (the "full costs" recovery of § 505 includes taxable and non-taxable costs).  *See also Twentieth Century Fox Film Corp. v. Entertainment Distributing*, 429, F.3d 869, 885 (9th Cir. 2005)("Construing § 505 as limiting the costs that may be awarded to any particular subset of taxable costs effectively reads the word "full" out of the statute.  We must give every word in a statute meaning. . . . Thus, we hold that district courts may award otherwise non-taxable costs, including those that lie outside the scope of § 1920, under § 505."); *Kourtis v. Cameron*, 358 Fed. Appx. 863, 868 (9th Cir. 2009) ("non-taxable costs may be included in the calculation of 'full costs' under 17 U.S.C. § 505"); *Susan Wakeen Doll Co. v. Ashton Drake Galleries*, 272 F.3d 441, 458 (7th Cir.2001) ( "[A]ny award of fees and non-taxable costs must come through [§ 505], and not through the general cost provisions of 28 U.S.C. § 1920); *Coles v. Wonder*, 283 F.3d 798, 803 (6th Cir. 2002) (affirming award of non-taxable costs under § 505); *NLFC, Inc. v. Devcom-Mid-America, Inc.*, 916 F.Supp. 751, 762 (N.D. Ill. 1996)("In fact, courts have always had authority under Fed.R.Civ.P. 54(d) to tax costs not specifically enumerated in § 1920."); *Johnson v. Big Lots Stores, Inc.*, 639 F.Supp.2d 696, 709 (E.D. La. 2009)(noting that the Fifth Circuit "has followed other circuits in allowing out-of-pocket costs for claims under fee-shifting statutes")(citing to *Mota v. Univ. of Texas*, 261 F.3d 512, 529 (5th Cir. 2001), wherein Mota allows recovery of "postage, photocopying, paralegal services, long distance telephone calls and travel costs").

[22] *See Kirtsaeng v. John Wiley & Sons, Inc.*,136 S. Ct. 1979, 1989 (2016) ("Although objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals.").  Additionally, "a court may order fee-shifting because of a party's litigation misconduct, whatever the reasonableness of his claims or defenses." *Kirtsaeng*, 136 S.Ct. at 1988-1989.

*Restoration Corp. Inc.*, 331 F.3d 472, 483 (5th Cir. 2003)); *see also Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 411-412 (5th Cir. 2004).   Defendants who defeat a copyright infringement action are entitled to a strong presumption in favor of a grant of fees.   *Mostly Memories, Inc. v. For Your Ease Only, Inc.,* 526 F.3d 1093, 1099 (7th Cir.2008).   Further, non-copyright counterclaims are objectively unreasonable where such counterclaims were baseless. *See, e.g., Crown Awards, Inc. v. Disc. Trophy & Co.*, 564 F. Supp. 2d 290, 296 (S.D.N.Y. 2008) *aff'd*, 326 F. App'x 575 (2d Cir. 2009).

18.     To determine whether attorney's fees should be awarded to a party in a lawsuit under the Copyright Act, the court engages in a three step process. First, the court determines whether the party is a prevailing party and entitled to recover attorney's fees and costs.   *See* 17 U.S.C. § 505.   The Supreme Court has held that prevailing plaintiffs and defendants must be treated alike under § 505.   *See Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 114 S.Ct. 1023 (1994). The fee-shifting provision of § 505 is intended to promote the purpose of the Copyright Act— "enriching the general public through access to creative works."   *Fogerty*, 510 U.S. at 527, 114 S.Ct. at 1023.   Thus, in the context of facts such as in this case, a fee award for the full recovery of defense costs is consistent with the purpose of the Copyright Act:   "a person defending against a patently meritless copyright claim has every incentive to keep fighting, no matter that attorney's fees in a protracted suit might be as or more costly than a settlement" and a "copyright holder with no reasonable infringement claim has good reason not to bring suit in the first instance (knowing he cannot force a settlement and will have to proceed to judgment)." *Kirtsaeng*, 136 S.Ct. at 1986-1987.

19.     As discussed below, "the most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436-37, 103 S. Ct. 1933, 1941 (1983).   In exercising the

court's discretion to award attorney's fees and costs, "courts consider a number of equitable factors, including the non-prevailing party's frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), together with the need in particular circumstances to advance considerations of compensation and deterrence." *See Baker v. Urban Outfitters, Inc.*, 431 F.Supp.2d 351, 357 (S.D.N.Y. 2006) (citing *Fogerty*, 510 U.S. at 535 n.19, 114 S.Ct. 1023, among other cases). Of these factors, "objective unreasonableness" is given substantial weight. *Id.*[23]

20.     Second, after determining a party is entitled to attorney's fees, the court must determine the amount of attorney's fees to be awarded. *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006). To determine the amount, the court calculates the "lodestar" by multiplying the number of hours reasonably spent on the case by a reasonable hourly rate. *Rutherford v. Harris County*, 197 F.3d 173, 192 (5th Cir. 1999). Third, after determining the "lodestar," the court may adjust that number upward or downward based on a consideration of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *overruled on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989). The twelve Johnson factors are: (1) the time and labor required to represent the client; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11)

---

[23] Importantly, a court is not required to find that a lawsuit was frivolous or that the plaintiff acted in bad faith in order to award attorney's fees to a prevailing defendant. *See, e.g., Fogerty*, 510 U.S. at 527, 532-533; *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 155 (3rd Cir. 1986) ("We think that limiting assessments to those cases where bad faith is shown unduly narrows the discretion granted to the district judges.").

the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717-719.

**B.    Attorneys' Fees and Costs against Opposing Counsel under 28 U.S.C. § 1927**

21.    Attorney's fees may also be awarded against opposing counsel and his law firm under 28 U.S.C. § 1927, which states in part that "[a]ny attorney...who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Thus, "[a] court may assess attorney[s'] fees against an attorney under § 1927 if (a) the actions of the attorney multiply the proceedings, and (b) the attorney's actions are vexatious and unreasonable."  *Shackelford v. Courtesy Ford, Inc.,* 96 F. Supp. 2d 1140, 1144 (D. Colo. 2000). "Actions are considered vexatious and unreasonable if the attorney acts in bad faith...or if the attorney's conduct constitutes a reckless disregard for the duty owed by counsel to the court." *Id.; see also Miera v. Dairyland Ins. Co.,* 143 F.3d 1337, 1342 (10th Cir. 1998) (collecting various specific scenarios that evidence sanctionable conduct); *Edwards v. Gen. Motors Corp.,* 153 F.3d 242, 246 (5th Cir. 1998) (ruling that bad faith, improper motive, or reckless disregard of the duty owed to the court is sufficient for sanctions under §1927).  "[T]he term 'vexatious' has been defined as 'lacking justification and intended to harass.' " *Terrebonne, Ltd. of Calif. v. Murray,* 1 F. Supp. 2d 1050, 1055 (E.D. Cal. 1998) (quoting *Overnite Transp. Co. v. Chicago Ind. Tire Co.,* 697 F.2d 789, 795 (7th Cir. 1983)).  The District Court has discretion to award attorneys' fees pursuant to § 1927, reviewable only for an abuse of discretion. *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.,* 38 F.3d 1414, 1417 (5th Cir. 1994).  The Court of Appeals does not substitute its judgment for that of the District Court. *Western Heritage Ins. v. Robertson,* 224 F.3d 764 (5th Cir. 2000).

19

22.     Section 1927 fees or sanctions are appropriate if the district court finds that counsel acted recklessly or in bad faith, *see In re Silica Products Liab. Litig.,* 398 F. Supp. 2d 563, 674 (S.D. Tex. 2005), if the attorney recklessly or intentionally misleads the court, or raises a frivolous argument that multiples the proceedings, including mischaracterizing facts or asserting baseless legal argument. *See, e.g.*, *Greer v. Richardson Indep. Sch. Dist.*, 471 F. App'x 336, 340 (5th Cir. 2012); *Topalian v. Ehrman*, 84 F.3d 433 (5th Cir. 1996).[24]   Section 1927 sanctions are also awarded when an attorney continues to pursue a case based on inflated damages.  *See Alphonso v. Pitney Bowes, Inc.*, 356 F.Supp.2d 442, 454 (D.N.J. 2005).

23.     Courts have awarded § 1927 sanctions against attorneys who have continued to litigate a case where there was no viable claim. *See, e.g., Edwards v. Gen. Motors Corp.,* 153 F.3d 242, 246 (5th Cir. 1998)(affirming sanctions award where "Crampton deliberately kept her meritless case alive for no purpose other than to force GM to settle or to defend it."); *In re Silica Products Liab. Litig.*, 398 F. Supp. 2d 563, 674 (S.D. Tex. 2005) (affirming sanctions where law firm exhibited reckless disregard of a duty owed to the court by pursuing class claims that had become a "virtual impossibility"); *Lewis v. Brown & Root, Inc.*, 711 F.2d 1287, 1288, 1292 (1983) (affirming award of attorney's fees under § 1927 for case that "should never have been filed"), *modified*, 722 F.2d 209 (5th Cir.); *Western Heritage Ins. v. Robertson*, 224 F.3d 764, 2000 WL 992178 (5th Cir. 2000) ("Of course, continuing to prosecute a meritless action is

---

[24] *See also In re Girardi*, 611 F.3d 1027, 1060-61 (9th Cir. 2010) (same); *O'Rourke v. Norman*, 640 F. Supp. 1451, 1469, 1986 U.S. Dist. LEXIS 25802, 19 (W.D. Okla. 1986) (sanctions appropriate where attorney has falsified events); *Goodman v. Tatton Enter., Inc.*, Case No. 10-60624 Civ-ZLOCH/Rosenbaum, 2012 WL 12540024, at *31 (S.D. Fla. June 1, 2012) ("Mr. Weitz's repeated instances of making misrepresentations to this Court vexatiously multiplied the proceedings and further demonstrate Mr. Weitz's objective and subjective bad faith."); *Herzfeld & Stern v. Blair*, 769 F.2d 645, 647 (10th Cir. 1985) (false citations to the record are "misleading to the court" and sanctions are "not only proper, they are also necessary"); *Maiteki v. Marten Transport Ltd.*, 2016 WL 3878502, Civil Action No. 12-cv-2021-WJM-CBS, at *4 (D. Colo. July 18, 2016) ("Maiteki's Counsel appears to believe that attaching evidence gives them license to characterize that evidence in any way they want, and it is for this Court to decide whether they have characterized it accurately. Maiteki's Counsel are seriously mistaken. . . . there is a difference between putting evidence in the best possible light and blatantly misstating the evidence. . . . Maiteki's Counsel's approach to the evidence was vexatious and objectively unreasonable. Moreover, it unnecessarily multiplied these proceedings because, at a minimum, it required Marten's attorneys to spend significant time in Marten's summary judgment reply brief correcting Maiteki's Counsel's pervasive misstatements."); *Velocys, Inc. v. Catacel Corp.*, No. 5:10CV747, 2011 WL 4945291, at *2-4 (N.D. Ohio Oct. 18, 2011) (making statements to the Court without any factual basis is grounds for awarding fees under § 1927).

sanctionable.").[25]   The attorney's conduct is judged objectively; subjective bad faith is not required to justify § 1927 sanctions.  *See Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1203 (10th Cir. 2008) ("Where, 'pure heart' notwithstanding, an attorney's momentarily 'empty head' results in an objectively vexatious and unreasonable multiplication of proceedings at expense to his opponent, the court may hold the attorney personally responsible.").[26]

24.     Further, the court can "properly take into account all of [the attorney's] conduct in this case and calibrate sanctions accordingly."  *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006).  Indeed, the Court may consider conduct outside of the courtroom and in other proceedings to help determine the attorneys' knowledge and intention.  *Western Heritage Ins. v. Robertson*, 224 F.3d 764, 2000 WL 992178 (5th Cir. 2000) ("They claim they are being sanctioned for conduct outside the federal court proceedings. Appellants point to the district court's findings of fact, which detail their conduct in state court. These findings establish, however, that: their claim was meritless; they should have realized it; they did everything they possibly could to maintain it; and it should have been dismissed voluntarily.").  *See also Reed v. Great Lakes Cos., Inc.*, 330 F.3d 931, 936 (7th Cir. 2003) (court "can take into account a history of frivolous litigation"); *City of Livonia Emps.' Ret. Sys. & Local 295/Local 851 v. Boeing Co.*,

---

[25] *See also Gollomp v. Spitzer*, 2007 WL 433361, at *8 (N.D.N.Y Feb. 5, 2007), *aff'd,* 568 F.3d 355 (2d Cir. 2009) ("Moreover, § 1927 imposes a continuing obligation to connect or withdraw claims, defenses, and litigation positions after it becomes obvious that they are without merit."); *Shank v. Eagle Techs., Inc.*, No. CIV. A. RWT-10-2231, 2013 WL 4442033, at *2 (D. Md. Aug. 15, 2013) (bad faith may be found "when it becomes evident that a claim lacks merit but an attorney persists in litigating the claim nonetheless."); *Carr v. Tillery*, 591 F.3d 909, 920 (7th Cir. 2010) (pursuit of a motion so lacking in merit "indicates a motive to harass"); *Homola v. McNamara*, 59 F.3d 647, 651 (7th Cir. 1995) ("the judicial system cannot tolerate litigants who refuse to accept adverse decisions"); *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985) ("If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious."); *Illinois Computer Research LLC v. Best Buy Stores, L.P.*, 1-10-cv-04298, Doc. 84 (N.D. Ill. Dec. 7, 2012) (Court grants attorneys' fees under § 1927 due to lack of adequate pre-suit filing investigation and maintenance of a lawsuit despite strong evidence of non-infringement).

[26] An attorney is sanctionable under 28 U.S.C. § 1927 "without a finding of bad faith, at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997). *See Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007) ("bad faith turns not on the attorney's subjective intent, but on the attorney's objective conduct").

711 F.3d 754, 762 (7th Cir. 2013) ("Recidivism is relevant in assessing sanctions."); *Johnson v. C.I.R.*, 289 F.3d 452, 456-57 (7th Cir. 2002) (the court "was not required to ignore [the attorney's] bad conduct in other cases; indeed it would have been remiss not to consider it").

### C.   Attorneys' Fees, Costs and Equitable Relief against Opposing Counsel and Clients under the Court's Inherent Power

25.     A district court has the inherent power to manage its own proceedings and to control the conduct of litigants who appear before it through orders or the issuance of monetary sanctions for bad-faith, vexatious, wanton or oppressive behavior. *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 46-50 (1991). These inherent powers "are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). The "only meaningful difference" between awards under § 1927 and awards under a court's inherent power is that § 1927 only permits awards against attorneys "while an award made under the court's inherent power may be made against an attorney, a party, or both." *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)). *See Gripe v. City of Enid, Okl.*, 312 F.3d 1184, 1188-89 (10th Cir. 2002) (affirming sanction of dismissal of claims based on attorney's misconduct and noting that "[a] litigant is bound by the actions of its attorney, and the relative innocence of the litigant ... does not constitute grounds for relief"); *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1246 (9th Cir. 2016) (sanctioning client because client was "deemed bound by the acts of [its lawyers] and is considered to have notice of all facts, notice of which can be charged upon the attorney").

26.     In the context of sanctions under 28 U.S.C. § 1927 or a court's inherent power to control its proceedings, a court may find "bad faith" when an attorney's actions so lack in merit

that they "must have been undertaken for some improper purpose such as delay." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (citation and internal quotation marks omitted).[27]   The Court has the power "to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 43.  *See Lysiak v. C.I.R.*, 816 F.2d 311, 313 (7th Cir. 1987) ("A court faced with a litigant engaged in a pattern of frivolous litigation has the authority to implement a remedy that may include restrictions on that litigant's access to the court.").  The Court also has the power to issue all orders or writs to enforce its judgment.  *See* 28 U.S.C. § 1651(a) (All Writs Act); F.R.C.P. 70.[28]

### D.  Claimants, Showalter and the Showalter Law Firm are all Jointly and Severally Liable

27.     As previously discussed, Claimants jointly prosecuted global claims against all Hacienda parties.  The Claimants also were counter defendants in the case, and they filed a joint answer raising the exact same affirmative defenses, such as "unclean hands," "bad faith," "estoppel," "fraud" and many other defenses.  *See* Doc. 42.  Their affirmative claims were also filed jointly, and raised vague and global charges.  *See* Doc. 41, 141.  Each Claimant designated and used the same experts, *see* Doc. 52, 53, and each was also a fact witness to the whole of the case, including the vague and global defenses and affirmative claims.  The depositions of Claimants and written discovery on Claimants were all part of the same defense by Hacienda, and involved the same allegations of industry practices, practices on usage of copyrights, record keeping, licensing, royalty payment practices, and manufacturing of units, among other generic

---

[27] *See also Meyers v. Textron Fin. Corp.*, 609 F. App'x 775, 779 (5th Cir. 2015)(a showing of bad faith is sufficient to award sanctions under a court's inherent power); *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1178 n.6 (11th Cir. 2005) (bad-faith standard for inherent authority is essentially the same as the standard under 28 U.S.C. § 1927).

[28] *See also Hamilton v. Nakai*, 453 F.2d 152, 157 (9th Cir. 1972) (jurisdiction of a federal court extends to orders to enforce its own decrees by injunctions or writs of assistance in order to avoid the relitigation of previously decided issues between the parties); *Newby v. Enron Corp.*, 302 F.3d 295, 303 (5th Cir. 2002)("the district court had authority under the All Writs Act to enjoin Fleming [a law firm] from filing future state court actions without its permission and did not abuse its discretion in doing so."); *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 879 (5th Cir. 1998) (All Writs Act, 28 U.S.C. § 1651, authorizes a federal district court to issue writs of assistance to enforce a final judgment.).

allegations by Claimants of Hacienda's practices.  *See, e.g.*, Doc. 141 at 9.  Thus, there is no

need for Hacienda to segregate out its fees and costs herein.  *See, e.g., Vanderbilt Mortgage and*

*Finance, Inc. v. Flores*, No. C-09312, 2011 WL 2160928, at *1 (S.D. Tex. 2011) (no need to

segregate fees for intertwined dismissed claims).  Multiple courts have awarded joint and several

sanctions awards against the parties, their attorney, and the attorneys' law firm.  *See, e.g., Meyers*

*v. Textron Fin. Corp.,* 609 F. App'x 775, 779 (5th Cir. 2015); *Ginther v. Texas Commerce Bank,*

*N.A.*, 111 F.R.D. 615, 621 (S.D. Tex. 1986)("Ginther and his attorney must reimburse the

Defendants for the costs, expenses and attorneys' fees incurred in connection with responding to

the instant suit. . . . Such sanctions are imposed jointly and severally against Ginther, Adriana

Newsom, Benton Musslewhite and the Law Offices of Benton Musslewhite, Inc."); *Park Nat'l*

*Bank v. Kaminetzky,* 976 F.Supp. 571, 586 (S.D. Tex. 1996) (two plaintiffs and the attorney were

jointly and severally liable as case was not viable and was prosecuted by the attorney without an

adequate analysis by the attorney).[29]

28.     Here, as revealed by the record in this case and the referenced related cases and

the evidence, *see* Exhibit A-K; Sections I, II, III, *supra*, the Claimants' claims were objectively

unreasonable and thus Hacienda is entitled to recover its attorney's fees and full costs from

Claimants under § 505, and considering that Showalter vexatiously multiplied these proceedings

in bad faith, pursuant to § 505, § 1927, and the Court's inherent power, an award of full recovery

of Hacienda's incurred attorney's fees and costs against Claimants, Showalter individually, and

the Showalter Law Firm, all jointly and severally, is requested and is appropriate and

necessary.  *See Enmon v. Prospect Capital Corp*., 675 F3d 138, 148 (2d Cir. 2012) (affirming the

award of attorney's fees against the law firm, where the attorney was a founding and named

---

[29] To the extent the Court believes any segregation of fees and costs is necessary, Hacienda is willing to do so and respectfully requests leave to make a supplemental submission making such an apportionment.  Alternatively, the Court may examine the fee statements and invoices which describe in detail the time, work and costs spent in this matter.  *See* Exhibits B, C, D.

partner in the firm, and the actions of the attorney "were indistinguishable from those of [the] firm"); *ACLI Gov't Secs. v. Rhoades*, 907 F. Supp. 66, 71 (S.D.N.Y 1995) (imposing sanctions under § 1927 and the court's inherent power against the law firm for the attorney's bad faith litigation tactics).

## V.   THE HACIENDA PARTIES, AS THE PREVAILING PARTIES, ARE ENTITLED TO AN AWARD OF FULL COSTS AND ATTORNEYS' FEES, JOINTLY AND SEVERALLY AGAINST CLAIMANTS AND SHOWALTER

29.   Here, the Court has entered Final Judgment in Hacienda's favor.  *See* Doc. No. 206.  The Hacienda parties have obtained complete relief, and all Claimants' claims have been dismissed or denied.  *Id.*  Moreover, the Court has already ruled that the Hacienda parties are the prevailing parties in this matter.[30]  *See* Doc. No. 205 at 2.  By any measure, considering the record and the evidence, under the correct standards of *Kirtsaeng, Fogerty, Hensley*, § 505, § 1927, and the Court's inherent power, Hacienda is entitled to recover its full costs and attorneys' fees from all Claimants, David Showalter, and the Showalter Law Firm, all jointly and severally.

30.   In this case, neither Hacienda nor the Court should have to bear the cost and diversion of time and resources demanded by the Claimants' and Showalter's frivolous and

---

[30] In a copyright infringement case, the court has discretion to decide to whom to award attorney's fees and in what amount.  *See* 17 U.S.C. § 505; *Bourne Co. v. Hunter Country Club, Inc.*, 990 F.2d 934, 939 (7th Cir. 1993) ("A district court may, as an exercise of its statutory discretion, award attorney fees and costs to the prevailing party in a copyright infringement suit."). Importantly, the U.S. Supreme Court has held that prevailing plaintiffs and prevailing defendants must be treated alike under § 505.  *Fogerty v. Fantasy, Inc.*, 517, 114 S.Ct. 1023, 1025, 127 L. Ed. 2d 455 (1994).  Under *Fogerty* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436-37, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)), the non-exclusive factors a court should consider include: a) the degree of success obtained; b) frivolousness; motivation; objective unreasonableness (both in the factual and legal arguments in the case); and c) the need in particular circumstances to advance considerations of compensation and deterrence. *Fogerty*, 510 U.S. at n.19, 114 S.Ct. at 1033 n.19.  The Supreme Court in *Hensley* described the "degree of success obtained" as the most critical factor.  *Hensley*, 461 U.S. at 436-37, 103 S.Ct. at 1941 ("Again, the most critical factor is the degree of success obtained").  "[S]uccessful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright." *Fogerty*, 510 U.S. at 527.  "When defendants advance a variety of meritorious copyright defenses," they further the Copyright Act's ultimate aim "to stimulate artistic creativity for the general public good."  *Mattel, Inc. v. MGA Entertainment*, 705 F.3d 1108, 1111 (9th Cir. 2013) (citing *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1995)).  "Awarding fees will serve the usual purposes of a fee-shifting statute by deterring future baseless claims and compensating Defendants for the costs of defending such claims." *Choyce v. S.F. Bay Area Ind. Media Center,* No. 13-cv-01842-JST, 2014 WL 5597274, at *5 (N.D. Cal. November 2, 2014).  Here, consistent with the goals of the Copyright Act and the dictates of *Kirtsaeng, Fogerty,* and *Hensley,* the Court correctly ruled that the Hacienda parties are prevailing parties in this case.  *See* Doc. 205 at 2.

objectively unreasonable claims, bad faith motions and filings, and abusive conduct.  Here, the presence of improper motivation and successful results achieved weighs heavily in favor of an award of full attorney's fees and costs to Hacienda.  From the beginning, it was clear that this case was contrived without regard to the actual facts and the controlling law.  As discussed above, the allegation of "willful infringement" seeking $150,000 per 434 works under Copyright Act was clearly frivolous, contrary to law, and objectively unreasonable.  *See* 17 U.S.C. § 412(2); *Baker*, 431 F.Supp.2d at 363 (S.D.N.Y. 2006) ("In view of the clear statutory language precluding statutory damages in cases like the instant one and in view of Weingrad's prior experience with and knowledge of this point of law, it was unreasonable, vexatious, and clearly in bad faith for Weingrad to include a claim for statutory damages in the Complaint in this case.").[31]

31.     Here, under the facts as described herein, Hacienda should recover **all** of its attorneys' fees and costs.  *See Western Heritage Ins. v. Robertson*, 224 F.3d 764, at *5 (5th Cir. 2000) ("Counsel's failure to reasonably investigate plaintiff's claim or material produced in discovery, which would have revealed the claim's lack of merit, is bad faith litigation," and thus, "the entire litigation was unwarranted, unreasonable, vexatious, and in bad faith," resulting in defendant's recovery of all fees under § 1927).

32.     Further, there is a need for an award of full recovery of fees and costs to advance deterrence for additional frivolous claims by Claimants and Showalter against Hacienda and the Garcia family.  This is the fifth lawsuit prosecuted by Showalter against Hacienda, employing the same dilatory tactics, and pursuing frivolous claims of statutory damages against Hacienda,

---

[31] As discussed herein, this is not the first lawsuit prosecuted by Showalter against Hacienda and the Garcia family.  Each Showalter case uses the same generic allegations of willful infringement, even if not allowed by law.  In fact, Judge Gregg Costa granted Hacienda's Motion to Dismiss the frivolous willful infringement claims in Showalter's *Guzman II* case.  *See* Minute Entry, dated October 11, 2013, *Guzman II*.  Further, counsel for Hacienda even cautioned Showalter to refrain from prosecuting the frivolous willful infringement claims, and Showalter refused to back down, multiplying these proceedings with his bad faith claims.  *See* Exhibit E (email); Doc. 114 at 9:7-12, 10:5-6 (Transcript of Initial Conference).

in the hopes of forcing an unfair settlement.  Further, during the *Guzman I* trial, Showalter told

the associate of Hacienda's counsel to expect more lawsuits against Hacienda.   True to his

threats, Showalter sent his demand letters and filed these claims, this time adding "criminal" and

"racketeering" charges, without any shred of evidence, in an obvious attempt to humiliate,

embarrass and punish the Garcia family for not settling the *Guzman* cases.  Indeed, "[f]ailing to

award attorneys' fees to defendants in such situations would invite others to bring similarly

unreasonable actions without fear of any consequences."  *See Baker*, 431 F.Supp.2d at 339

(S.D.N.Y. 2006).  *See also Arclightz & Films Pvt. Ltd. v. Video Palace Inc.*, No. 01 Civ. 10135,

2003 WL 22434153, at \*3 (S.D.N.Y. Oct. 23, 2003).

## VI.   THE HACIENDA PARTIES, AS PREVAILING PARTIES, ARE ENTITLED TO EQUITABLE RELIEF, JOINTLY AND SEVERALLY AGAINST CLAIMANTS AND SHOWALTER

33.     Because of Claimants' and Showalter's repeated bad faith and vexatious actions

and abusive conduct, pattern of refusal to cooperate in discovery, demands for broad and

unnecessary discovery, filing of objectively unreasonable claims, applying for and obtaining

invalid copyright registrations of Hacienda's masters (applications drafted and submitted by

Showalter), failure to conduct an adequate pre-suit investigation, discovery abuse, and

Showalter's threats and follow-through on such threats to file more lawsuits against Hacienda,

the Court also has inherent power to order equitable relief to protect the Court's judgment, to

promote the goals of the Copyright Act, and to give adequate relief to Hacienda and the Garcia

family.  *See Chambers*, 501 U.S. at 43 (the Court has the power "to fashion an appropriate

sanction for conduct which abuses the judicial process"); *Newby v. Enron Corp.*, 302 F.3d 295,

303 (5th Cir. 2002)("the district court had authority under the All Writs Act to enjoin Fleming [a

law firm] from filing future state court actions without its permission and did not abuse its

discretion in doing so.").

27

34.     Accordingly, Hacienda asks the Court to enjoin Claimants, Showalter and the Showalter Law Firm from filing further lawsuits against Hacienda or the Garcia family again, or from threatening or sending demand letters threatening to sue Hacienda or the Garcia family, without obtaining leave of this Court to do so, and such leave should include a showing by sworn evidence that Claimants and Showalter or the Showalter Law Firm have undertaken the following before seeking leave of this Court:

(1) order and obtain a certified copy of both the U.S. Copyright Registration and U.S. Copyright Deposit from the U.S. Copyright Office to the work in question;

(2) compare the certified copy of both the U.S. Copyright Registration and U.S. Copyright Deposit of the work in question with the sound recording of the Hacienda product in question to confirm Hacienda has in fact used the exact work registered and deposited with the U.S. Copyright Office;

(3) determine if there are other U.S. Copyright Registrations to a work by the same title, which name a different owner or claimant to the work in question;

(4) determine if Hacienda had published or released its sound recording in question prior to three months of the date of the issuance of the U.S. Copyright Registration to the work in question (such determination may be made by reference to the date on the Copyright Notice affixed to the Hacienda product in question), and if so to not threaten to sue for nor to seek leave of court to sue for statutory damages or attorney's fees, *see* 17 U.S.C. § 412(2);

(5) only after an adequate pre-suit investigation (including, but not limited to, steps 1 to 4 herein), and at least 30 days before seeking leave of this Court to file a lawsuit against either Hacienda or the Garcia family, to provide to Hacienda, by hand-delivery to Hacienda's undersigned lead counsel, a certified copy of both the U.S. Copyright Registration and U.S. Copyright Deposit in question, and providing a sworn written statement identifying the specific Hacienda product in question, the basis for any claim of infringement or related claim, and identifying any other U.S. Copyright Registrations for a work by the same title which list a different owner or claimant; and

(6) no leave to file a lawsuit and no lawsuit may be filed by Claimants, Showalter or the Showalter Law Firm (nor by a law firm in affiliation or collaboration with Showalter or the Showalter Law Firm, and Showalter is to provide a copy of the Court's order to such other law firm) against the Garcia family or against Hacienda or any affiliated parties, owners, agents, representatives or employees until completion of steps 1 to 5 herein, and further, both the request for leave and, if granted, the lawsuit, to be filed in this Court, to

avoid rehashing all prior briefing and discovery and to promote efficiency and to preserve resources of the parties and the courts.

35.     An adequate pre-suit investigation is required by law anyway, and only plausible claims may be filed anyway.  Thus, such equitable relief is not unduly burdensome nor will it prohibit the bringing of legitimate claims based on valid copyright registrations and valid copyright deposits and related claims.  Further, as evidenced herein, Showalter's practice of producing and relying on invalid registrations and bogus copyright deposits for his infringement lawsuits now requires the use and production of certified U.S. Copyright Deposits for an adequate pre-suit investigation and for fair notice of any plausible claims.

36.     Moreover, due to Showalter's bad faith pattern to apply for and obtain invalid copyright registrations to Hacienda's masters, and his failure to cooperate to inform Hacienda when he does so, the Court should order Showalter and Claimants to provide to Hacienda's counsel, by hand-delivery, a copy of any new applications for copyright registration of any sound recordings recorded by or at Hacienda, or published or released by Hacienda and the accompanying deposits simultaneously when the application is sent or filed with the U.S. Copyright Office, and a copy of any new U.S. Copyright Registrations and U.S. Copyright Deposits within 48 hours of Claimants' or Showalter's receipt of the new copyright registrations, and the Court should have continuing jurisdiction over disputes regarding such new copyright applications and new copyright registrations of any Hacienda sound recording.

## VII.   <u>LODESTAR DETERMINATION</u>

37.     With Hacienda being the prevailing party, the Court must determine the "lodestar" amount by multiplying the number of hours reasonably spent on the case by a reasonable hourly rate.  *See Rutherford v. Harris County*, 197 F.3d 173, 192 (5th Cir. 1999).  As discussed below, the number of hours spent by Hacienda's counsel was reasonable.  *See*

Exhibit A.  Further, considering the circumstances, the success of defense, the required work, the frivolous and objectively unreasonable claims by Showalter's clients, and the hourly fee engagement, the reduced hourly rate agreed at the outset by Hacienda's counsel due to the original nominal amount in controversy (unreasonably inflated later by Showalter), and the nominal sales of units in question, the hourly rate of $350 for partners and of counsel, and $300 for associates invoiced to Hacienda was reasonable.  *Id.*  However, the prevailing market rate is considerably higher.  *Id.*  The Court has discretion to increase the invoiced hourly rate under the circumstances and Hacienda requests the Court to do so.[32]  In fact, Showalter requested $400 per hour for partner time in the *Guzman I* matter.  *See* Doc. 125 at 5 in *Guzman I v. Hacienda*. Hacienda requests an upward adjustment of $400 per hour for shareholder and of counsel work (which is still a significantly reduced rate from the regular rate of the attorneys and as is customary, and considering significant amounts of lawyer time were not invoiced to Hacienda), and the reduced rate of $300 for associates.  *See* Exhibit A.  Such rates would be reasonable for an attorney's fee award to Hacienda.  *Id.*[33]

38.     Now that the Court has determined that Hacienda is a prevailing party, the Court may adjust the "lodestar" number upward or downward based on a consideration of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974).  Hacienda seeks reasonable attorney's fees in the amount of $188,081.00 (for services

---

[32] *See, e.g., Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) ("This determination is not made by reference to rates actually charged the prevailing party. Rather, the Court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."); *Elf-Man, LLC. v. Lamberson*, No. 13-cv-0395-TOR, 2015 WL 11112498, at *6 (E.D. Wash January 1, 2015) (although attorney charged his client only $260 per hour, his regular rate was $460, thus the court applied $400 per hour as a reasonable rate); *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (district court can rely on its own knowledge and experience when determining a reasonable hourly rate for the services performed).

[33] *See Seekamp v. It's Huge, Inc.*, No. 1:09-CV-0018 LEK/CFH, 2014 WL 7272960, at *1 (N.D.N.Y. Dec. 18, 2014) (finding $400-500 per hour for partners and $250-380 per hour for associates reasonable); *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10 Civ. 1853 PGG, 2011 WL 1002439, at *5-6 (S.D.N.Y. Mar. 16, 2011), *aff'd*, 483 F. App'x 634 (2d Cir. 2012) (approving $761 rate for senior partner).

rendered up to July 31, 2016). *See* Exhibit A.[34]  Hacienda provides as support for this application

the declaration of attorney Roland Garcia, attached as Exhibit A and asks the Court to take

judicial notice of the filings and conduct of Claimants and Showalter in this case and the other

Showalter cases, as discussed in Sections I, II and III *supra*.  Hacienda also refers the Court to

the time records of Hacienda's counsel.  *See* Exhibit B.

39.     Mr. Garcia proves that the time records in Exhibit B were made at or near the

time that the work was performed.  *See* Exhibits A and B.  Further, all time recorded by the legal

assistants is for substantive legal work performed under the direction and supervision of an

attorney.  Exhibit A.  Paralegal fees can be recovered "to the extent that the paralegal performs

work traditionally done by an attorney." *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir.

1982).  Lastly, Mr. Garcia confirms that he has exercised billing judgment and has written off or

not invoiced at least 20% of all time to more than account for work such as time on Hacienda's

motion to dismiss (first denied in part, Minute Entry 8-7-14, but later all claims dismissed or

denied), and motion to realign (denied only as premature and without prejudice to re-urging in

the event the case proceeded to trial) (Doc. 152).  Such work was actually productive and useful

for development of the case.

40.     The total number of reasonable hours rendered on behalf of Defendants and the

prevailing reduced market rates are included in the attached invoices.  The hours rendered on

behalf of Defendants were calculated after exercising billing judgment, and significant

reductions on the time actually worked in defending the frivolous claims.  Exhibit A.  The

reduced hourly rates are significantly lower than the prevailing market rates for each time keeper

based upon that person's experience, skill, knowledge and contributions to the case.  Exhibit A.

---

[34] The reasonable fees invoiced to Hacienda without an upward adjustment for partner time to the discounted hourly rates is $168,988.50 (for services rendered up to July 31, 2016).  *See* Exhibit A, B (applying a $350 hourly rate for shareholders).

41.     The twelve Johnson factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to this case; (5) the customary fee; (6) whether fee is fixed or contingent; (7) time limitations; (8) the amount involved and results obtained; (9) the experience, reputation and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See* Johnson, 488 F.2d at 717–719.

42.     As to the Johnson factors, Hacienda shows as follows:

**A.      The time and labor involved.**

As discussed above, this case involved vague and broad discovery demands by Showalter and several discovery disputes, and multiple vague claims, requiring significant time to defend the Claimants' demands and claims.   Hacienda was required to file several discovery motions, motions to dismiss, motions for summary judgment, and motion for judgment on the pleadings.   Showalter multiplied these proceedings as discussed in Section III *supra.*

**B.      The novelty and difficulty of the questions.**

Although this should have been a straightforward case, Showalter complicated the case by production of bogus deposits, prosecution of objectively unreasonable claims, and revisiting claims.   Hacienda's counsel was further required to spend significant time to address such actions, requiring the research of multiple areas of copyright law and the DMCA.

**C.      The skill requisite to perform the legal services properly.**

Hacienda's counsel has practiced copyright law for many years, and has handled many copyright cases with success (including cases brought by the Showalter firm such as *Tempest*, *Sanchez*, *Guzman I* and *Guzman II*).   After Hacienda's trial verdict in *Guzman I*, Showalter appealed the case, which the Fifth Circuit affirmed in Hacienda's favor.   *See Guzman v. Hacienda Records, L.P.*, 808 F.3d 1031 (5th Cir. 2015).

**D.      The preclusion of other employment due to this case.**

The broad discovery demands by Showalter in this case, the numerous discovery disputes, and the relentless prosecution of this case precluded Hacienda's lead counsel and his staff from working on other cases at their normal hourly rates, which are much higher than the discounted rates offered to Hacienda in this matter.

32

### E.    The customary fee.

The attorneys' fees charged by Hacienda's counsel are customary fees for similar work in the community and lower than fees charged by attorneys of comparable experience.  *See* Exhibit A.  It is only appropriate that the Court make an upward adjustment to $400 of the hourly rates invoiced for work by shareholders and of counsel as allowed by law.  In fact, Showalter sought attorneys' fees at a rate of $400 per hour, which is the rate Hacienda requests.  *See* Doc. 125 at 5, *Guzman I.*

### F.    Whether fee is fixed or contingent.

Hacienda's fees are based on an hourly rate, customary for the defense of copyright infringement cases in the Southern District of Texas.

### G.    Time limitations.

The broad demands for discovery by Showalter were a repeat of the same unsuccessful (but costly) tactics in the *Guzman I, Guzman II, Sanchez* and *Tempest* cases.  Hacienda is a small independent family run record label, and had no choice but to defend itself from such vexatious tactics and abuse.  The Hacienda staff, and in particular Roland Garcia, Sr. (deceased) and Rick Garcia, who were individually sued, were effectively consumed with this case and were precluded from their normal work such as recording bands, selling music, and operating their business.  *See* Exhibit I.  Instead of being able to work in their business, they were tied up with Showalter's massive discovery demands, document requests, multiple depositions, multiple discovery disputes, multiple hearings, multiple motions, driving down the revenue of Hacienda.  *Id.*

### H.    The amount involved and results obtained.

The second supplemental report of Showalter's damages expert Wayne Coleman revealed that Claimants were seeking $11,250,000 in statutory damages alone for just four of the Hacienda masters in question, plus additional damages and attorney's fees and costs.  *See* Exhibit F, Expert Report at Schedule C.  Moreover, there was absolutely no evidence or basis for Claimants' claims.  The Court dismissed or denied all claims by Claimants, and after Showalter opposed Hacienda's counterclaim, the Court correctly ruled in Hacienda's favor.  Hacienda was able to prevail against the zealous and relentless attacks, and achieved successful results.

### I.    The experience, reputation and ability of counsel.

Hacienda's lead counsel has been president of the Houston Bar Association, Hispanic Bar Association, Texas Young Lawyers Association, and Dispute Resolution Center.  *See* Exhibit A (attached biography).  Further, Hacienda's lead counsel was appointed by the

Texas Supreme Court to the Rules Advisory Committee. *Id.* Hacienda's lead counsel has handled with success several copyright and music related cases.[35]

**J.     The undesirability of the case.**

Hacienda had no choice but to defend this case. Although Claimants purported to be unsophisticated, they were deposed and refused to back down on their frivolous claims. Even when faced with Hacienda's briefing informing Showalter of the law and facts that his claims were objectively unreasonable, and even after receiving copies of the Claimants' contracts, Showalter doubled down, and vexatiously prosecuted his objectively unreasonable claims in bad faith, unnecessarily multiplying the proceedings, and requiring the expenditure of time and resources of Hacienda and the Court.

**K.     The nature and length of the professional relationship with the client.**

Hacienda's lead counsel has represented Hacienda on various matters for more than 20 years.

**L.     Awards in similar cases.**

Hacienda's fee request is reasonable based on the results achieved, the work required to defend this case, and the experience of Hacienda's counsel. Based upon the hours spent on the case, the prevailing market rates for the lawyers and legal assistants and the Johnson factors, a reasonable and necessary fee for the services rendered on behalf of Defendants is at least $188,081.00 (for services rendered up to July 31, 2016). *See* Exhibit A. Further, if this case is appealed, it is necessary to award attorney's fees for representation at the appellate level. A fee in the amount of at least $70,000 is a reasonable and necessary amount for an appeal to the Fifth Circuit, $20,000 for a Writ of Certiorari to the U.S. Supreme Court, and an additional $55,000 if the Writ is granted. *See* Exhibit A.

## VIII.   FULL COSTS SHOULD BE AWARDED TO HACIENDA

43.     Pursuant to Rule 54, 28 U.S.C. § 1920, 17 U.S.C. § 505, 28 U.S.C. § 1927, and the Court's inherent power, a judge or clerk of any court of the United States may tax as costs the amount of $57,526.08 (incurred up to July 31, 2016). *See* Exhibits A, B, C, and D. Under Rule 54(d), costs are to be awarded to the prevailing party as a matter of course, unless the court

---

[35] Hacienda's counsel achieved summary judgment in *Armour v. Beyoncé Knowles*, No. H-05-2407, 2006 WL 2713787 (S.D. Tex. Sept. 21, 2006) *aff'd on other grounds*, 512 F.2d 147 (5th Cir. 2007). Hacienda's lead counsel has also successfully defended against other Showalter cases. *See Tempest Publishing Inc. v. Hacienda*, Civil Action No. 4:12-cv-00736 (S.D. Tex. 2012) (Doc. 118, directed verdict in Hacienda's favor; Doc. 126, summary judgment in Hacienda's favor); *Sanchez v. Hacienda Records*, No. H-11-3588, 2014 WL 4243742 (S.D. Tex. 2014) (Doc. 104, summary judgment in Hacienda's favor) (also reported at 42 F.Supp.3d 845 (S.D. Tex. 2014)); *Guzman I v. Hacienda Records*, No. 6:12-cv-00042 (S.D. Tex 2015) (Doc. 137, opinion after bench trial in Hacienda's favor; *Guzman II v. Hacienda Records*, No. 6:13-cv-00041 (S.D. Tex. 2015) (Doc. 104, Jury Verdict in Hacienda's favor; Doc. 107, Judgment in Hacienda's favor).

directs otherwise. *See Energy Mgmt. Corp. v. City of Shreveport*, 467 F.3d 471, 483 (5th Cir. 2006).  The supporting documentation to back up all taxable and nontaxable costs are included in the fee statements and cost receipts, including summaries of the same.  *See* Exhibit A (declaration of support for fees and costs, and biography); Exhibit B (GT attorneys' fees and costs invoiced through July 31, 2016 and summary); Exhibit C (summary of costs appearing on GT invoices, and receipts for all such outside vendor costs); Exhibit D (costs paid or to be paid directly by Hacienda and summary).  Some but not all of the GT invoices have been paid by Hacienda.  Defendants ask this Court to award costs in the total amount of $57,526.08 (incurred up to July 31, 2016) since these costs were necessarily incurred by Hacienda in this matter.

## IX.   PRAYER

For all reasons stated in this motion and supporting evidence, Hacienda asks the Court to award $188,081.00 in attorney fees for representation in the trial court (for work incurred up to July 31, 2016, to be supplemented for work thereafter), $70,000 for an appeal to the Fifth Circuit, $20,000 for a Writ of Certiorari to the US Supreme Court, and an additional $55,000 if the Writ is granted, along with court costs in the amount of $57,526.08 (incurred up to July 31, 2016, to be supplemented for costs thereafter), and pre-judgment interest and post-judgment interest at the maximum rate as allowed by law on all such amounts, and all equitable relief requested herein, and such other relief as the Hacienda parties are justly entitled, against all Claimants and their counsel David Showalter, individually, and his law firm, The Showalter Law Firm, all jointly and severally.

Dated:  August 11, 2016

Respectfully submitted,

By:    /Roland Garcia/
Attorney in Charge
Texas Bar No. 07645250

35

S.D. Admission No. 8420
Tara M. Williams
Texas Bar No. 24043999
S.D. Admission No. 840077
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3510
Facsimile:  (713) 375-3505

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served through the Court's ECF system to all counsel of record on August 11, 2016.

/s/ Roland Garcia
Roland Garcia

36

IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| HACIENDA RECORDS, L.P. | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | NO.:   2:14-cv-00019 |
| v. | § | |
| | § | |
| RUBEN RAMOS, et al. | § | |
| | § | |
| Defendants. | § | JURY DEMAND |

---

## HACIENDA'S APPLICATION FOR ATTORNEYS' FEES AND COSTS

---

## DECLARATION OF ROLAND GARCIA

1.     My name is Roland Garcia.  I am over the age of 21, of sound mind and competent to make this Declaration and have the legal capacity to make this Declaration.  I am an attorney licensed to practice law in the State of Texas.  I am a shareholder at the law firm of Greenberg Traurig, LLP.  I am one of the attorneys representing Hacienda Records et al. in this matter.  I have personal knowledge of the statements contained in this Declaration, which are true and correct.

2.     Attached to Hacienda's Application for Attorney's Fees and Costs and incorporated by reference, are Exhibits A through K, which are true and correct copies of the following they purport:

| | |
|---|---|
| Exhibit A: | Declaration of Roland Garcia in Support of Hacienda's Application for Attorney's Fees and Costs |
| Exhibit B: | Summary of Attorneys' Fees and Costs Invoiced by GT, Summary of Attorneys' Fees with Upward Adjustment Calculations, and actual Invoices |
| Exhibit C: | Summary of Costs advanced by GT, and Invoices and Back-up for Such Costs |
| Exhibit D: | Summary of Costs Paid/to be Paid by Hacienda, and Invoices and Back-up for Such Costs |
| Exhibit E: | Notice Emails to Showalter |
| Exhibit F: | Showalter's Second Supplemental Report of his Damages Expert Wayne C. Coleman |

37

Exhibit G:    David Showalter Deposition, dated 12-18-12
Exhibit H:    David Showalter Deposition, dated 6-24-13
Exhibit I:    Declaration of Rick Garcia
Exhibit J:    Showalter Law Firm Letter and Production, dated April 27, 2015
Exhibit K:    Video Excerpts from Rick Garcia Deposition, dated 10-22-14

I declare under penalty of perjury that the foregoing is true and correct.

                              /s/ Roland Garcia
                              Roland Garcia

The Declaration was executed on August 11, 2016.

38