IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| HACIENDA RECORDS, L.P. | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | NO.:   2:14-cv-00019 |
| v. | § | |
| | § | |
| RUBEN RAMOS, et al. | § | |
| | § | |
| Defendants. | § | JURY DEMAND |

---

## HACIENDA'S APPLICATION FOR ATTORNEYS' FEES AND COSTS

---

# TABLE OF CONTENTS

I.  OVERVIEW ................................................................................................ 1

II.  INTRODUCTION ........................................................................................ 3

III.  LEGAL STANDARD.................................................................................... 8

    A.  Recovery of "Full" Costs and Attorneys' Fees under 17 U.S.C. § 505 ................. 8

    B.  Attorneys' Fees and Costs against Opposing Counsel under 28 U.S.C. § 1927.............................................................................................................. 11

    C.  Attorneys' Fees, Costs and Equitable Relief against Opposing Counsel and Claimants under Rule 26 and the Court's Inherent Power ................................... 14

IV.  PROSECUTING MERITLESS AND OBJECTIVELY  UNREASONABLE CLAIMS AND BAD FAITH AND VEXATIOUS CONDUCT...................................... 15

    A.  Lack of valid U.S. Copyright Registrations and U.S. Copyright Deposits.......... 16

    B.  Reliance on invalid registrations as "prima facie" evidence of ownership. ......... 16

    C.  Asserting objectively unreasonable claims for statutory damages. ..................... 17

    D.  Refusing to voluntarily dismiss the objectively unreasonable claims for statutory damages despite notice from the Courts and counsel. ........................... 17

    E.  Lack of standing to pursue the claims.............................................................. 18

    F.  Meritless claims of ownership and infringement of Hacienda's masters. ........... 18

    G.  Meritless claims of infringement of the compositions....................................... 19

    H.  Meritless claims of misappropriation of name and likeness............................... 19

    I.  Pursuing a case based on fictitious and inflated damages. ................................. 19

    J.  Asserting frivolous DMCA claims when Judge Rosenthal previously ruled there was no copyright infringement of the song at issue by Hacienda................ 20

    K.  Failing to produce key requested documents, falsely representing that "All responsive documents have been produced" and then dropping the frivolous claims at the last minute to avoid dispositive rulings after Hacienda on its own located the important documents ..................................... 21

    L.  Engaging in relentless discovery abuse and wide scale vague and costly fishing expeditions in search of plausible claims. ................................................ 22

    M.  Misleading and false statements and representations to the Court and counsel ......................................................................................................... 23

    N.  Demanding unnecessary depositions. .............................................................. 24

    O.  Unprofessional conduct, including personal attacks and accusations, name-calling, threats, outrageous antics, and abusing and yelling at Hacienda witnesses. ....................................................................................... 24

    P.  Wrongful threats to sue Hacienda's counsel, and his mother and brother........... 24

    Q.  Showalter finally admits that Martinez and Salcedo never had any claims. ........ 25

V.  CLAIMANTS, SHOWALTER AND THE SHOWALTER LAW FIRM ARE ALL JOINTLY AND SEVERALLY LIABLE ................................................................. 25

VI.   THE HACIENDA PARTIES ARE ENTITLED TO AN AWARD OF FULL
      COSTS AND ATTORNEYS' FEES JOINTLY AND SEVERALLY  AGAINST
      CLAIMANTS AND SHOWALTER ................................................................. 27

VII.  THE HACIENDA PARTIES ARE ENTITLED TO EQUITABLE RELIEF
      JOINTLY AND SEVERALLY AGAINST CLAIMANTS AND SHOWALTER .......... 29

VIII. LODESTAR DETERMINATION.................................................................... 31

IX.   THE JOHNSON FACTORS............................................................................ 34

X.    FULL COSTS SHOULD BE AWARDED TO HACIENDA ........................................ 34

XI.   PRAYER.................................................................................................... 35

# TABLE OF AUTHORITIES

## Cases

*Abell v. Potomac Ins. Co. of Illinois*,
   946 F.2d 1160 (5th Cir. 1991) ........................................................................26

*ACLI Gov't Secs. v. Rhoades*,
   907 F. Supp. 66 (S.D.N.Y 1995) ....................................................................15

*Alameda Films SA de CV v. Authors Rights Restoration Corp. Inc.*,
   331 F.3d 472 (5th Cir. 2003) ...........................................................................8

*Allen v. U.S. Steel Corp.*,
   665 F.2d 689 (5th Cir. 1982) .........................................................................33

*Alphonso v. Pitney Bowes, Inc.*,
   356 F.Supp 2d 442, 2005 U.S. Dist. LEXIS 3531 (D.N.J. 2005) ...................12, 20

*Amlong & Amlong, P.A. v. Denny's, Inc.*,
   500 F.3d 1230 (11th Cir. 2007) .....................................................................13

*Andresen v. International Paper Co.*,
   2015 WL 3648972 (W.D. Cal. June 10, 2015) ................................................27

*Arclightz & Films Pvt. Ltd. v. Video Palace Inc.*,
   2003 WL 22434153 (S.D.N.Y. Oct. 23, 2003) ................................................29

*Baker v. Urban Outfitters, Inc.*,
   431 F.Supp.2d 351 (S.D.N.Y. 2006) ................................................10, 17, 28, 29

*Beardmore v. Jacobson*,
   No. 4:13-cv-361, 2016 WL 1253219 (S.D. Tex. Mar. 30, 2016) ......................8

*Blanchard v. Bergeron*,
   489 U.S. 87 (1989) .........................................................................................11

*Chambers v. Nasco, Inc.*,
   501 U.S. 32 (1991) ...............................................................................14, 15, 29

*Choyce v. S.F. Bay Area Ind. Media Center*,
   No. 13-cv-01842-JST, 2014 WL 5597274 (N.D. Cal. November 2, 2014)..........10

*Coffin v. Blessey Marine Services, Inc.*
   2015 WL 409693 (S.D. Tex. Jan. 29, 2015) ....................................................26

*Compaq Computer Corp. v. Ergonome Inc.*,
   387 F.3d 403 (5th Cir. 2004) ...........................................................................9

*Crown Awards, Inc. v. Disc. Trophy & Co.*,
   564 F. Supp. 2d 290 (S.D.N.Y. 2008) *aff'd*, 326 F. App'x 575 (2d Cir. 2009).........9

*Edwards v. Gen. Motors Corp.*,
   153 F.3d 242 (5th Cir. 1998) ......................................................................11, 12

*Elf-Man, LLC. v. Lamberson,*
    2015 WL 11112498 (E.D. Wash Jan. 1, 2015) ............................................................32

*Elof Hansson Paper & Board, Inc. v. Caldera,*
    2013 WL 12093241 (S.D. Florida June 4, 2013) ........................................................22

*Energy Mgmt. Corp. v. City of Shreveport,*
    467 F.3d 471 (5th Cir. 2006) ......................................................................................35

*Enmon v. Prospect Capital Corp.,*
    675 F3d 138 (2d Cir. 2012) ........................................................................................14

*Fharmacy Records v. Nassar,*
    *572 F.Supp.2d 869 (E.D. Mich. 2008)* ......................................................................27

*FM Indus., Inc. v. Citicorp Credit Services, Inc.,*
    614 F.3d 335 (7th Cir. 2010) .........................................................10, 18, 19, 23, 28

*Fogerty v. Fantasy, Inc.,*
    510 U.S. 517, 114 S.Ct. 1023 (1994) .......................................................................9, 10

*General Universal Systems, Inc. v. Lee,*
    379 F.3d 131 (5th Cir. 2004) ........................................................................................8

*Ginther v. Texas Commerce Bank, N.A.,*
    111 F.R.D. 615 (S.D. Tex. 1986) ................................................................................27

*In re Girardi,*
    611 F.3d 1027 (9th Cir. 2010) .....................................................................................12

*Gollomp v. Spitzer,*
    2007 WL 433361 (N.D.N.Y Feb. 5, 2007), *aff'd,* 568 F.3d 355 (2d Cir. 2009) ......................13

*Goodman v. Tatton Enter., Inc.,*
    2012 WL 12540024 (S.D. Fla. June 1, 2012) ............................................................12

*Greer v. Richardson Indep. Sch. Dist.,*
    471 F. App'x 336 (5th Cir. 2012) ...............................................................................12

*Gripe v. City of Enid, Okl.,*
    312 F.3d 1184 (10th Cir. 2002) ..................................................................................14

*Guzman v. Hacienda Records and Recording Studio, Inc.,*
    2015 WL 4920058 (S.D. Tex. August 18, 2015) ........................................................35

*Haeger v. Goodyear Tire & Rubber Co.,*
    813 F.3d 1233 (9th Cir. 2016) ....................................................................................14

*Hamilton v. Nakai,*
    453 F.2d 152 (9th Cir. 1972) ......................................................................................15

*Hensley v. Eckerhart,*
    461 U.S. 424, 103 S. Ct. 1933 (1983) ...................................................................10, 26

*Herzfeld & Stern v. Blair,*
    769 F.2d 645 (10th Cir. 1985) ....................................................................................12

iv

*Hill v. Estelle,*
   423 F. Supp. 690 (S.D. Tex.), *aff'd,* 543 F.2d 754 (5th Cir. 1976) .........................................30

*Ingram v. Oroudjian,*
   647 F.3d 925 (9th Cir. 2011) .....................................................................................................32

*Johnson v. C.I.R.,*
   289 F.3d 452 (7th Cir. 2002) .....................................................................................................13

*Johnson v. Georgia Highway Express, Inc.,*
   488 F.2d 714 (5th Cir. 1974) ...............................................................................................11, 34

*Jolly Grp., Ltd. v. Medline Indus., Inc.,*
   435 F.3d 717 (7th Cir. 2006) .....................................................................................................13

*Kirtsaeng v. John Wiley & Sons, Inc.,*
   136 S. Ct. 1979 (2016) .............................................................................................................9, 10

*Lewis v. Brown & Root, Inc.,*
   711 F.2d 1287 (1983), *modified,* 722 F.2d 209 (5th Cir.) .........................................................12

*Lewis v. New Hampshire Judicial Branch,*
   2010 WL 5058516 (D.N.H. Nov. 22, 2010) ..............................................................................30

*Lieb v. Topstone Indus., Inc.,*
   788 F.2d 151 (3rd Cir. 1986) .....................................................................................................10

*Link v. Wabash R.R. Co.,*
   370 U.S. 626 (1962) ...................................................................................................................14

*Lysiak v. C.I.R.,*
   816 F.2d 311 (7th Cir. 1987) .....................................................................................................15

*Maiteki v. Marten Transport Ltd.,*
   2016 WL 3878502, Civil Action No. 12-cv-2021-WJM-CBS (D. Colo.
   July 18, 2016).............................................................................................................................12

*Malautea v. Suzuki Motor Corp.,*
   987 F.2d 1536 (11th Cir. 1993) ...........................................................................................15, 16

*Malautea v. Suzuki Motor Corp.,*
   148 F.R.D. 362 (S.D. Georgia 1991), *aff'd,* 987 F.2d 1536 (11th Cir. 1993) .............23, 24, 26

*Mattel, Inc. v. MGA Entertainment,*
   705 F.3d 1108 (9th Cir. 2013) .....................................................................................................9

*McGaughey v. Twentieth Century Fox Film Corp.,*
   12 F.3d 62 (5th Cir.1994) .............................................................................................................8

*Meyers v. Textron Fin. Corp.,*
   609 F. App'x 775 (5th Cir. 2015)...............................................................................................27

*Mostly Memories, Inc. v. For Your Ease Only, Inc.,*
   526 F.3d 1093 (7th Cir.2008) .......................................................................................................9

*Newby v. Enron Corp.,*
   302 F.3d 295 (5th Cir. 2002) .....................................................................................................29

v

*Overnite Transp. Co. v. Chicago Ind. Tire Co.*,
   697 F.2d 789 (7th Cir. 1983) ......................................................................11

*Park Nat'l Bank v. Kaminetzky*,
   976 F.Supp. 571 (S.D. Tex. 1996) ..............................................................27

*Reed v. Great Lakes Cos., Inc.*,
   330 F.3d 931 (7th Cir. 2003) ......................................................................13

*Riddle & Assocs., P.C. v. Kelly*,
   414 F.3d 832 (7th Cir. 2005) ........................................................................8

*Rutherford v. Harris County*,
   197 F.3d 173 (5th Cir. 1999) ........................................................11, 31, 32

*Saizan v. Delta Concrete Products Co., Inc.*,
   448 F.3d 795 (5th Cir. 2006) ......................................................................10

*Sanchez, Guzman I, Guzman II, Armour v. Beyonce Knowles*,
   2006 WL 2713787 (S.D. Tex. Sept. 21, 2006) ...........................................34

*Sanchez v. Hacienda Records*,
   42 F.Supp.3d 845 (S.D. Tex. 2014) ............................................................21

*Schlaifer Nance & Co., Inc. v. Estate of Warhol*,
   194 F.3d 323 (2d Cir. 1999) .......................................................................14

*Schwarz v. Sec'y of Health & Human Servs.*,
   73 F.3d 895 (9th Cir. 1995) ........................................................................32

*Seekamp v. It's Huge, Inc.*,
   2014 WL 7272960 (N.D.N.Y. Dec. 18, 2014).............................................32

*Shank v. Eagle Techs., Inc.*,
   2013 WL 4442033 (D. Md. Aug. 15, 2013) ................................................13

*In re Silica Products Liab. Litig.*,
   398 F. Supp. 2d 563 (S.D. Tex. 2005) ........................................................20

*In re Snook*,
   168 F. App'x 577 (5th Cir. 2006) ...............................................................26

*Terrebonne, Ltd. of Calif. v. Murray*,
   1 F. Supp. 2d 1050 (E.D. Cal. 1998)...........................................................11

*Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*,
   38 F.3d 1414 (5th Cir. 1994) ......................................................................12

*Twentieth Century Music Corp. v. Aiken*,
   422 U.S. 151 (1995)......................................................................................9

*Vanderbilt Mortgage and Finance, Inc. v. Flores*,
   2011 WL 2160928 (S.D. Tex. 2011) ..........................................................26

*Western Heritage Ins. v. Robertson*,
   224 F.3d 764 (5th Cir. 2000) ........................................................12, 13, 28

vi

**Statutes**

17 U.S.C. § 412 ........................................................................................................17

17 U.S.C. § 412(2) ..............................................................................................20, 28

17 U.S.C. § 505 ........................................................................................8, 9, 27, 34, 35

17 U.S.C. § 1202(a) ..................................................................................................21

28 U.S.C. § 1651(a) ............................................................................................15, 30

28 U.S.C. § 1920 ......................................................................................................34

28 U.S.C. § 1927 ........................................................3, 11, 12, 13, 14, 15, 27, 28, 34

**Rules**

Fed. R. Civ .P. 26(g) ........................................................................15, 16, 17, 22, 34

Fed. R. Civ. P. 54 ....................................................................................................34

Fed. R. Civ. P. 54(d) ................................................................................................35

Fed. R. Civ. P. 70 ....................................................................................................15

Hacienda Records and Recording Studio, Inc., Hacienda Records, L.P., Latin America Entertainment, LLC, Rick Garcia and Roland Garcia, Sr. (deceased) (collectively "Hacienda" or the "Hacienda parties") hereby seek all incurred attorneys' fees as adjusted by the Court, all taxable and non-taxable costs, and all equitable relief as allowed by law, against Ruben Ramos, Hugo Cesar Guerrero, and Arturo Rene Serrata (collectively "Performer Claimants"), and against Arnold Martinez, Individually and on Behalf of Gilbert Martinez Heirs, Leticia "Letty" Salcedo, Individually and on Behalf of the Estate of Jesus "Jesse" Salcedo, Adan Sanchez, and Ruben Guanajuato (collectively "Songwriter Claimants") (the Performer Claimants and Songwriter Claimants collectively the "Claimants"), and against their counsel David W. Showalter and the Showalter Law Firm (collectively "Showalter"), in this Court's discretion and pursuant to 17 U.S.C. § 505, 28 U.S.C. § 1927, Rule 26(g), the All Writs Act, and this Court's inherent power, and would respectfully show this Court the following:

## I.     OVERVIEW

1.     Hacienda's complete victory in this lengthy multi-party case – Claimants' *voluntary* nonsuit of nearly all their claims just before this Court could rule on Hacienda's dispositive motions, and then dismissal and summary judgment in Hacienda's favor on the few claims that remained – was preceded by: (1) Claimants' pre-suit demand letters and original claims asserting infringement of *hundreds* of works, the claims to half of which Claimants abruptly abandoned acknowledging Hacienda had never used the works, *see* Doc. 143-1, then their subsequent assertion of infringement on *434* works late in this case requiring even more discovery on the new claims, which infringement claims to the 434 works were all nonsuited at the last minute (except as to approximately two songs); (2) Claimants' failure to obtain, at *any* time before or during the litigation, the actual U.S. Copyright Deposits to the works, which would have revealed Hacienda either had not used the works without permission or that others

1

actually owned the works; (3) Claimants' assertion of *multiple* claims with no factual basis whatsoever, such as fraud, misappropriation of name and likeness, and racketeering, as Claimants freely admitted during discovery in the case; (4) Claimants' continued prosecution of baseless claims even after they were proved baseless; (5) Claimants' knowingly inflated "willful infringement" $150,000 statutory damages claim per work, despite their reliance on certain invalid registrations which on their face proved no statutory damages were available; (6) Claimants' claim of ownership to Hacienda's masters despite the clear language in Claimants' contracts to the contrary, which masters Claimants freely admitted Hacienda owned, consistent with industry practice; (7) Claimants' submission of false declarations which the Court properly struck as shams; and (8) rampant abuse of the litigation process, blatant violations of the discovery rules, and shocking unprofessional conduct, in this case and other Showalter cases, showing a clear pattern of unchecked abuse and bad faith, among other wrongful acts.

2.      Claimants' counsel, David Showalter, is behind these abuses, which are hallmarks of his approach not just in this case but in the multiple other cases he has prosecuted against Hacienda and other small Tejano record labels. Showalter's abuse reflects a flagrant disregard of the law and the boundaries of legitimate litigation conduct, in an attempt to scare parties into quick settlements, punish them for refusing to concede, or else drive their businesses into bankruptcy, where Showalter – who runs his own competing music company – can scoop up the record label's music portfolio at a bargain-basement price, as he did with Discos MM.

3.      Hacienda has fought back, at considerable cost to it, both financially and personally. *See* Exhibit I, ¶¶ 7-10. Through Hacienda's efforts, Claimants' lawsuit was exposed as being brought in bad faith and as utterly groundless from inception. Claimants are complicit in this abuse of the litigation process: among other things, they testified in direct contradiction to

2

their own pleadings and signed declarations that directly contradicted deposition testimony they gave mere weeks (and in some cases, only *days*) later. *See* Doc. 126 at 2-4. Moreover, during their depositions, some Claimants even seemed unaware they were *prosecuting* rather than defending a lawsuit, yet they did nothing to dismiss their claims. *Id*. at 17-18.

4.     Under the Copyright Act, the most critical factor in determining an award of fees is the degree of success obtained. Here, Hacienda achieved complete success. Additionally, another important goal of the Copyright Act's fee-shifting provision is deterrence of frivolous cases, and the primary goal of 28 U.S.C. § 1927 is deterrence. Here, Claimants' claims were brought in bad faith, and once it was demonstrated that their claims were meritless, their continued pursuit of the claims vexatiously multiplied these proceedings. Hacienda respectfully requests an award of all attorney's fees and costs, and equitable relief to deter further meritless claims as threatened by Showalter, against Claimants and Showalter, jointly and severally.

## II.     **INTRODUCTION**

5.     Claimants originally brought multiple claims related to the alleged copyright infringement of approximately 238 works. *See* Doc. 41. From the beginning, Hacienda was baffled by the Claimants' lawsuit, which appeared to be brought to punish Hacienda for not settling the Guzman cases and in retaliation for Hacienda's legitimate request for declaratory relief. After significant work by Hacienda and its counsel in an attempt to determine the basis of Claimants' vague copyright claims, including requesting copies of the U.S. Copyright Deposits, and after significant discovery, depositions, and court hearings, Claimants abruptly **abandoned** their claims as to approximately 144 works, admitting that Hacienda had not used such works. *See* Doc. 143-1. But instead of narrowing the claims, they multiplied these proceedings again, by bringing equally vague infringement claims pertaining to **434 works**. *See* Doc. 141-1. Hacienda then had to spend more time and resources investigating and defending such claims. But, at the

eleventh hour, and just prior to the Court's imminent rulings on Hacienda's then-pending dispositive motions, they nonsuited with prejudice **all** fraud, RICO and copyright infringement claims by all Claimants, leaving only **two** alleged copyright infringement claims of Guanajuato. *See* Doc. 161 (later Guanajuato's claims were dismissed, *see* Doc. 169).

6.     Moreover, despite the Court's Orders dismissing and denying Claimants' claims of ownership to Hacienda's master sound recordings, *see* Docs. 166, 169, 176, and knowing their contracts and testimony make clear that Hacienda owns its masters, *see* Doc. 183 at 7-12, Showalter continued to multiply these proceedings by opposing Hacienda's request for declaratory relief. Hacienda then had to seek leave of Court to file a summary judgment motion, *see* Doc. 178, which the Court granted, *see* Doc. 179, and then had to prepare and file a summary judgment motion. *See* Doc. 183. To no surprise, Showalter's response to the motion **did not even address** the Claimants' undisputed testimony and undisputed contracts. *See* Doc. 187, 190.

7.     Showalter's demand letters and the Claimants' lawsuit are textbook examples of, at best, an attorney's failure to conduct an adequate pre-filing investigation to determine if there is a plausible claim, or, at worst, a blatant disregard for the facts and the law and bad faith conduct to pursue frivolous and inflated claims for an improper purpose. Here, even the face of the Performer Claimants' invalid registrations revealed they had no plausible claims for "willful infringement." *See* Doc. 64 at 29-30 (Ramos); Doc. 65 at 23-24 (Guerrero); Doc. 66 at 26-27 (Serrata). Despite Showalter's admitted knowledge of the law on statutory damages, other Courts' adverse rulings against his similar frivolous claims, Hacienda's notice to Showalter to nonsuit the frivolous claims, and the Claimants' contracts and testimony that confirmed Hacienda owned its masters, Claimants and Showalter continued to prosecute these objectively unreasonable claims. *Infra* § IV.C-D. Moreover, the Songwriter Claimants' purported copyright

4

registrations made clear they did not have timely copyright registrations showing them as owners of the compositions recorded and released by Hacienda which would constitute a plausible claim. *See* Doc. 67 at 17-19; Doc. 130 at 4-10; Doc. 160 at 1-6. Rather, either the compositions were owned by others or Hacienda had not used certain works. *Id.* Moreover, even after dispositive rulings by the Court, Showalter multiplied these proceedings by filing frivolous motions to revisit the Court's rulings, *see, e.g.,* Docs. 180, 196, 199, 202, only rehashing his meritless claims. *Id.* All such actions required Hacienda to respond. *See*, *e.g.,* Docs. 181, 204.

8.      But there can never be justification for Showalter to make false representations to the Court or to counsel. But that is just what Showalter did on numerous occasions in this case. *See infra* at Section IV.M. He also failed to produce requested documents, including key documents like the "assignments" that proved most of the Claimants lacked standing to pursue the claims, as well as ancient contracts which proved that Claimant Martinez had no basis for his claim, withholding these documents while affirmatively representing that "All responsive documents have been produced." *See infra* at Section IV.K. This representation was false. Hacienda discovered the non-produced documents attached to court filings in Showalter's other case against Freddie Records, proving Showalter was aware of such documents, intentionally withheld the requested documents, and misrepresented his production in this case. *Id.* The wrongful conduct was intended to prejudice Hacienda and mislead the Court.

9.      Although Showalter's abuse and harassment of the Garcia family has continued unabated for many years, the abuse and bad faith hit a new high in this case with Showalter's outrageous claims of "mail fraud," "wire fraud," "money laundering," "racketeering," "interstate transportation of stolen property," and other criminal conduct supposedly by Hacienda and the Garcia family without a shred of evidence ever produced to support these claims. *See* Doc. 141 at

21-34. Hacienda was shocked that Ramos, Serrata and the other Claimants would make such charges, and indeed, when they were deposed, **they gave no testimony supporting their allegations of criminal conduct**, and in their Answer to Interrogatory No. 7 **they confirmed they had no recollection of false statements by Hacienda (*i.e.,* no fraud).** *See* Exhibit I; Docs. 64-4 (Ramos); 65-4 (Guerrero); 66-4 (Serrata); 67-4 (Songwriters).

10.     These public charges were fabricated by Showalter without any basis in fact or law, and were intended to humiliate and embarrass Roland Garcia, Sr. and Rick Garcia, to tarnish their good names and reputation in the Tejano music industry, and to punish them for not settling the frivolous *Guzman* cases. *See* Exhibit I, ¶ 8. In particular, Roland Garcia, Sr. was in ill physical health during this lawsuit with kidney disease and other ailments. *Id.*, ¶ 9. These false charges were too much for Mr. Garcia, Sr. to bear, contributed to his ill health and fatigue, greatly saddened him, caused him to regret ever getting into the Tejano music business, wasted his resources, consumed his final years with anguish, and simply wore him out physically and emotionally. *Id.* He passed away recently in despair, stuck in his home to avoid the intended public humiliation and shame he felt by these public charges against him, and having to spend his final years fighting endless and expensive battles of frivolous cases. *Id.* Showalter's unprofessional conduct toward Mr. Garcia, Sr., in particular, was especially brutal in the *Guzman II* case when he so abused Mr. Garcia, Sr. on the witness stand that Judge Gregg Costa actually ordered Showalter to cease his examination, "sit down," and behave professionally. *Id.*

11.     The entire Hacienda staff, and in particular Rick Garcia, who has been deposed five times now by Showalter in his various cases against Hacienda, were impeded by Showalter's aggressive lawsuit from their normal work of recording bands, selling music, and operating their business. *See* Exhibit I, ¶ 7. They have spent countless hours attempting to

6

comply with Showalter's excessive discovery demands, document requests, multiple depositions, multiple discovery disputes, multiple hearings, and multiple motions, with the intended consequence of driving down the revenue of Hacienda. *Id.*, ¶ 6.

12.     Showalter's bad faith conduct in this case is similar to his other copyright cases against other small record labels—sue them on broad and vague claims of infringement without ordering any U.S. Copyright Deposits to support his claims, make broad discovery demands for depositions and documents in this case and his other Hacienda cases, and then use the lack of such voluminous documents and discovery to argue that his clients are not able "to file an amended complaint and respond to Hacienda's discovery requests" and "to fully articulate their claims and causes of action" (when in reality Showalter is required by law to have a plausible claim before filing his lawsuit), *see* Doc. 46 at 4-5, make the discovery responses and defense of the claims so expensive that the record label's resources are exhausted, make unreasonable settlement demands, and then either extract an unfair settlement or drive the small record label into bankruptcy whereby Showalter (a competitor in the music business) can then obtain the record label's music out of the bankruptcy proceeding, to add to his own music catalogue. *See, e.g.,* Exhibit G (Showalter deposition, 12-18-12, at 121:9-124:11; 132:13-133:2) (lawsuits against Max Silva and Freddie Records); Exhibit H (Showalter deposition, 6-24-13, at 37:19-40:21) (Showalter drives Silva into bankruptcy, then Silva settles and Showalter's music company acquires the rights in Silva's Discos MM sound recordings).

13.     Claimants and Showalter stonewalled Hacienda's efforts to conduct discovery on Claimants' claims, refused to answer or supplement discovery requests, failed to produce any U.S. Copyright Office Deposits (and did not even bother to order any deposits from the Copyright Office), prolonged the prosecution of meritless, harassing and objectively

unreasonable claims, and vexatiously multiplied these proceedings unnecessarily to increase the costs of this case, to drain the resources of Hacienda, to harass and embarrass the Garcia family, to punish Hacienda for refusing to pay an unfair settlement amount, and to waste the judicial resources of this Court. *Infra* § IV.B, C, D, K, L. These bad faith and abusive tactics are not isolated violations by Showalter. Showalter has previously employed the same gamesmanship and wrongful tactics. *Infra* § IV.A, C, I, J, L, O. Although an award of full recovery of fees and costs against Showalter and Claimants will not even begin to make the Garcia family whole for their losses and suffering at the hands of Showalter and these Claimants, hopefully the Court's award will deter them from further vexatious abuse of the courts and bad faith conduct.

14.    Sanctions are necessary in order "to deter [Claimants' and Showalter's] frivolous litigation and abusive practices" and "ensure that those who create unnecessary costs also bear them." *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005). Hacienda hereby seeks an award of full fees and costs, and equitable relief as allowed by law.

## III.    LEGAL STANDARD

### A.    Recovery of "Full" Costs and Attorneys' Fees under 17 U.S.C. § 505

15.    Hacienda is entitled to a recovery of "full costs" under the 17 U.S.C. § 505. Moreover, § 505 also provides that a district court "may also award a reasonable attorney's fee to the prevailing party as part of the costs." *Id.* The decision to impose attorneys' fees and full costs lies in the sound discretion of the district court, reviewable only for an abuse of discretion. *General Universal Systems, Inc. v. Lee*, 379 F.3d 131, 147 (5th Cir. 2004) (citing *McGaughey v. Twentieth Century Fox Film Corp.,* 12 F.3d 62, 65 (5th Cir.1994)). "Although attorney's fees are awarded in the trial court's discretion, [in copyright cases] they are the rule rather than the exception and should be awarded routinely." *Beardmore v. Jacobson*, No. 4:13-cv-361, 2016 WL 1253219, *1 (S.D. Tex. Mar. 30, 2016) (citing *Alameda Films SA de CV v. Authors Rights*

*Restoration Corp. Inc.*, 331 F.3d 472, 483 (5th Cir. 2003)); *see also Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 411-412 (5th Cir. 2004). Defendants who defeat a copyright infringement action are entitled to a strong presumption in favor of a grant of fees. *Mostly Memories, Inc. v. For Your Ease Only, Inc.,* 526 F.3d 1093, 1099 (7th Cir.2008). Further, non-copyright counterclaims are objectively unreasonable where such counterclaims were baseless. *See, e.g., Crown Awards, Inc. v. Disc. Trophy & Co.*, 564 F. Supp. 2d 290, 296 (S.D.N.Y. 2008) *aff'd*, 326 F. App'x 575 (2d Cir. 2009). Moreover, "a court may order fee-shifting because of a party's litigation misconduct, whatever the reasonableness of his claims or defenses." *Kirtsaeng v. John Wiley & Sons, Inc.*,136 S. Ct. 1979, 1988-89 (2016).

16.     To determine whether attorney's fees should be awarded under the Copyright Act, the court engages in a three step process. First, the court determines whether the party is a prevailing party and entitled to recover attorney's fees and costs. *See* 17 U.S.C. § 505. The Supreme Court has held that prevailing plaintiffs and defendants must be treated alike under § 505. *See Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 114 S.Ct. 1023 (1994). The fee-shifting provision of § 505 is intended to promote the purpose of the Copyright Act—"enriching the general public through access to creative works." *Fogerty*, 510 U.S. at 527, 114 S.Ct. at 1023. "When defendants advance a variety of meritorious copyright defenses," they further the Copyright Act's ultimate aim "to stimulate artistic creativity for the general public good." *Mattel, Inc. v. MGA Entertainment*, 705 F.3d 1108, 1111 (9th Cir. 2013) (citing *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1995)).

17.     Thus, a fee award here for the full recovery of defense costs is consistent with the purpose of the Copyright Act: "a person defending against a patently meritless copyright claim has every incentive to keep fighting, no matter that attorney's fees in a protracted suit might be

as or more costly than a settlement" and a "copyright holder with no reasonable infringement claim has good reason not to bring suit in the first instance (knowing he cannot force a settlement and will have to proceed to judgment)." *Kirtsaeng*, 136 S.Ct. at 1986-1987. *See FM Indus., Inc. v. Citicorp Credit Services, Inc.*, 614 F.3d 335, 340 (7th Cir. 2010) ("A defendant who prevails in a copyright litigation vindicates the public's interest in the use of intellectual property, but without an award of fees the prevailing defendant has only losses to show for the litigation.").

18.     In exercising the court's discretion to award attorney's fees and costs, "courts consider a number of equitable factors, including the non-prevailing party's frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), together with the need in particular circumstances to advance considerations of compensation and deterrence." *See Baker v. Urban Outfitters, Inc.*, 431 F.Supp.2d 351, 357 (S.D.N.Y. 2006) (citing *Fogerty*, 510 U.S. at 535 n.19, 114 S.Ct. 1023, among other cases). Of these factors, "objective unreasonableness" is given substantial weight. *Id.[1]*  The Supreme Court has held that "the most critical factor is the degree of success obtained". *Hensley v. Eckerhart*, 461 U.S. 424, 436-37, 103 S. Ct. 1933, 1941 (1983). "Awarding fees will serve the usual purposes of a fee-shifting statute by deterring future baseless claims and compensating Defendants for the costs of defending such claims." *Choyce v. S.F. Bay Area Ind. Media Center,* No. 13-cv-01842-JST, 2014 WL 5597274, at *5 (N.D. Cal. November 2, 2014).

19.     Second, after determining a party is entitled to attorney's fees, the court must determine the amount of attorney's fees to be awarded. *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006). To determine the amount, the court calculates the

---

[1] Importantly, a court is not required to find that a lawsuit was frivolous or that the plaintiff acted in bad faith in order to award attorney's fees to a prevailing defendant. *See, e.g., Fogerty*, 510 U.S. at 527, 532-533; *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 155 (3rd Cir. 1986) ("We think that limiting assessments to those cases where bad faith is shown unduly narrows the discretion granted to the district judges.").

"lodestar" by multiplying the number of hours reasonably spent on the case by a reasonable hourly rate. *Rutherford v. Harris County*, 197 F.3d 173, 192 (5th Cir. 1999). Third, after determining the "lodestar," the court may adjust that number upward or downward based on a consideration of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *overruled on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989). The twelve Johnson factors are: (1) the time and labor required to represent the client; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717-719.

**B.** **Attorneys' Fees and Costs against Opposing Counsel under 28 U.S.C. § 1927**

20.     Attorney's fees may also be awarded against opposing counsel and his law firm under 28 U.S.C. § 1927, which states in part that "[a]ny attorney...who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *See Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998) (bad faith, improper motive, or reckless disregard of the duty owed to the court is sufficient for sanctions under §1927). "[T]he term 'vexatious' has been defined as 'lacking justification and intended to harass.' " *Terrebonne, Ltd. of Calif. v. Murray*, 1 F. Supp. 2d 1050, 1055 (E.D. Cal. 1998) (quoting *Overnite Transp. Co. v. Chicago Ind. Tire Co.*, 697 F.2d 789, 795 (7th Cir. 1983)). The District Court has discretion to award attorneys' fees pursuant to § 1927, reviewable only for an

abuse of discretion. *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1417 (5th Cir. 1994). The Court of Appeals does not substitute its judgment for that of the District Court. *Western Heritage Ins. v. Robertson*, 224 F.3d 764 (5th Cir. 2000).

21.     Courts have determined that various acts would constitute reckless or bad faith conduct under § 1927. *See, e.g.*, *Greer v. Richardson Indep. Sch. Dist.*, 471 F. App'x 336, 340 (5th Cir. 2012) (misleading the court, raising frivolous arguments or mischaracterizing facts); *In re Girardi*, 611 F.3d 1027, 1061-65 (9th Cir. 2010) ("misrepresenting facts," "making frivolous filings," and violating "§ 1927's duty to correct or withdraw ligation positions after it becomes obvious that they are meritless"); *Alphonso v. Pitney Bowes, Inc.*, 356 F.Supp.2d 442, 453-454 (D.N.J. 2005) (pursuing an "artificially inflated" claim, and then "relentless pursuit of that claim after the evidence demonstrated, at most, a comparatively trivial amount of loss shows bad faith"); *Goodman v. Tatton Enter., Inc*., 2012 WL 12540024, at *31 (S.D. Fla. June 1, 2012) ("Mr. Weitz's repeated instances of making misrepresentations to this Court vexatiously multiplied the proceedings and further demonstrate Mr. Weitz's objective and subjective bad faith."); *Herzfeld & Stern v. Blair*, 769 F.2d 645, 647 (10th Cir. 1985) (false citations to the record are "misleading to the court" and sanctions are "not only proper, they are also necessary"); *Maiteki v. Marten Transport Ltd.*, 2016 WL 3878502, Civil Action No. 12-cv-2021-WJM-CBS, at *4 (D. Colo. July 18, 2016) ("there is a difference between putting evidence in the best possible light and blatantly misstating the evidence").

22.     Courts have awarded § 1927 sanctions against attorneys who have continued to litigate a case where there was no viable claim. *See, e.g., Edwards v. Gen. Motors Corp.,* 153 F.3d 242, 246 (5th Cir. 1998)(affirming sanctions award where "Crampton deliberately kept her meritless case alive for no purpose other than to force GM to settle or to defend it."); *Lewis v.*

12

*Brown & Root, Inc.*, 711 F.2d 1287, 1288, 1292 (1983) (affirming award of attorney's fees under § 1927 for case that "should never have been filed"), *modified*, 722 F.2d 209 (5th Cir.); *Western Heritage Ins. v. Robertson*, 224 F.3d 764, 2000 WL 992178 (5th Cir. 2000) ("Of course, continuing to prosecute a meritless action is sanctionable."); *Gollomp v. Spitzer*, 2007 WL 433361, at *8 (N.D.N.Y Feb. 5, 2007), *aff'd,* 568 F.3d 355 (2d Cir. 2009) ("Moreover, § 1927 imposes a continuing obligation to connect or withdraw claims, defenses, and litigation positions after it becomes obvious that they are without merit."); *Shank v. Eagle Techs., Inc.*, 2013 WL 4442033, at *2 (D. Md. Aug. 15, 2013) (bad faith may be found "when it becomes evident that a claim lacks merit but an attorney persists in litigating the claim nonetheless.").

23.    The attorney's conduct is judged objectively; subjective bad faith is not required to justify § 1927 sanctions. *See Amlong & Amlong, P.A. v. Denny's*, *Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007) ("bad faith turns not on the attorney's subjective intent, but on the attorney's objective conduct"). Further, the court can "properly take into account all of [the attorney's] conduct in this case and calibrate sanctions accordingly." *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006). Indeed, the Court may consider conduct outside of the courtroom and in other proceedings to help determine the attorneys' knowledge and intention. *Western Heritage Ins. v. Robertson*, 224 F.3d 764, 2000 WL 992178 (5th Cir. 2000) ("They claim they are being sanctioned for conduct outside the federal court proceedings. Appellants point to the district court's findings of fact, which detail their conduct in state court. These findings establish, however, that: their claim was meritless; they should have realized it; they did everything they possibly could to maintain it; and it should have been dismissed voluntarily."). *See also Reed v. Great Lakes Cos., Inc.*, 330 F.3d 931, 936 (7th Cir. 2003) (court "can take into account a history of frivolous litigation"); *Johnson v. C.I.R.*, 289 F.3d 452, 456-57 (7th Cir.

2002) (the court "was not required to ignore [the attorney's] bad conduct in other cases; indeed it would have been remiss not to consider it").

## C.   Attorneys' Fees, Costs and Equitable Relief against Opposing Counsel and Claimants under Rule 26 and the Court's Inherent Power

24.     A district court has the inherent power to manage its own proceedings and to control the conduct of litigants who appear before it through orders or the issuance of monetary sanctions for bad-faith, vexatious, wanton or oppressive behavior. *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 46-50 (1991). These inherent powers "are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). The "only meaningful difference" between awards under § 1927 and awards under a court's inherent power is that § 1927 only permits awards against attorneys "while an award made under the court's inherent power may be made against an attorney, a party, or both." *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (internal citations omitted). *See Gripe v. City of Enid, Okl.*, 312 F.3d 1184, 1188-89 (10th Cir. 2002) (affirming sanctions based on attorney's misconduct and noting that "[a] litigant is bound by the actions of its attorney, and the relative innocence of the litigant ... does not constitute grounds for relief"); *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1246 (9th Cir. 2016) (sanctioning client because client was "deemed bound by the acts of [its lawyers] and is considered to have notice of all facts, notice of which can be charged upon the attorney").

25.     In the context of sanctions under 28 U.S.C. § 1927 or a court's inherent power, a court may find "bad faith" when an attorney's actions so lack in merit that they "must have been undertaken for some improper purpose such as delay." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (internal citations omitted). *See Enmon v. Prospect*

14

*Capital Corp.*, 675 F3d 138, 148 (2d Cir. 2012) (affirming the award of attorney's fees against the law firm, where the attorney was a founding and named partner in the firm, and the actions of the attorney "were indistinguishable from those of [the] firm"); *ACLI Gov't Secs. v. Rhoades*, 907 F. Supp. 66, 71 (S.D.N.Y 1995) (imposing sanctions under § 1927 and the court's inherent power against the law firm for the attorney's bad faith litigation tactics).

26.     The Court has the power "to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 43. *See Lysiak v. C.I.R.*, 816 F.2d 311, 313 (7th Cir. 1987) ("A court faced with a litigant engaged in a pattern of frivolous litigation has the authority to implement a remedy that may include restrictions on that litigant's access to the court."). The Court also has the power to issue all orders or writs to enforce its judgment. *See* 28 U.S.C. § 1651(a) (All Writs Act); F.R.C.P. 70; *Hamilton v. Nakai*, 453 F.2d 152, 157 (9th Cir. 1972) (federal jurisdiction extends to orders to enforce its own decrees by injunctions or writs of assistance in order to avoid the relitigation of previously decided issues between the parties).

27.     Additionally, an attorney may not falsely certify a discovery response or withhold requested documents. *See* F.R.C.P. 26(g). Imposition of sanctions for a violation of this rule is mandatory. *See Malautea v. Suzuki Motor Corp.*, 987 F.2d 1536, 1545 (11th Cir. 1993) (sanctions for such discovery abuse against the attorneys and parties were mandatory under Rule 26(g), and sanctions also were affirmed under § 1927 and the court's inherent power).

## IV.     PROSECUTING MERITLESS AND OBJECTIVELY UNREASONABLE CLAIMS AND BAD FAITH AND VEXATIOUS CONDUCT

28.     The dilatory tactics and abuse by Claimants and Showalter are too many to mention, and thus only a few are listed here. Such wrongful acts reveal Showalter's inadequate pre-filing investigation and lack of due diligence to determine a plausible claim, or a callous disregard of the law and facts and bad faith conduct to pursue frivolous and inflated claims for an

15

improper purpose. Evidence in support of this motion is contained in Exhibits A-L, and Hacienda further asks the Court to take judicial notice of the record in this case and the referenced cases and all such conduct, including but not limited to:

**A.**     **Lack of valid U.S. Copyright Registrations and U.S. Copyright Deposits.**

29.     Showalter knows well from this case and his four other Hacienda cases that Claimants must have valid U.S. Copyright Registrations and valid U.S. Copyright Deposits to pursue their claims. *See* Exhibit A, ¶ 14. Despite Hacienda's multiple demands for Showalter to produce his U.S. Copyright Deposits, **he never did**. *Id*. In fact, at no time in this case, nor in several of his other Hacienda cases, did Showalter produce even one U.S. Copyright Office Deposit. *Id*. Showalter would not even inform Hacienda whether he even requested copies of any deposits from the U.S. Copyright Office, necessitating Hacienda to spend time and resources to serve discovery requests asking the same (Showalter finally admitted he had not even ordered any deposits from the U.S. Copyright Office). *Id*. The actual deposits are critical to determine what work is actually registered, who actually owns the work, and whether Hacienda used the work without the owner's permission. *Id*. Hacienda was forced to order certain deposits from the U.S. Copyright Office, which confirmed Hacienda had not used, or Showalter's clients did not own, certain works in question. *Id*. The actual deposit also proved the Showalter produced deposit **was bogus**, and intended to prejudice Hacienda and mislead the Court to obtain an unjust result. *Id*. (also identifying his pattern of producing bogus deposits in other cases). Showalter's dilatory tactics vexatiously multiplied these proceedings and prolonged the case. *Id*.; Rule 26(g).

**B.**     **Reliance on invalid registrations as "prima facie" evidence of ownership.**

30.     Although he knows better from his other cases, Showalter improperly asserted a presumption of validity as to copyright registrations obtained outside the statutory period when the presumption would apply. *See* Exhibit A, ¶ 15. Here, several of the Claimants' invalid

16

registrations were obtained many years after Hacienda's first publication and release of its masters. *Id*. Showalter's arguments were objectively unreasonable, and multiplied these proceedings intending to prolong the frivolous infringement claims. *Id*.

**C.    Asserting objectively unreasonable claims for statutory damages.**

31.    Here, Claimants and Showalter pursued the maximum $150,000 statutory damages for "willful infringement" per work (ultimately 434 works) against all Hacienda parties. *See* Exhibit A, ¶ 16. In fact, as revealed by the evidence, Claimants either did not own or Hacienda had not used such works. Moreover, the face of many of the alleged registrations revealed that statutory damages were not available, among other reasons. *Id.* Showalter's $15 million damage claim, *see* Doc. 52-2 at 7, and his damage calculation of $11,250,000, *see* Exhibit F (expert report at page 5 and Schedule 3), were completely bogus and overly inflated. *Id*; Exhibit A, ¶ 17. The pursuit of such claims was objectively unreasonable and multiplied these proceedings. *See* 17 U.S.C. § 412; *Baker v. Urban Outfitters, Inc.,* 431 F.Supp.2d 351, 363 (S.D.N.Y. 2006) (S.D.N.Y. 2006) ("In view of the clear statutory language precluding statutory damages in cases like the instant one and in view of Weingrad's prior experience with and knowledge of this point of law, it was unreasonable, vexatious, and clearly in bad faith for Weingrad to include a claim for statutory damages in the Complaint in this case.").

**D.    Refusing to voluntarily dismiss the objectively unreasonable claims for statutory damages despite notice from the Courts and counsel.**

32.    Showalter knows from the briefing in this case and rulings in his other cases that he had no valid claims for statutory damages for most, if not all of his claims. *See* Exhibit A, ¶ 17 (rulings of Judge Costa, Judge Gilmore, and Judge Miller, to name a few). Hacienda's counsel even gave notice to Showalter that his statutory damage claims were contrary to the Copyright Act and asked Showalter to immediately nonsuit with prejudice such infringement

claims. *See* Exhibit A, ¶ 19; Exhibit E (page 4 of email contains the request, page 1 of email contains Showalter's refusal). *See also* Doc. 114 at 9:7-12, 10:5-6 (Initial Conference: Showalter was warned of the law on statutory damages, and Showalter admits "we know what the law is on statutory damages."). Yet, Showalter refused to drop his objectively unreasonable claims, prolonged the prosecution of such meritless claims, vexatiously multiplying these proceedings. *See* Exhibit A, ¶ 19. Showalter's last minute abandonment of the majority of the bogus statutory damage claims does not insulate him and Claimants from sanctions from such conduct. *FM Indus., Inc.,* 614 F.3d at 338-339 (prosecuting frivolous and inflated statutory damages claims was "playing games" and "evidence FM industries and its lawyers were engaged in an abuse of the legal process" despite a last minute abandonment of the bogus claims).

E.     **Lack of standing to pursue the claims.**

33.     The Claimants lacked standing to pursue most of their claims, yet prosecuted their claims anyway, hiding the requested assignments from Hacienda which revealed their lack of standing. *See* Exhibit A, ¶ 20. Hacienda on its own located the assignments, and even notified Showalter of the "standing" issue, yet Showalter prosecuted the claims anyway. *Id*. Such wrongful actions violated the discovery rules, and vexatiously multiplied these proceedings by Hacienda having to brief and obtain the Court's ruling to dismiss such claims. *Id*.

F.     **Meritless claims of ownership and infringement of Hacienda's masters.**

34.     Showalter also abused the judicial process and multiplied these proceedings by obtaining invalid registrations to Hacienda's masters, failing to inform Hacienda he did so (until this lawsuit), prosecuting frivolous declaratory judgment claims for ownership of Hacienda's masters, and by opposing Hacienda's motion for summary judgment on its counterclaims, despite Showalter knowing the Claimants' contracts and their sworn testimony made clear that Hacienda owned its masters. *See* Exhibit A, ¶ 21. Showalter's bad faith conduct multiplied these

18

proceedings by requiring Hacienda to seek leave to file a summary judgment motion, Doc. 178 (granted by the Court, *see* Doc. 179), and to reply to Showalter's response. *See* Doc. 190.

**G.**     **Meritless claims of infringement of the compositions.**

35.     The vague and global claims of infringement to 434 works were completely frivolous. *See* Exhibit A, ¶ 22. The produced copyright registrations revealed the Songwriter Claimants either did not own the compositions, or Claimants testified Hacienda had permission to use the compositions, or Hacienda had not used the compositions. *See* Doc. 67 at 17-19; Doc. 130 at 4-10; Doc. 143; Doc. 160 at 2-6. *See also* Doc. 126 at 10-11 (false allegations that Hacienda used the work *Oiga Senora*). At one point, Showalter completely abandoned claims to 144 compositions, acknowledging Hacienda had not used these works. *See* Doc. 143-1. Showalter's frivolous allegations multiplied these proceedings, requiring the depositions of the Songwriter Claimants, and requiring summary judgment motions and replies. *See* Exhibit A, ¶ 22. It is no surprise that at the eleventh hour, after Hacienda, its counsel, and the Court were required to spend significant time and resources on such frivolous claims, that Showalter abandoned them, but the damage to Hacienda had been done. *See* Doc. 161 (claims of Martinez, Salcedo and Sanchez completely abandoned).

**H.**     **Meritless claims of misappropriation of name and likeness.**

36.     The Performer Claimants admitted that Hacienda had permission to use their names and likeness, and either posed for the photos or provided the images to Hacienda. *See* Exhibit A, ¶ 23. Of course, their agreements also make clear that Hacienda had permission to use their name and likeness. *Id.* But Showalter still prosecuted these frivolous claims anyway, and vexatiously multiplied these proceedings by requiring Hacienda to depose the Claimants on such claims and file summary judgment motions, and responses, on these claims. *Id.*

**I.**     **Pursuing a case based on fictitious and inflated damages.**

19

37.     Sanctions may be awarded where an attorney prosecutes a case based on inflated damages. *Alphonso v. Pitney Bowes, Inc.*, 356 F.Supp.2d 442, 453-454 (D.N.J. 2005) (pursuing an "artificially inflated" claim, and then "relentless pursuit of that claim after the evidence demonstrated, at most, a comparatively trivial amount of loss shows bad faith"); *In re Silica Products Liab. Litig.,* 398 F. Supp. 2d 563, 674-675 (S.D. Tex. 2005) ("continued prosecution" of meritless claims multiplied the proceedings vexatiously for an improper purpose "to inflate the number of Plaintiffs and claims in order to overwhelm the Defendants . . . in hopes of extracting mass nuisance-value settlements"). Here, Claimants **never** had any damages, as determined by the Court, and Claimants **never** produced evidence of any damages. But more egregious was that Showalter aggressively pursued a meritless case for statutory damages alleging "more than one hundred instances of conduct indicative of willful infringements which could result in the award of statutory damages of over $15,000,000 plus fees and costs." *See* Doc. 52-2 at 7. But as Showalter knows from the briefing in this case and from his other cases, under the law there can be only one statutory damage award per infringed registration. *See, e.g.,* Doc. 64 at 31. Yet Showalter was seeking **multiple** willful infringement awards **per single copyright**. *See id.*; Exhibit A, § 24. Further, Showalter was seeking statutory damages for invalid registrations, and even if they would have been valid registrations, and they were not, he obtained the invalid registrations after first publication of the Hacienda masters, and consequently statutory damages and attorney's fees **are not available**. *See* 17 U.S.C. § 412(2); Doc. 64 at 29-30; Exhibit A, ¶ 25. The claim for statutory damages was bogus, objectively unreasonable, and intentionally inflated to harass, to prolong this case and to attempt to extract an unfair settlement. *See* Exhibit A, ¶ 25.

**J.      Asserting frivolous DMCA claims when Judge Rosenthal previously ruled there was no copyright infringement of the song at issue by Hacienda.**

20

38.     Claimant Sanchez's DMCA claims were objectively unreasonable because Judge Rosenthal previously ruled there was no infringement by Hacienda as to the song *La Prieta Casada*. *See Sanchez v. Hacienda Records*, 42 F.Supp.3d 845 (S.D. Tex. 2014). Under Section 1202(a) of the DMCA, there can be no violation unless there was intent to induce *an infringement*. *See* 17 U.S.C. § 1202(a). Showalter was fully aware of this law, as he participated in the *Sanchez* and *Guzman* cases in which this law was addressed. *See* Exhibit A, ¶ 26. The pursuit of this claim was objectively unreasonable and intended to harass, delay the resolution of this case, and multiply these proceedings to drive up Hacienda's defense costs. *Id.* The frivolous Sanchez claims were abandoned at the last minute to avoid the Court's dispositive rulings. *Id*.

**K.     Failing to produce key requested documents, falsely representing that "All responsive documents have been produced" and then dropping the frivolous claims at the last minute to avoid dispositive rulings after Hacienda on its own located the important documents**

39.     A consistent Showalter tactic is failure to produce requested documents, and either raising frivolous objections such as "irrelevant and outside the scope of this lawsuit," *see, e.g.,* Doc. 80-1 (RFP No. 7), or falsely representing that "All responsive documents have been produced," *see, e.g.,* Doc. 160-1 (RFP No. 7, 28), when in fact key dispositive documents were hidden and not produced. Such abusive practices are too many to mention all, but two important examples are: (1) failure initially to produce the requested Assignments (requested in RFP 7, 28, proving lack of standing, transfer of rights); and (2) failure to produce the Martinez/Marfre contracts (requested in RFP 7, proving lack of standing, Marfre owning the songs). *See* Exhibit A, ¶¶ 20, 28. These abusive tactics multiplied these proceedings, requiring multiple motions to compel and multiple hearings. *Id.*, ¶ 27. Even after the Court ordered supplementation of discovery responses, and even after Showalter's agreement to do so to avoid more hearings, he consistently failed to do so. *Id*. Such abuse violated Rule 26, and was for an improper purpose

21

"such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." *See* Rule 26(g). *See also* Exhibit A, ¶¶ 20, 27, 28. The holding in *Elof Hansson Paper & Board* is instructive, as that Court found sanctionable conduct for giving false testimony, withholding information, and failing to produce documents. *Elof Hansson Paper & Board*, Inc. v. Caldera 2013 WL 12093241, *11 (S.D. Florida June 4, 2013). This of course, and more, occurred here by Claimants and Showalter. *See* Section IV.K (failing to provide information and documents); IV.L (making false declarations and Interrogatory answers); IV.A (producing bogus deposits). The frivolous Martinez claims, among others, were dropped at the last minute, *see* Doc. 161, but only after Hacienda had to expend significant resources to locate on its own the withheld documents and file a supplement to its summary judgment motion, exposing Showalter's scheme. *See* Doc. 160 at 3-6; Exhibit A, ¶ 20.

**L.** **Engaging in relentless discovery abuse and wide scale vague and costly fishing expeditions in search of plausible claims.**

40.    Another regular Showalter tactic is to make broad, vague and unsupported claims of copyright infringement to many works or products, then make broad discovery demands to Hacienda in an obvious fishing expedition, and then refuse to amend his vague complaint to state a plausible claim and answer Hacienda's discovery requests which were attempting to determine a plausible claim (such as valid U.S. Copyright Registrations, valid U.S. Copyright Deposits, and transfers/assignments, to name just a few), until Showalter received from Hacienda information, products, contracts, licenses "related to the works." *See* Doc. 46-5 at 2. Showalter even demanded production and use of every document, deposition, and expert report in all four Hacienda cases, in an obvious attempt to harass and make the defense cost prohibitive to Hacienda. *See* Doc. 46. The discovery abuse permeated all aspects of the orderly defense of this case, such as failing to meet Court deadlines and discovery deadlines, failing to produce

22

Claimants for deposition, refusing to honor agreements on new deadlines for production of documents (resulting in sandbagging Hacienda's counsel at depositions), serving false Interrogatory answers, back-dating Interrogatory answers, serving unverified Interrogatory answers, filing sham declarations, raising frivolous objections, providing misleading discovery responses, withholding critical documents, and instructing witnesses to not answer valid questions in their depositions. *See* Exhibit A, ¶¶ 27-29. Such discovery abuse prolonged Claimants' frivolous case, obstructed Hacienda's defense, vexatiously multiplied the proceedings, and required Hacienda, its counsel, and the Court to spend significant time and resources to address motions to compel, attend hearings, and finally to dispose of all such frivolous claims. *Id.* at ¶¶ 27-31. *See FM Indus., Inc.,* 614 F.3d at 330 (extensive and harassing discovery demands were "an abuse of the legal process," and "was extortionate discovery, the kind a litigant undertakes when it hopes to be paid to go away and spare opponents the expense of vindicating their rights"); *Malautea v. Suzuki Motor Corp.*, 148 F.R.D. 362, 372-374 (S.D. Ga. 1991)(awarding recovery of all attorney's fees and costs for discovery abuse, where providing partial discovery answers with objections), *aff'd*, 987 F.2d 1536 (11th Cir. 1993).

## M.     Misleading and false statements and representations to the Court and counsel

41.     Making false statements to the Court and misstating evidence is not only unprofessional, but sanctionable. Showalter did so on multiple occasions, all intended to mislead the Court, to prejudice Hacienda, and to obtain an unfair ruling. Examples include representations that "Hacienda never pays royalties to anyone," *see* Doc. 96 at 28, ¶ 54, when Showalter knows from the evidence in this case and the rulings in his other Hacienda cases that this representation is blatantly false. *See* Exhibit A, ¶ 32. The false statement was made in support of the frivolous fraud claims. *Id.* Showalter also made false statements to the Court concerning Claimant Sanchez's publishing company, to prejudice Hacienda and to support

Sanchez's frivolous DMCA claim. *Id*. Showalter also made false statements regarding the trial setting and the preparation of the joint pre-trail order, the Interrogatories served by Hacienda, and the declaratory relief sought by Hacienda. *See* Exhibit A, ¶¶ 33-35.

**N.   Demanding unnecessary depositions.**

42.   Showalter demanded depositions of the mother and brother of Hacienda's counsel. *See* Exhibit A, ¶ 36. Such depositions were unnecessary. *Id*. Showalter then unilaterally noticed the deposition of the brother of Hacienda's counsel, giving less than one day's notice and seeking 15 categories of documents in the subpoena *duces tecum*. *Id*. Hacienda was forced to file a motion to quash. *Id*. Showalter did not stop there, he further multiplied the proceedings by filing a motion to compel this deposition, which required a response and a hearing, and the court correctly denied the motion due to the admission of Showalter's co-counsel that they already had the information they were seeking. *Id*. Such abusive conduct multiplied these proceedings, and was for an improper purpose to harass, prolong the case, and drive up the defense costs. *Id*.

**O.   Unprofessional conduct, including personal attacks and accusations, name-calling, threats, outrageous antics, and abusing and yelling at Hacienda witnesses.**

43.   The unprofessional conduct by Showalter in his Hacienda cases is rampant, unchecked, and willful, to the point of being a regular trial tactic. *See* Exhibit A, ¶ 37. His abusive conduct included, but is not limited to, yelling at witnesses, abusing witnesses on the witness stand, personal attacks and accusations, name-calling, threats against Hacienda's counsel, threats against Hacienda, and outrageous antics in depositions. *Id*.

**P.   Wrongful threats to sue Hacienda's counsel, and his mother and brother.**

44.   Showalter wrongly threatened to sue Hacienda's counsel and his mother and brother. *See* Exhibit A, ¶ 38. Such conduct was for an improper purpose and intended to harass the Garcia family and to punish Hacienda for not settling the *Guzman* cases and this case. *Id*.

**Q.**   **Showalter finally admits that Martinez and Salcedo never had any claims.**

45.   Claimants Arnold Martinez and Leticia Salcedo, as with the other Claimants, aggressively pursued their claims of infringement, RICO, and breach of fiduciary duty. *See* Doc. 41. But at the eleventh hour Showalter admitted that all along "they had absolutely no dealings or relationship with Hacienda." *See* Doc. 187 at 4 n.5. This was a shocking admission. Their admittedly frivolous claims vexatiously multiplied these proceedings and forced Hacienda to spend substantial time and resources to conduct discovery on their claims, take their depositions, file dispositive motions on their claims (which Showalter opposed, requiring responses), and address their claims at multiple hearings. See Exhibit A, ¶ 39.

**V.**   **CLAIMANTS, SHOWALTER AND THE SHOWALTER LAW FIRM ARE ALL JOINTLY AND SEVERALLY LIABLE**

46.   Claimants jointly prosecuted global claims against all Hacienda parties. *See* Exhibit A. *See, e.g.*, Doc. 141 at 7-11 (same global infringement claims), at 20-21 (same global declaratory relief claims), at 21-34 (same global criminal conduct), at 35-36 (same global misappropriation of name and likeness claims), at 37-39 (same global fraud claims), at 39-40 (same global breach of fiduciary duty claims), at 40-41 (same global breach of contract and breach of the duty of good faith and fair dealing claims), at 41-43 (same category of damages sought globally). The Claimants also were counter defendants, filed a joint answer, and raised the same affirmative defenses, such as "unclean hands." *See* Doc. 42. Thus, the claims and defenses of all Claimants were inextricably intertwined. *Id.;* Exhibit A, ¶ 40.

47.   Moreover, Claimants were jointly represented by the same counsel, conducted joint depositions, filed joint discovery motions, *see, e.g.,* Doc 45, jointly answered discovery requests, *see* Doc. 80-1, 160-1, and jointly designated the same experts. See Docs. 52, 53. Each Claimant was also a fact witness to the whole of the case, including the vague alleged wrongful

"practices" of Hacienda. *See* Exhibit A, ¶ 40. The depositions of Claimants and written discovery on Claimants were all part of the same defense by Hacienda, and involved the same allegations of industry practices, practices on usage of copyrights, record keeping, licensing, royalty payment practices, and manufacturing of units, among other generic allegations by Claimants of Hacienda's practices. *Id. See, e.g.*, Doc. 141 at 9.

48.     Thus, there is no need for Hacienda to segregate out its fees and costs herein. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."); *In re Snook*, 168 F. App'x 577, 580 (5th Cir. 2006)("In Texas, where two or more claims are advanced and only some of the claims entitle a litigant to attorney fees, Texas courts have awarded fees for all claims that are too intertwined to differentiate effectively those that allow fees and those that do not"); *Abell v. Potomac Ins. Co. of Illinois*, 946 F.2d 1160, 1169 (5th Cir. 1991)("Where time spent on unsuccessful issues is difficult to segregate, no reduction of fees is required."); *Vanderbilt Mortgage and Finance, Inc. v. Flores*, 2011 WL 2160928, at *1 (S.D. Tex. 2011) (no need to segregate fees for intertwined dismissed claims); *Coffin v. Blessey Marine Services, Inc.* 2015 WL 409693, *3 (S.D. Tex. Jan. 29, 2015) ("District courts in the Fifth Circuit and other circuits have consistently recognized that joint and several liability is the default rule for awarding taxable costs. . . . Furthermore, the burden is generally on the non-prevailing party to prove that joint and several liability is not appropriate in a particular case.").

49.     Multiple courts have awarded joint and several sanctions awards against the parties, their attorney, and the attorneys' law firm. *See, e.g., Meyers v. Textron Fin. Corp.,* 609 F. App'x 775, 779 (5th Cir. 2015); *Ginther v. Texas Commerce Bank, N.A.*, 111 F.R.D. 615, 621 (S.D. Tex. 1986)("Such sanctions are imposed jointly and severally against Ginther, Adriana Newsom, Benton Musslewhite and the Law Offices of Benton Musslewhite, Inc."); *Fharmacy Records v. Nassar*, 572 F.Supp.2d 869, 881 (E.D. Mich. 2008) ("the court has little trouble concluding that the plaintiffs and their counsel should be held jointly and severally liable for the defendants' costs and fees. An award is appropriate under both 17 U.S.C. § 505 and 28 U.S.C. § 1927"); *Park Nat'l Bank v. Kaminetzky,* 976 F.Supp. 571, 586 (S.D. Tex. 1996) (two plaintiffs and the attorney were jointly and severally liable as case was not viable and was prosecuted without an adequate analysis by the attorney); *Andresen v. International Paper Co.*, 2015 WL 3648972, at *6 (W.D. Cal. June 10, 2015) (three plaintiffs bringing different claims against employer, lost their claims, and were jointly and severally liable for all costs).[2]

## VI.     THE HACIENDA PARTIES ARE ENTITLED TO AN AWARD OF FULL COSTS AND ATTORNEYS' FEES JOINTLY AND SEVERALLY AGAINST CLAIMANTS AND SHOWALTER

50.     Here, the Court has entered Final Judgment in Hacienda's favor. *See* Doc. No. 206. The Hacienda parties have obtained complete relief, and all Claimants' claims have been dismissed or denied. *Id.* Moreover, the Court has already found that the Hacienda parties are the prevailing parties. *See* Doc. No. 205 at 2. By any measure, considering the record and the evidence, under the correct standards of *Kirtsaeng*, *Fogerty, Hensley*, § 505, § 1927, Rule 26, and the Court's inherent power, Hacienda is entitled to recover its full costs and

---

[2] To the extent the Court believes any segregation of fees and costs is necessary, Hacienda is willing to attempt to do so and respectfully requests leave to make a supplemental submission making such an apportionment.  Alternatively, the Court may examine the fee statements and invoices which describe in detail the time, work and costs spent in this matter.  *See* Exhibits B, C, D.

attorneys' fees from all Claimants, David Showalter, and the Showalter Law Firm, all jointly and severally.

51.     Neither Hacienda nor the Court should have to bear the cost and diversion of time and resources demanded by the Claimants' and Showalter's frivolous and objectively unreasonable claims, bad faith motions and filings, and vexatious and abusive conduct. The presence of improper motivation and successful results achieved weighs heavily in favor of an award of full attorney's fees and costs to Hacienda. From the beginning, it was clear that this case was contrived without regard to the actual facts and the controlling law. For example, the allegation of "willful infringement" seeking $150,000 per work under the Copyright Act was frivolous and objectively unreasonable, and Showalter knew so from his prior cases and Hacienda's notice to him in this case. *Supra*, Section IV.C, IV.D, IV.F. *See* 17 U.S.C. § 412(2); *Baker*, 431 F.Supp.2d at 363 (S.D.N.Y. 2006) ("In view of the clear statutory language precluding statutory damages in cases like the instant one and in view of Weingrad's prior experience with and knowledge of this point of law, it was unreasonable, vexatious, and clearly in bad faith for Weingrad to include a claim for statutory damages in the Complaint"). Hacienda should recover **all** of its attorneys' fees and costs. *See Western Heritage Ins. v. Robertson*, 224 F.3d 764, at *5 (5th Cir. 2000) ("Counsel's failure to reasonably investigate plaintiff's claim or material produced in discovery, which would have revealed the claim's lack of merit, is bad faith litigation," and thus, "the entire litigation was unwarranted, unreasonable, vexatious, and in bad faith," resulting in defendant's recovery of all fees under § 1927); *FM Indus., Inc.,* 614 F.3d at 340 ("Defendants in this suit incurred substantial expense to beat back a series of preposterous claims . . . and are entitled to be made whole.").

52.     Further, there is a need for an award of fees and costs to advance deterrence for

28

additional frivolous claims by Claimants and Showalter against Hacienda and the Garcia family. This is the fifth lawsuit prosecuted by Showalter against Hacienda, employing the same dilatory tactics, and pursuing frivolous claims of statutory damages, in the hopes of forcing an unfair settlement. Further, during the *Guzman I* trial, Showalter told the associate of Hacienda's counsel to expect more lawsuits. True to his threats, Showalter sent his demand letters thereafter, and filed these claims, this time adding "criminal" and "racketeering" charges, without any shred of evidence, in an obvious attempt to humiliate, embarrass and punish the Garcia family for not settling the *Guzman* cases. Indeed, "[f]ailing to award attorneys' fees to defendants in such situations would invite others to bring similarly unreasonable actions without fear of any consequences." *Baker*, 431 F.Supp.2d at 339 (S.D.N.Y. 2006); *See Arclightz & Films Pvt. Ltd. v. Video Palace Inc.*, 2003 WL 22434153, at *3 (S.D.N.Y. Oct. 23, 2003).

## VII.  THE HACIENDA PARTIES ARE ENTITLED TO EQUITABLE RELIEF JOINTLY AND SEVERALLY AGAINST CLAIMANTS AND SHOWALTER

53.     Because of Claimants' and Showalter's repeated bad faith and vexatious conduct, pattern of refusal to cooperate in discovery, demands for broad and unnecessary discovery, filing of objectively unreasonable claims, applying for and obtaining invalid copyright registrations of Hacienda's masters (applications drafted and submitted by Showalter), failing to inform Hacienda when it has done so despite Hacienda's repeated requests for information, failure to conduct an adequate pre-suit investigation, and Showalter's threats and his follow-through on such threats to file more lawsuits against Hacienda, the Court also has inherent power to order equitable relief to protect the Court's judgment, and to give adequate relief to Hacienda and the Garcia family. *See Chambers*, 501 U.S. at 43 (the Court has the power "to fashion an appropriate sanction for conduct which abuses the judicial process"); *Newby v. Enron Corp.*, 302 F.3d 295, 303 (5th Cir. 2002)("the district court had authority under the All Writs Act to enjoin Fleming [a

law firm] from filing future state court actions without its permission and did not abuse its discretion in doing so."); *Hill v. Estelle*, 423 F. Supp. 690, 695 (S.D. Tex.) ("It also is within this Court's inherent power under 28 U.S.C. § 1651(a) to enjoin litigants who are using the courts as a stage for their vendetta of harassment or abuse."), *aff'd*, 543 F.2d 754 (5th Cir. 1976); *Lewis v. New Hampshire Judicial Branch*, 2010 WL 5058516, at *4 (D.N.H. Nov. 22, 2010) (court enjoins further litigation without first requesting leave of court accompanied by affidavit certifying compliance with court's conditions).

54. Accordingly, Hacienda asks the Court to enjoin Claimants, David Showalter and the Showalter Law Firm (and any lawyers working in collaboration or affiliation with Showalter, and Showalter to inform such lawyers of this Order), from filing further lawsuits against Hacienda (including known owners or employees), without first obtaining leave of this Court to do so, and such request for leave to include a sworn statement and evidence of the following: (1) a certified copy of the U.S. Copyright Registration and U.S. Copyright Deposit to the work in question; (2) a copy of the Hacienda product containing the Hacienda sound recording in question; (3) a comparison of the certified copies of the U.S. Copyright Registration and U.S. Copyright Deposit of the work in question with the Hacienda sound recording, and confirmation Hacienda has in fact used the exact work registered and deposited with the U.S. Copyright Office; (4) identification of any other U.S. Copyright Registrations to a work by the same title, but which name a different author, owner or claimant, and informing the Court of such other registrations, including the registration number, title, contents, author, owner, claimant, year of completion, date of first publication, and date of registration; (5) whether Hacienda had published or released its sound recording in question prior to three months of the date of the registration of the work in question (such determination may be made by reference to the date on

the Copyright Notice affixed to the Hacienda product in question); (6) certification that a copy of any such motion for leave, including all evidence and exhibits (including color copies and audio files), was contemporaneously hand-delivered to Hacienda's undersigned lead counsel; and (7) both the request for leave and, if granted, the complaint, are to be filed in this Court only, to avoid rehashing all prior briefing and discovery and to promote efficiency and to preserve resources of the parties and the courts. *See* Proposed Order (suggested language).

55.    An adequate pre-suit investigation and filing of only plausible claims is required by law anyway. Thus, such equitable relief is not unduly burdensome nor will it prohibit the bringing of legitimate claims. Further, as evidenced herein, Showalter's practice of producing and relying on invalid registrations and bogus copyright deposits for his infringement lawsuits now requires the use and production of certified copies of U.S. Copyright Deposits for an adequate pre-suit investigation and for fair notice of any plausible claims.

56.    Moreover, Hacienda requests that the Court confirm that its Order in Doc. No. 205 is ongoing and also applies to any newly requested or newly obtained copyright registrations to any Hacienda sound recordings. *See* Proposed Order (suggested language).

## VIII.   <u>LODESTAR DETERMINATION</u>

57.    With Hacienda being the prevailing party, the Court must determine the "lodestar" amount by multiplying the number of hours reasonably spent on the case by a reasonable hourly rate. *See Rutherford v. Harris County*, 197 F.3d 173, 192 (5th Cir. 1999). As discussed herein, the number of hours spent by Hacienda's counsel was reasonable. *See* Exhibit A, ¶¶ 4-8. Further, considering the success achieved, the required work, the frivolous and objectively unreasonable claims by Showalter's clients, his refusal to cease prosecution of such claims after it was clear they were meritless, the resultant multiplication of proceedings herein, the hourly fee engagement, the reduced hourly rate agreed at the outset by Hacienda's counsel

31

due to the original nominal amount in controversy (unreasonably inflated later by Showalter), and the nominal sales of units in question, the hourly rate of $350 for partners and of counsel, and $300 for associates invoiced to Hacienda was reasonable. *Id.* However, the prevailing market rate is considerably higher. *Id.* The Court has discretion to increase the invoiced hourly rate under the circumstances and Hacienda requests the Court to do so. *See, e.g., Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) ("This determination is not made by reference to rates actually charged the prevailing party. Rather, the Court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."); *Elf-Man, LLC. v. Lamberson*, 2015 WL 11112498, at *6 (E.D. Wash Jan. 1, 2015) (although attorney charged his client only $260 per hour, his regular rate was $460, thus the court applied $400 per hour as a reasonable rate); *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (court can rely on its own knowledge and experience when determining a reasonable hourly rate for the services performed). In fact, Showalter's opinion in this case is that $500 per hour is reasonable for his partner time and that $225 to $350 per hour is reasonable for associates' time in this matter. *See* Doc. 52 at 4. Hacienda requests a fee award of $500 per hour as a reasonable hourly rate for shareholder and of counsel work in this matter (which is still a significantly reduced rate from the regular rate of the attorneys and as is customary, and considering significant amounts of lawyer time were not invoiced to Hacienda), and requests the reduced rate of $300 per hour for associates. *See* Exhibit A, ¶ 5. Such reduced rates would be more than reasonable for an attorney's fee award to Hacienda and less than the customary rates. *Id. See Seekamp v. It's Huge, Inc.*, 2014 WL 7272960, at *1 (N.D.N.Y. Dec. 18, 2014) (finding $400-500 per hour for partners and $250-380 per hour for associates reasonable). Accordingly, Hacienda seeks reasonable attorney's fees in the lodestar amount of $239,016.00

(for services rendered up to August 31, 2016), and additional amounts as stated herein for appellate work. *See* Exhibit A, ¶ 5.[3] Hacienda provides as support for this application the declaration of attorney Roland Garcia, attached as Exhibit A and asks the Court to take judicial notice of the filings and conduct of Claimants and Showalter in this case and the other Showalter cases, as discussed herein and in Exhibits A through L. Hacienda also refers the Court to the time records of Hacienda's counsel. *See* Exhibit B.

58.     Mr. Garcia proves that the time records in Exhibit B were made at or near the time that the work was performed. *See* Exhibits A, ¶ 4 and B. Further, all time recorded by the legal assistants is for substantive legal work performed under the direction and supervision of an attorney. Exhibit A, ¶ 5. Paralegal fees can be recovered "to the extent that the paralegal performs work traditionally done by an attorney." *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982). Lastly, Mr. Garcia confirms that he has exercised billing judgment and has written off or not invoiced at least 20% of all time to more than account for work such as time on Hacienda's motion to dismiss (first denied in part, Minute Entry 8-7-14, but later all claims dismissed or denied), motion to realign (denied only as premature and without prejudice to re-urging, Doc. 152), and motion to strike motion for attorney's fees (Hacienda did not include time for any duplicative work in filing this motion, and did not invoice over 80 hours of partner level work in preparing this motion and the prior motion). *See* Exhibit A, ¶ 5. The total number of reasonable hours rendered on behalf of Defendants and the prevailing reduced market rates are included in the attached invoices. The reduced hourly rates are significantly lower than the prevailing market rates for each time keeper based upon that person's experience, skill, knowledge and contributions to the case. *Id.*

---

[3] The reasonable discounted fees invoiced to Hacienda without consideration of the customary rate for shareholder and of counsel time is $177,058.50 (for services rendered up to August 31, 2016). *See* Exhibit A, B (applying a $350 hourly discounted rate for shareholders and of counsel).

## IX.     THE JOHNSON FACTORS

59.     Once the Court determines a "lodestar" amount, the Court may adjust the "lodestar" number upward or downward based the previously discussed *Johnson* factors. *See Johnson*, 488 F.2d at 717-719. Hacienda believes an upward adjustment of 2 times the lodestar, or an upward adjustment in the Court's discretion, is warranted based on the evidence and the record, including the Claimants' relentless prosecution of a minimum of $15,000,000 in claims, the complete success achieved by Hacienda, the significant time incurred by Hacienda and its counsel in defending the Claimants' claims and asserting Hacienda's counterclaim, Hacienda's counsel not invoicing at least 20% of the work actually performed and not invoicing over 80 hours of partner level work in preparing this motion (both motions), the complexity and novelty in obtaining a judgment invalidating Claimants' copyright registrations and compelling Claimants and Showalter to cancel their invalid registrations, the skill requisite to perform these services and obtain these successful results, the preclusion of other employment due to the broad discovery demands by Showalter in this case and the numerous depositions and discovery disputes and Showalter's relentless prosecution of this case, the customary fee based on the prevailing market rates is substantially higher than the amounts invoiced by Hacienda's counsel, the experience, reputation and ability of Hacienda's counsel who has handled with success other copyright cases (such as *Sanchez, Guzman I, Guzman II, Armour v. Beyonce Knowles*, 2006 WL 2713787 (S.D. Tex. Sept. 21, 2006) *aff'd on other grounds*, 512 F.2d 147 (5th Cir. 2007), and others), and the fact that Hacienda's lead counsel has represented Hacienda on various matters for more than 20 years. *See* Exhibit A, ¶ 9.

## X.     FULL COSTS SHOULD BE AWARDED TO HACIENDA

60.     Pursuant to Rule 54, 28 U.S.C. § 1920, 17 U.S.C. § 505, 28 U.S.C. § 1927, Rule 26(g), the All Writs Act, and the Court's inherent power, a judge or clerk of any court may tax as

Case 2:14-cv-00019   Document 222   Filed on 09/06/16 in TXSD   Page 43 of 46

costs the amount of $58,026.60 (incurred up to August 31, 2016). *See* Exhibits A, B, C, D; *Guzman v. Hacienda Records and Recording Studio, Inc.*, 2015 WL 4920058 at *5 (S.D. Tex. August 18, 2015) (recovery of "full costs" under § 505 includes taxable and non-taxable costs). Under Rule 54(d), costs are to be awarded to the prevailing party as a matter of course, unless the court directs otherwise. *See Energy Mgmt. Corp. v. City of Shreveport*, 467 F.3d 471, 483 (5th Cir. 2006). The supporting documentation for all costs is included in the fee statements and cost receipts, including summaries. *See* Exhibits A, B, C, D. Defendants ask this Court to award costs of $58,026.60 (incurred up to August 31, 2016) since these costs were necessarily incurred by Hacienda in this matter. *See* Exhibit A, ¶ 4.

## XI.    PRAYER

For all the reasons stated herein, Hacienda asks the Court to award a lodestar amount of $239,016.00 in attorney fees for representation in the trial court (for work incurred up to August 31, 2016, to be supplemented for work thereafter), $70,000 for an appeal to the Fifth Circuit, $20,000 for a Writ of Certiorari to the U.S. Supreme Court, and an additional $55,000 if the Writ is granted, and a 2 times upward adjustment or any upward adjustment of the lodestar amount in the Court's discretion, along with court costs in the amount of $58,026.60 (incurred up to August 31, 2016, to be supplemented for costs thereafter), and pre-judgment interest and post-judgment interest at the maximum rate as allowed by law on all such amounts, and all equitable relief requested herein, and such other relief as the Hacienda parties are justly entitled, against all Claimants, David W. Showalter, and The Showalter Law Firm, all jointly and severally.

Dated: September 6, 2016

Respectfully submitted,

By: /Roland Garcia/
Attorney in Charge
Texas Bar No. 07645250

35

HOU 408539296v11

S.D. Admission No. 8420
Tara M. Williams
Texas Bar No. 24043999
S.D. Admission No. 840077
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3510
Facsimile: (713) 375-3505

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served through the Court's ECF system to all counsel of record on September 6, 2016.

     /s/ Roland Garcia

Roland Garcia

*HOU 408539296v11*

IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| HACIENDA RECORDS, L.P. | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | NO.:   2:14-cv-00019 |
| v. | § | |
| | § | |
| RUBEN RAMOS, et al. | § | |
| | § | |
| Defendants. | § | JURY DEMAND |

---

## HACIENDA'S APPLICATION FOR ATTORNEYS' FEES AND COSTS

---

## DECLARATION OF ROLAND GARCIA

1.      My name is Roland Garcia. I am over the age of 21, of sound mind and competent to make this Declaration and have the legal capacity to make this Declaration. I am an attorney licensed to practice law in the State of Texas. I am a shareholder at the law firm of Greenberg Traurig, LLP. I am one of the attorneys representing Hacienda Records et al. in this matter. I have personal knowledge of the statements contained in this Declaration, which are true and correct.

2.      Attached to Hacienda's Application for Attorney's Fees and Costs and incorporated by reference, are Exhibits A through L, which are true and correct copies of the following they purport:

| | |
|---|---|
| Exhibit A: | Declaration of Roland Garcia in Support of Hacienda's Application for Attorney's Fees and Costs |
| Exhibit B: | Summary of Attorneys' Fees and Costs Invoiced by GT, Summary of Attorneys' Fees with Upward Adjustment Calculations, and actual Invoices |
| Exhibit C: | Summary of Costs advanced by GT, and Invoices and Back-up for Such Costs |
| Exhibit D: | Summary of Costs Paid/to be Paid by Hacienda, and Invoices and Back-up for Such Costs |
| Exhibit E: | Notice Emails to Showalter |
| Exhibit F: | Showalter's Second Supplemental Report of his Damages Expert Wayne C. Coleman |

37

Exhibit G:     David Showalter Deposition, dated 12-18-12
Exhibit H:     David Showalter Deposition, dated 6-24-13
Exhibit I:     Declaration of Rick Garcia
Exhibit J:     Showalter Law Firm Letter and Production, dated April 27, 2015
Exhibit K:     Video Excerpts from Rick Garcia Deposition, dated 10-22-14
Exhibit L:     Emails dated January 6, 2015

I declare under penalty of perjury that the foregoing is true and correct.

                              /s/ Roland Garcia
                              Roland Garcia

The Declaration was executed on September 6, 2016.

38