IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| HACIENDA RECORDS, L.P. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO:    2:14-cv-00019 |
| | § | |
| RUBEN RAMOS, et al. | § | |
| | § | |
| Defendants. | § | JURY DEMAND |

**HACIENDA'S MOTION FOR
APPELLATE RELATED ATTORNEYS' FEES AND COSTS**

TO THE HONORABLE COURT:

Hacienda Records, L.P., Hacienda Records and Recording Studio, Inc., Latin American Entertainment, L.L.C., Richard Garcia, aka Rick Garcia, and Roland Garcia, Sr., deceased ("Hacienda"), file this Motion for Appellate Related Attorneys' Fees and Costs as follows:

## I. OVERVIEW

1.     On appeal, Claimants "claim the court erred by ruling Hacienda is entitled to attorney's fees and costs as the 'prevailing part[y] on all claims'." *See Hacienda Records, LP v. Ramos*, 2018 WL 297163, __ Fed.Appx. ___ at *9 (5th Cir. 2018) (also attached as Exhibit D). The Fifth Circuit rejected this argument, ruling that "a court does not abuse its discretion in awarding fees to the 'prevailing party [who] obtains judgment on even a fraction of the claims advanced'." *Id*. at *11 (quoting *United States v. Mitchell*, 580 F.2d 789, 793 (5th Cir. 1978). The Fifth Circuit noted that this Court "entered a final judgment in favor of Hacienda, and the earlier voluntary dismissals without prejudice did not confer prevailing-party status on appellants." *Id*. at *11 (citing *Alief Indep. Sch. Dist. v. C.C. ex rel. Kenneth C.*, 655 F.3d 412, 418 (5th Cir. 2011)). Therefore, "because the party receiving the favorable judgment is

appropriately considered the 'prevailing party', the court did not abuse its discretion in according Hacienda prevailing-party status." *Id.* at *11 (quoting *Republic Tobacco Co. v. N. Atl. Trading Co. Inc.*, 481 F.3d 442, 446 (7th Cir. 2007)).  Despite the many meritless and objectively unreasonable claims raised by Claimants, and the equally meritless appeal in which Claimants argued they were prevailing parties, there is no doubt that Hacienda prevailed on all claims and is entitled under the law and facts to recover its attorney's fees and costs in this matter.  In fact, the Fifth Circuit has already awarded costs to Hacienda.  *See* Exhibit D (Bill of Costs at the last page).

2.    Similar to the repeated misrepresentations to this Court and to Hacienda during the underlying proceedings, Claimants continued to misrepresent the record and this Court's rulings to the Fifth Circuit, further multiplying these proceedings, and requiring the Court and Hacienda to devote more time and resources to this case.  Panel members of the Fifth Circuit were so disturbed by the conduct of Mr. Showalter that during oral arguments they asked about "impropriety" of his actions, "professional malfeasance" and whether he is in "good standing."[1] Other courts have admonished or sanctioned Mr. Showalter for his unprofessional and improper conduct, including Judge Gregg Costa in *Guzman II* who called Mr. Showalter's conduct "unprofessional"[2] and recently the Harris County Court at Law No. 2 who issued sanctions

---

[1] *See* http://www.ca5.uscourts.gov/OralArgRecordings/16/16-41180_10-12-2017.mp3 (oral arguments on October 12, 2017, Case No. 16-41180, *Hacienda Records, L.P., et al v. Ruben Ramos, et. al*, Fifth Circuit Court of Appeals).

[2] In *Jose O. Guzman v. Hacienda Records, LP et al*, No. 6:13-cv-00041 ("*Guzman II*"), Showalter's examination of Mr. Garcia, Sr. on June 16, 2015 was so abusive and riddled with improper questioning that Judge Costa terminated Mr. Showalter's examination.  *See* Exhibit E at 23:11-17 (Showalter interrupting the witness, objection sustained); 24:23-25:5 (Showalter badgering the witness, objection sustained); 57:5-9 (Showalter being argumentative with the witness, objection sustained); 61:3-16 (Showalter repeatedly violating the court's rulings thus Judge Costa terminates Showalter's examination and pronounces: "You are done with your examination, Mr. Showalter.").  Also in *Guzman II*, Mr. Showalter was yelling at and berating the witness Rick Garcia on June 17, 2015 to the point that Judge Costa admonished Mr. Showalter to cease being "unprofessional."  *See* Exhibit F at 4:18-22 (Judge Costa to Showalter:  "Mr. Showalter, settle down.  . . . It's unprofessional. I'm about to shut down this whole period of questioning if you can't control yourself. Being a professional means handling your business in a respectful manner. Ask a question in a calm manner.")

against Mr. Showalter and his client for violations of the rules of procedure for unethical conduct and obstruction in discovery. *See* Exhibit G[3]. The law is clear that evidence of misconduct and abuse in other cases is instructive to this Court in determining whether the improper conduct here is isolated or part of a pattern of abuse necessitating the relief Hacienda requests. *See Reed v. Great Lakes Cos., Inc*., 330 F.3d 931, 936 (7th Cir. 2003) (court "can take into account a history of frivolous litigation"); *Johnson v. C.I.R.,* 289 F.3d 452, 456-57 (7th Cir. 2002) (the court "was not required to ignore [the attorney's] bad conduct in other cases; indeed it would have been remiss not to consider it"). Further, the injunctive relief requested by Hacienda is even more compelling considering that Mr. Showalter believes his abusive and objectively unreasonable conduct was "within the bounds of the law." Doc. 230 at 8 (Response at 2); Doc. 231 at ¶ 66 ("I dispute that anything we did was improper."). *See* Exhibit A at ¶ 9.

3.    Hacienda will not repeat all its previous arguments and evidence supporting its request for an award of attorney's fees, costs and equitable relief. *See* Docs. 222, 237. The Fifth Circuit has already issued mandate and taxed the Bill of Costs against Claimants Ruben Ramos, Arturo Rene Serrata, Hugo Cesar Guerrero, and Ruben Guanajuato jointly and severally (the "Appealing Claimants"). *See* Exhibit D, Mandate, Judgment, and Bill of Costs (Bill of Costs at the last page). *See, e.g., Coffin v. Blessy Marine Servs., Inc*., 2015 WL 409693, at *4 (S.D. Tex. Jan. 29, 2015) (default rule is taxing costs against all losing parties jointly and severally, as all "pursued similar relief and stood to equally benefit from discovery"). This Court similarly should tax all appellate related costs against Showalter and the Appealing Claimants and award all appellate related attorney's fees to Hacienda and against Showalter and the Appealing Claimants, jointly and severally.

---

[3] Mr. Showalter still has not complied with this Order compelling him to provide the discovery, nor has he paid the $1,500 sanction award against him which was due "within 7 days from the signing of this ORDER." *See* Exhibit G.

4.     Further, since the filing of Hacienda's last brief on December 23, 2016, there has

been new case law reported on some of the issues previously raised.

5.     Hacienda's prior motion for fees and costs documented the Lodestar fees and

costs as reported through October 31, 2016.  *See* Doc. 222, 237, and exhibits.  Those amounts are

not repeated here.  The Lodestar fees and cost amounts which Hacienda seeks for the appellate

related work from November 1, 2016 to March 31, 2018 (inclusive of the April 2018 invoice to

Hacienda) are $85,828.92 as discussed herein.

6.     Additionally, considering the accounting software of Hacienda's counsel

generates invoices for attorney's fees and costs in the month following the reporting of time and

costs, and since it is not known the exact amount of time expended by all timekeepers this

month, to avoid any delay in the Court's award Hacienda will not be seeking fees and costs

incurred in April/May 2018, but reserves the right to do so if Showalter and Claimants dispute

the appellate related fees and costs sought herein.  *See* Exhibit A at ¶ 11.  If Showalter and

Claimants dispute the appellate related fees and costs sought herein, Hacienda will file a reply

and identify the fees and costs incurred in April/May 2018.  *Id.*

## II. ARGUMENT

### A.     New Applicable Case Law

7.     Since the filing of Hacienda's last brief, there has been new case law applicable to

the issue of an award of fees and costs to Hacienda.  In *Pronman v. Styles*, 676 F. App'x 846

(11th Cir. 2017), the Eleventh Circuit was faced with a similar plaintiff seeking the maximum

statutory damages per work when "[t]hey were clearly not entitled to these damages because any

infringement occurred years before they obtained registration for their copyright." *Id*. at 849

(citing 17 U.S.C. § 412).  The Eleventh Circuit held that, "Despite the inability to receive any

damages through their copyright claim, the Plaintiffs still raised it and consequently clouded title

to property owned by [Defendant]. Thus, the factors supported a fee award to the Defendants, and were applied consistently with the goals of the Copyright Act." *Id.* (internal citations omitted).  Plaintiffs in *Pronman* also objected to an award of fees for work pertaining to the non-copyright claims.  The Eleventh Circuit rejected such argument, holding, "the district court's decision to compensate the Defendants for attorney's fees based on invoices that did not specifically mention the copyright claim was not an abuse of discretion because it represented an interpretation of 'reasonable' fees under the Copyright Act.  The Defendants clearly incurred a portion of their attorney's fees defending against the copyright claim, which focused on the publication of the Plaintiffs' [works] . . ." *Id.* at 850. (internal citations omitted).

    8.    Additionally, in *Kryptek Outdoor Group, LLC v. Salt Armour, Inc.*, 2016 WL 7757267 (E.D. Beaumont, March 28, 2016), the Court held that the rule of fee segregation "does not apply to claims that are so interrelated that the time and fees cannot be segregated." *Id.* at *6 (citing *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007). The *Kryptek* Court also held that "[i]n the Fifth Circuit, 'an award of attorney's fees to the prevailing party in a copyright action is the rule rather than the exception and should be awarded routinely.'" *Id.* at *7 (quoting *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 588–89 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 592 (2015)).  Moreover, in awarding attorneys' fees, the Court made reference to the AIPLA Report of Economic Survey as proof of the reasonableness of the billing rates charged by the attorneys.  According to the 2017 Survey, the average rate for all partners in Texas is $606 per hour.  *Id.* at *9[4].  Here, filings by both Claimants (Doc. 52 at 4) and

---

[4] For the Court's reference, excerpts from the most current 2017 AIPLA Report of Economic Survey are attached which is a survey of intellectual property law attorneys.  *See* Exhibit H at 1.   The Survey shows the current average ("mean") hourly rate for all partners in Texas in 2016 is $606 per hour.  *See* Exhibit H at page I-27; Exhibit A at ¶ 13. Moreover, the average hourly rate for senior partners in law firms in Texas in 2016 is $900 (90th quartile).  *Id.* Hacienda's lead counsel is a senior shareholder at Greenberg Traurig, LLP.  *See* Exhibit A at ¶ 13.  Moreover, the average amount of attorney's fees incurred in a copyright infringement case only through the end of discovery and

5

Hacienda (Doc. 237 at 16; Doc. 222-1 at 2) support a reasonable hourly Lodestar rate of at least $500 for partners. *See* Exhibit A, ¶ 5, 13.

9.      Additionally, the District Court's ruling awarding nearly $1 million collectively in attorneys' fees to the prevailing defendants in *Spear Marketing, Inc. v. Bancorpsouth Bank*, 2016 WL 193586 at *11-12 (N.D. Tex. Jan. 1, 2016) cited in Hacienda's Reply, Doc. 237 (Reply at 9, 10, 19, 22) has now been affirmed by the Fifth Circuit.   *See Spear Marketing, Inc. v. Bancorpsouth Bank*, 44 F.3d 464 (5th Cir. 2016).

10.      Further, the recent decision in *Alliance for Water Efficiency v. Fryer*, 2017 WL 201358 (N.D. Ill, January 18, 2017), addressed several issues raised in this case.  The Court observed that "one purpose of the fee-shifting provision in § 505, like that in other fee shifting statutes, is 'to deter the bringing of lawsuits without foundation' and that like them, § 505 should be interpreted as allowing fees whenever the plaintiff's 'claim was frivolous, unreasonable, or groundless . . .'"  *Id.* at *4 (citing *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S.Ct. 1642, 1652 (2016)).  The *Fryer* court also recognized that a "presumption in favor of a fee award to a successful defendant ensures that in a copyright infringement case, the defendant does not abandon a meritorious defense in situations in which 'the cost of vindication exceeds the private benefit to the party.' If there is no prospect of a fee award, an infringement defendant might be

---

motions in Texas in 2016 with $10-$25M at risk is $1,058,000, *see* Exhibit H at I-186; Exhibit A at ¶ 13, which is significantly higher than Hacienda's $257,891 lodestar amount for all fees incurred in the trial court proceedings through October 2016.  *See* Exhibit A at ¶ 13.  Doc. 237 at 31; Doc 23-1 at ¶ 5. The average total fees incurred through appeal in a copyright infringement case in Texas in 2016 with $10-$25M at risk is $1,500,000.  *See* Exhibit H at I-186; Exhibit A at ¶ 13.  Thus, the average amount of fees incurred in Texas for such a copyright infringement case is $442,000 ($1,500,000 - $1,058,000 = $442,000).  This further supports the submitted evidence that Hacienda is requesting an award of attorney's fees both in the trial court proceedings and for appellate rated work based on time and hourly rates that are reasonable and are significantly lower than the time to handle such types of copyright infringement matters and significantly lower than the prevailing market rates, and that Hacienda has already applied discounts to the number of hours typically performed for such a complex copyright matter.  *Id.* Hacienda asks the Court to take judicial notice of this published survey of work performed and hourly rates in Texas for copyright work in 2016, which has been relied upon by Courts.  *See Kryptek Outdoor Group, LLC v. Salt Armour, Inc.*, 2016 WL 7757267, *9 (E.D. Beaumont, March 28, 2016).

forced into a nuisance settlement or deterred from exercising its rights." *Id*. at *6 (internal citations omitted).

11.     In *Knopf v. Elite Moving Systems*, 677 F. App'x 252 (6th Cir. 2017), the Court observed that an attorney's self-serving argument that he did not act in bad faith is unavailing, as "sanctions are warranted when an attorney *objectively* 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" *Id*. at 257 (quoting *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006))(emphasis in original).  *Accord Cruz v. Fulton*, 2017 WL 367652, at *2 (E.D. La. January 1, 2017) (Court rejects attorney's "self-serving interpretation" of the Court's Order, and also as being "wholly insincere" and "a distortion of common sense").  The Sixth Circuit in *Knopf* further noted that "Section 1927 sanctions may be imposed without a finding that the lawyer subjectively knew that his conduct was inappropriate." *Knopf*, 677 F. App'x at 257 (quoting *Hogan v. Jacobson*, 823 F.3d 872, 886 (6th Cir. 2016)).  The *Knopf* Court was addressing an attorney's failure to respond to emails of opposing counsel, forcing the opposing party to file a motion to compel settlement, "which cost [the opposing party] time and money." *Id*.  Showalter's multiple failures to respond to Hacienda's counsel's emails also necessitating the filing of multiple discovery requests and motions, costing Hacienda time and money. *See, e.g*., Doc. 65-7 (one of the emails to Showalter asking him to identify all persons who own an interest in the Works and to produce all such assignments and transfers, none answered); Doc. 237-7 (emails to Showalter asking if he is still claiming to own Hacienda's masters, none answered, necessitating Hacienda to file a motion for summary judgment on its counterclaim); Doc. 203-1 (emails to Showalter asking if he will voluntarily cancel the invalid registrations and if he will voluntarily inform Hacienda of other pending applications for registrations of

Hacienda's masters, none answered, necessitating the filing of a request for injunctive relief); Doc. 160-3 (emails to Showalter asking if he is bringing claims as to the composition *Oye Mi Corazon*, none answered, other than his nonresponsive jab, "I feel sorry for you," requiring Hacienda to address this composition and others claimed by Claimant Martinez).

12.    Essentially, all of Claimants' claims were disposed on the pleadings or on summary judgment based on the undisputed facts; thus all of Claimants were unreasonable. *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 887 (9th Cir. 2016) ("If a plaintiff has a claim that hinges on disputed facts sufficient to reach a jury, that claim necessarily is reasonable because a jury might decide the case in the plaintiff's favor.").

13.    Showalter's and Claimant's motivation for bringing their claims was clearly improper.  Showalter was following through on his threat to bring more claims against Hacienda for its refusal to settle the *Guzman* case, and to force an improper settlement in this case and to claim to own Hacienda's masters.   Such actions were improper and unreasonable as the performer Claimants Ramos, Guerrero, and Serrata were fully aware that in their contracts with Hacienda that Hacienda owned the masters in question, *see* Doc. 124-2 (Ramos deposition at 113:22-115:6);  Doc. 122-2 (Guerrero deposition at 183:19-23);  Doc. 126-3 (Serrata deposition at 135:4-19; 137:8-14);  Doc. 64-10 at 2 (Ramos contract); Doc. 65-10 at 2 (Guerrero contract); Doc. 66-10 at 2 (Serrata contract); and Showalter also knew so upon production of the contracts in discovery early in the case.  *See* Doc. 99-3 (Rick Garcia deposition at 10:19-13:25, contracts produced during the deposition on October 22, 2014, which would have been produced much sooner but for Showalter's refusal to enter into a protective order).   Moreover, composers Salcedo and Martinez admitted at the eleventh hour, despite their aggressive prosecution of fraud, RICO and breach of fiduciary duty claims that they "never dealt with Hacienda." *See* Doc.

231 at ¶ 23.   Further, Claimant Sanchez never had a DMCA claim due to Judge Rosenthal previously granting summary judgment for Hacienda on his infringement claim.  *See Sanchez v. Hacienda Records*, 42 F.Supp.3d 845 (S.D. Tex. 2014) (August 26, 2014).  Thus, all claims were brought for an improper purpose to extract an improper settlement, to harass, to make it hugely expensive for Hacienda to defend Claimants' claims, and to embarrass the Garcia family, and all such claims were objectively unreasonable.

       **B.**    **More Misstatements by Claimants and Showalter**

14.   Despite this Court granting summary judgment for Hacienda on its copyright ownership claims, Doc. 201, granting injunctive relief for Hacienda to protect its copyrights and invalidate the bogus Showalter registrations, Doc. 205, dismissing and denying all Claimants' copyright and related claims, Docs. 166, 169, 176, entering an order that the Hacienda parties are "prevailing parties on all claims asserted in this matter," Doc. 205, and entering a Final Judgment in favor of the Hacienda parties, Doc. 206, Claimants and Showalter nevertheless argued on appeal that Claimants "prevailed as to 400 works."  *See* Exhibit M, Corrected Appellants' Brief at 6.  That was clearly false, and Claimants and Showalter knew so based on the voluminous record in this case, yet were not deterred to attempt to mislead the Fifth Circuit that they were prevailing parties.  The Fifth Circuit rejected such false claims, and affirmed this Court's judgment according Hacienda prevailing-party status.  *See* Exhibit D, Opinion at 22; Exhibit A at ¶ 9. This required additional time and resources for Hacienda's counsel to analyze, review the record, brief the issue, prepare for arguments, and argue this point.  *Id.*

15.   Showalter also falsely argued on appeal that Hacienda refiled for declaratory relief for ownership of 134 works, citing to ROA 6255-6286.  *See* Exhibit M (Appellants' Brief at 3).  But ROA 6255-6286 is Doc. 153, Hacienda's Answer to Third Amended Counterclaim and Cross-Claim and Hacienda's Counterclaim, *see* Exhibit L, and nowhere in Hacienda's

Counterclaim does Hacienda seek to own 134 works.  *Id*.  Rather, as explained in the record and in Hacienda's briefing, *see* Doc. 237 at ¶ 31, Hacienda expressly listed the 13 sound recordings "which Claimants allege to own," which Hacienda disputed (not hundreds of compositions). Exhibit L (ROA 6276-6277); Doc. 153 at 22-23.

16.     Moreover, these false and misleading arguments, contrary to the express rulings of this Court, *see* Docs. 166, 169, 176, 205, 206, required Hacienda and its counsel to research, address, and brief such issues on appeal.  Even after the Fifth Circuit rejected such arguments by a reasoned opinion, Showalter continued to prosecute such false claims by filing a Petition for Panel Rehearing, and a Petition for Panel Rehearing En Banc.  *See* Exhibit N, O.  This again required Hacienda and its counsel to review such appellate filings, research the applicable rules, assess the cited case law and arguments, and discuss the status and plan of action with appellate counsel and the clients.  *See* Exhibit A at ¶ 9. It was no surprise that the motions for rehearing were denied.

17.     These misleading arguments on appeal are illustrative of the types of misleading and false arguments made by Showalter throughout this case and his other cases, *see, e.g*., Doc. 237 at 4-7, 21-25, Doc. 222 at 23-24, and which unnecessarily prolonged and multiplied these proceedings warranting the imposition of attorney's fees.  *See Mizioznikov v. Forte*, 2017 WL 5642383, at *7 (S.D. Fla. March 27, 2017) (attorney's fees granted against the losing party who "presented grossly misleading arguments in his response to the motion to dismiss").

18.     Similarly, denying the uncontroverted facts of the case is objectively unreasonable, and inducing false testimony, as was done in this case by the use of sham affidavits, is unreasonable conduct, supporting an award of attorney's. *See* Exhibit A at ¶ 9.  *See, e.g., Capital Records, Inc. v. MP3Tunes, LLC*, 2015 WL 13684546, at *2-3 (S.D.N.Y April 4,

2015) (denial of uncontroverted evidence is objectively unreasonable, and inducing false testimony is unreasonable conduct, all warranting an award of attorney's fees and costs). Showalter drafted such false declarations, and worked in tandem with Claimants to induce them to sign such false declarations. *See* Doc. 126 at 2-11 (discussion of the false declarations and false discovery responses). Clearly Showalter was the driving force in the prosecution of such baseless claims, and many of the Claimants were not even aware they were bringing claims against Hacienda. *Id.* at 17-18. It also appears some of the Claimants had no idea they assigned their rights to Showalter, or Showalter refused to allow the Claimants to answer such questions in their deposition. *Id.* at 17-19. Showalter even appealed the sham affidavit ruling, multiplying this proceeding, and requiring Hacienda to expend additional time and resources on this issue on appeal. *See* Exhibit A at ¶ 9; Exhibit J (Appellees' Brief).

### C.   Hacienda's Request to Preserve the Right to Enforce this Court's Judgment

19.   Out of abundance of caution, and because of the prior obstruction and unethical conduct of Showalter to stonewall Hacienda's efforts to collect the judgment entered by Judge Gregg Costa in Hacienda's favor in the *Guzman I* case, Hacienda had asked Claimants' co-counsel Mr. Escobedo the following:

> Did Showalter send a copy of the trial court's judgment and the appellate court's judgment to all Claimants, and when?
>
> Were any copies translated to Spanish?
>
> Did Showalter inform his companies, his firm, and Claimants to not transfer or encumber any non-exempt assets including intellectual property, and please confirm the date of his instruction and produce a copy of the instruction.   If not, I so request again that he do so immediately. Please also confirm that Showalter instructed any co-owners or assignees of their non-exempt assets not to do so. Please provide the date of such instruction and produce a copy of the instruction.
>
> Please confirm that neither Showalter, his companies nor Claimants nor any co-owners or assignees of their non-exempt assets have transferred, encumbered, assigned, gifted,

pledged or sold any non-exempt personal or real property assets, including intellectual property, during the last three years.

Does Showalter still represent Claimants, and if not, please identify the date he ceased representation and produce to me copies of his termination of representation, and please advise me of Claimants' new counsel if any and such Claimants last known address?

When will Showalter pay the $1,500 sanctions order issued against him for violation of the ethics rules [in the *Guzman* collection case, *see* Exhibit G]?

*See* Exhibit I; Exhibit A at ¶ 19.

20.    Hacienda had previously made similar requests of Showalter pertaining to Mr. Guzman, and Mr. Sanchez, which Showalter never answered.  *See* Exhibit A at ¶ 19.  Hacienda has good reason to be concerned in this case due Showalter's obstruction of Hacienda's efforts to collect on Judge Costa's judgment in *Guzman I*.  In that case, Hacienda tried to collect on the money judged awarded to Hacienda and against Showalter's client Mr. Guzman, and repeatedly asked Showalter to confirm that neither his client nor any co-owners or assignees of his client's assets have transferred, encumbered, assigned, gifted, pledged or sold any of their assets during the prior three years, which Showalter refused to answer.  *See* Exhibit A at ¶ 19.  It was not clear if Showalter's client was ever aware of the gravity of the situation and of Hacienda's request that his client's intellectual property and other assets not be transferred or sold.  Id.  Showalter would not even inform Hacienda's counsel whether Showalter continued to represent the client or the client's son, which prevented Hacienda from contacting them to work out a payment plan and have them transfer non-exempt property including their intellectual property to Hacienda.  *Id.* This is what led to Hacienda's filing of its motion to compel and for sanctions, and the granting of the motion and awarding of sanctions against Mr. Showalter (which he never paid).  *Id.*; Exhibit G.

21.     Hacienda merely desires to preserve this Court's judgment so that it is not hollow and so Hacienda is not frustrated in its collection efforts, if a money judgment is entered in Hacienda's favor, and requests that Showalter be compelled to provide this basic information in aid of enforcement of this court's judgment.  *See* Exhibit A at ¶ 19.

### D.      Request for Relief under the Court's Inherent Powers

22.     Considering that Showalter has stated under oath that he does not believe he did anything improper, *see* Doc. 230 at 8 (Response at 2) (arguing that his conduct was "within the bounds of the law,"); Doc. 231 at ¶ 66 (his "dispute that anything we did was improper"), in order to protect the public, Hacienda, the Garcia family, and even the Claimants from further harm by his wrongful conduct, Hacienda requests that Showalter be ordered to complete 15 additional hours of CLE in ethics within the next year.  Showalter does not understand that "saying so does not make it so."  *Fryer*, 2017 WL 201358, at * 11 (citing *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 679 (7th Cir. 2016). *Accord Spano v. The Boeing Co.*, 633 F.3d 574, 588 (7th Cir. 2011); *Beacon Const. Co. of Mass. v. Prepakt Concrete Co.*, 375 F.2d 977, 980 (1st Cir. 1967)).  Such a sanction is warranted and is appropriate under the circumstances and allowed by this Court's inherent powers to manage its docket.  *See, e.g., Steeger v. JMS Cleaning Servs., LLC*, 2018 Lexis 42797, at *5-7 (S.D.N.Y March 14, 2018) (court imposing monetary sanctions and an ethics CLE requirement for counsel's continued wrongful conduct, and failure to "express any regret or acknowledge that has failed to adhere to the standards expected of officers of this court").

### E.      Incurring Appellate related Fees and Costs

23.     This Court's Final Judgment was entered on July 18, 2016.  *See* Doc. No. 206. Since that time Claimants' and Showalter's continued pursuit of this case and attacks on this Court's judgment and rulings has necessitated the incurring of additional fees and costs in this

matter.  *See* Exhibits A, B, C, D.  Hacienda's brief filed on December 23, 2016 documented the

Lodestar fees and costs as reported through October 31, 2016.  *See* Doc. 222, 237, and exhibits.

Those amounts are not repeated here.  The amount for work performed and expenses incurred

and recorded from November 1, 2016 to March 31, 2018, and the Lodestar fees and costs

amounts which Hacienda seeks for the appellate related work are as follows:[5]

| | |
|---|---|
| Appellate related Lodestar Fees: | $79,691.00 [6] |
| Appellate related Costs incurred in the District Court: | $6,063.37[7] |
| Appellate related Costs assessed by the Fifth Circuit: | $74.55[8] |
| Total Appellate related Lodestar Fees and Costs: | $85,828.92 |

### III. CONCLUSION

11.     Hacienda requests that the Court grant this motion for appellate related attorney's

fees and costs, and grant Hacienda's prior motion for attorney's fees and costs (those amounts

---

[5] It should be noted that the Hacienda invoices do not include the significant time and work in preparing the Motion for Leave to extend the page limit and the proposed Reply Brief attached thereto that was not granted by the Court. *See* Doc. Nos. 233 and 236.  Nor do these amounts include the time for the work performed in April 2018, as the invoice for April work will appear in the May 2018 invoice to Hacienda. *See* Exhibit A at ¶ 11.  To avoid any delay in the Court's award, Hacienda will not be seeking such fees, but reserves the right to do so if Showalter disputes the fees and costs sought herein, and in that case Hacienda will file a reply and identify the fees and costs incurred in April/May 2018 for such further work in the District Court. *Id.*

[6] This amount is described in Exhibit B by taking the "Hours Billed" and applying a "Lodestar Hourly Rate", to give the "Lodestar of Hrs Billed." *See* Exhibit B, Exhibit A at ¶ 5.  This amount **does not** include all actual hours worked (as reflected in the column "Hours Worked."). *Id.*  The Lodestar amount for the actual hours worked is $192,153.00. *Id.*  Further, the Lodestar rate is a substantial discount from the standard hourly rates of the timekeepers who worked on this matter. *Id.* ("Std Rate" column in Exhibit B reflects the standard hourly rate for the timekeeper for the particular year. *Id. See* Exhibit B, Exhibit A at ¶ 5.  Thus, a substantial discount has been applied to each invoice, first being that not all hours were invoiced and second being that substantial discounts were applied to the standard hourly rates. *Id.*  The discounts based on the difference between the "billed rate" and "standard rate" for each timekeeper is shown in the "Discount Amt" column. *Id. See* Exhibit A at ¶ 5.  Here, the total discount applied to the invoices to Hacienda is $179,289.20. *Id.* ("Discount Amt" total at page 11 of Exhibit B. *See* Exhibit A at ¶ 5).  Although the Lodestar for the hours billed to Hacienda is only $79,691.00 for the appellate related work, considering the significant discounts applied and the actual hours worked and the *Johnson* factors, Hacienda requests the Court to make an upward adjustment from the Lodestar amount based on the evidence and the *Johnson* factors in the Court's discretion. *See* Exhibit A at ¶ 9.

[7] *See* Exhibit C, Summary of Appellate related Costs advanced by GT; Exhibit A at ¶ 4.

[8] The Fifth Circuit's Bill of Costs taxed the costs jointly and severally against Ruben Ramos, Arturo Rene Serrata, Hugo Cesar Guerrero, and Ruben Guanajuato. *See* Exhibit D.  Thus, the reasonable appellate related fees should be assessed against those Claimants, Showalter, and the Showalter law firm, all jointly and severally.

are not repeated here, but are in addition to the appellate related costs requested herein), and deny Claimants' objections and motion to strike, grant Hacienda's motion to strike and objections, and pursuant to 17 U.S.C. § 505, 28 U.S.C. § 1927, Rule 54, Rule 26(g), the DMCA (17 U.S.C. § 1203(b)(5)), the All Writs Act, the Court's inherent power, Texas common law and statutory law, and all applicable law, award the requested equitable relief and the appellate related fees of $79,691.00 (with an upward adjustment of 3x or in the Court's discretion based on the *Johnson* factors as previously briefed), appellate related costs of $6,137.92 ($6,063.37 + $74.55 = $6,137.92), and pre- and post-judgment interest at the maximum rate allowed, payable within 14 days of the Court's Order, against the Appealing Claimants, David W. Showalter, and The Showalter Law Firm, all jointly and severally, or as segregated in the Court's discretion.

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: /s/ Roland Garcia
       Roland Garcia
       Attorney-In-Charge
       Texas Bar No. 07645250
       S.D. Admission No. 8420
       1000 Louisiana, Suite 1700
       Houston, Texas 77002
       Telephone: (713) 374-3510
       Facsimile:  (713) 754-3505

       ATTORNEYS FOR HACIENDA
       RECORDS, L.P., HACIENDA RECORDS
       AND RECORDING STUDIO, INC.,
       LATIN AMERICAN ENTERTAINMENT,
       L.L.C., RICHARD GARCIA, aka RICK
       GARCIA, and ROLAND GARCIA, SR.,
       Deceased

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served through the Court's ECF system to all counsel of record on April 23, 2018.

/Roland Garcia/
Roland Garcia

IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| HACIENDA RECORDS, L.P. | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | NO.:   2:14-cv-00019 |
| v. | § | |
| | § | |
| RUBEN RAMOS, et al. | § | |
| | § | |
| Defendants. | § | JURY DEMAND |

## HACIENDA'S MOTION FOR APPELLATE
## RELATED ATTORNEYS' FEES AND COSTS

## DECLARATION OF ROLAND GARCIA

1.     My name is Roland Garcia. I am over the age of 21, of sound mind and competent to make this Declaration and have the legal capacity to make this Declaration. I am an attorney licensed to practice law in the State of Texas. I am a shareholder at the law firm of Greenberg Traurig, LLP.  I am one of the attorneys representing Hacienda Records et al. in this matter. I have personal knowledge of the statements contained in this Declaration, which are true and correct.

2.     Attached to this motion, and incorporated by reference, are Exhibits A through O, which are true and correct copies of the following:

| | |
|---|---|
| Exhibit A: | Declaration of Roland Garcia in Support of Hacienda's Application for Attorney's Fees and Costs |
| Exhibit B: | Summary of Appellate Related Attorneys' Fees from November 1, 2016 to March 31, 2018, and related discounts and Lodestar amounts, and actual Invoices |
| Exhibit C: | Summary of Appellate related Costs advanced by GT, and Back-up for such Costs |
| Exhibit D: | Fifth Circuit's Mandate, Judgment, and Bill of Costs taxed against (Bill of Costs at last page). |
| Exhibit E: | Excerpts from transcript of Mr. Showalter's examination of Mr. Roland Garcia, Sr. on June 16, 2015 in *Jose O. Guzman v. Hacienda Records, LP et al*, Case No. 6:13-cv-00041 |

| | |
|---|---|
| Exhibit F: | Excerpts from transcript of Mr. Showalter's examination of Mr. Rick Garcia on June 17, 2015 in *Jose O. Guzman v. Hacienda Records, LP et al*, Case No. 6:13-cv-00041 |
| Exhibit G: | Order Granting Hacienda's Motion to Compel Discovery Responses and for Sanctions, Cause No. 1091946, *Jose O Guzman v. Hacienda Records*, In the County Court at Law No. 2 (May 17, 2017) |
| Exhibit H: | Excerpts from 2017 AIPLA Report of Economic Survey |
| Exhibit I: | Emails to Joe Escobedo, co-counsel for Claimants, on March 30, 2018, and April 6, 11, 2018, none answered |
| Exhibit J: | Appellees' Brief |
| Exhibit K: | Record on Appeal in this matter, page ROA 6254 (also Doc. 152 in this matter). |
| Exhibit L: | Record on Appeal in this matter, pages ROA 6255-6286 (also Doc. 153 in this matter) |
| Exhibit M: | Corrected Appellants' Brief in this matter |
| Exhibit N: | Petition for Panel Rehearing |
| Exhibit O: | Petition for Panel Rehearing En Banc |

I declare under penalty of perjury that the foregoing is true and correct.

/s/ Roland Garcia
Roland Garcia

The Declaration was executed on April 23, 2018.